1

Michael J. Abbott (Bar No. 53402)
**JONES, BELL, ABBOTT, FLEMING & FITZGERALD L.L.P.**
601 South Figueroa Street, Twenty-Seventh Floor
Los Angeles, California 90017-5759
Telephone Number: (213) 485-1555
Facsimile Number: (213) 689-1004

2

3

4

5

Joel J. Bellows (Cal. Bar No. 37092)
Christopher L. Gallinari
**BELLOWS AND BELLOWS, P.C.**
209 South LaSalle Street, Suite 800
Chicago, IL 60604
Telephone Number:  (312) 332-3340
Facsimile Number:  (312) 332-1190

6

7

8

9

Attorneys for Defendants Peregrine Financial Group, Inc.,
and Joseph Peter Slaga

10

11

## IN THE UNITED STATES DISTRICT COURT

12

## FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

14

DAVID ZAITZEFF, an individual on
his own behalf and on behalf of the
State of California Labor and
Workforce Development Agency as a
Private Attorney General,

15

16

17

Plaintiff,

18

19

vs.

20

21

PEREGRINE FINANCIAL GROUP,
INC., an Iowa Corporation, JOSEPH
PETER SLAGA, an individual; and
DOES 1-10, inclusive,

22

23

24

Defendants.

25

26

**CASE NO.  CV08-2874-MMM**

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR IMPROPER VENUE OR IN THE ALTERNATIVE FOR A TRANSFER OF VENUE AND PETITION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATION OF REBECCA WING**

Hearing Date: June 23, 2008
Time:            10:00 A.M.
Judge:           Hon. Margaret M. Morrow
Courtroom:    780

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

27

**PLEASE TAKE NOTICE** that on June 23, 2008, at 10:00 A.M., or as

28

soon thereafter as this matter may be heard in the United States District Court for the

- 1 -

Central District of California, Western Division, located at 312 North Spring Street, Los Angeles, California 90012, Defendants Peregrine Financial Group, Inc. and Joseph Peter Slaga will and hereby do move, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. Section 1406, for an order dismissing the complaint for improper venue or, in the alternative, for an order transferring the venue of this matter to the Northern District of Illinois, Eastern Division and, in the alternative, pursuant to 7 U.S.C. Section 4, for an order dismissing or staying the action and, in the alternative, compelling Plaintiff to bring his claims against Defendants in arbitration.  This motion is made on the ground that this action is governed by a contract that contains a forum selection clause requiring that Plaintiff's dispute with Defendants be heard in Chicago, Illinois and on the further ground that such dispute is required to be arbitrated.

　　　　　This motion is based upon the attached memorandum of points and authorities, the declaration of Rebecca Wing, the records and files herein, and upon other such evidence as may be considered at the hearing on this motion.

DATED:  May 28, 2008　　　**JONES, BELL, ABBOTT, FLEMING & FITZGERALD L.L.P.**
Michael J. Abbott


By:_____/s/ Michael J. Abbott_____
　　　　Michael J. Abbott
Attorneys for Defendants Peregrine Financial Group, Inc., and Joseph Peter Slaga

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

3

I.

4

INTRODUCTION

5        On March 30, 2006, Plaintiff David Zaitzeff ("Zaitzeff") and Defendant

6    Peregrine Financial Group, Inc. ("PFG") agreed in writing that any disputes between

7    them would be heard by futures industry arbitration in Chicago, Illinois.  A dispute has

8    arisen between Plaintiff and PFG and, contrary to the terms of the agreement, Plaintiff

9    has filed a complaint against Defendants in United States District Court for the Central

10    District of California.  Since, under both federal and California law, Plaintiff and

11    PFG's forum selection agreement should be enforced, Plaintiff's litigation against

12    Defendants should be dismissed or transferred to Chicago, Illinois where it would be

13    resolved before the National Futures Association ("NFA").

14

II.

15

STATEMENT OF FACTS

16        PFG is a registered Futures Commission Merchant and Member of the

17    NFA.  Defendant Joseph Peter Slaga is an employee of PFG.  At all relevant times

18    hereto, from on or about March 30, 2006 through his resignation on March 2, 2008,

19    Zaitzeff was also registered with the NFA.  Zaitzeff was an Associate Member of the

20    NFA and was an Associated Person of PFG.  Under the rules of the NFA, Zaitzeff is

21    required to arbitrate disputes with PFG.

22        On March 30, 2006, Plaintiff and PFG entered into a written "Associated

23    Person Agreement" (hereinafter "the Agreement").  (Ex. 1.)  The Agreement contains a

24    forum selection clause that provides:

25            The parties agree that all actions, disputes, claims or
proceedings, including, but not limited to, any arbitration
26            proceeding, arising directly or indirectly in connection with, out
of, or related to or from this Agreement, any other agreement
27            between [Plaintiff] and [Defendant], whether or not initiated by
[Defendant], shall be adjudicated only in courts or other dispute
28            resolution forums whose situs is within the City of Chicago,

- 1 -

> State of Illinois.  [Plaintiff] hereby specifically consents to the jurisdiction of any State or Federal court, or arbitration proceedings located within the City of Chicago, State of Illinois.

(Ex. 1, ¶ 17.0.)

On May 2, 2008, Plaintiff initiated this action by filing a complaint against Defendants in the United States District Court for the Central District of California.  This action arises in connection with and is related to the Agreement.

As is its prerogative, PFG filed a Statement of Claim against Zaitzeff in arbitration before the NFA on May 16, 2008.   The Statement of Claim seeks reimbursement for a deficit in an account on Zaitzeff's equity run and other damages, a ruling that Zaitzeff was an independent contractor and not an employee of PFG and a ruling that he was not entitled to any offsets against the amount he owes PFG based upon the alleged violations of federal and state law that are contained in his instant Complaint.

The rules of the NFA require that Zaitzeff submit to arbitration.  PFG is a Member of the NFA.   At all relevant times Zaitzeff was an Associate Member registered with the NFA.  The NFA Member Arbitration Rules provide that:

> Except as provided in Sections 4 and 5 of these Rules with respect to timeliness requirements, disputes between Members and Associates shall be arbitrated under these Rules, at the election of the person filing the claim, unless:  (1) the parties, by valid and binding agreement, have committed themselves to the resolution of such dispute in a forum other than NFA; (2) the parties to such dispute are all required by the rules of another self-regulatory organization to submit the controversy to the settlement procedures of that self-regulatory organization; or (3) all parties to the dispute are members of a contract market which has jurisdiction over the dispute.  Once a claim is filed, arbitration is mandatory for the Member or Associate the claim is against.

NFA Member Arbitration Rules, Section 2(b).  None of the exceptions listed in Section 2(b) of the Arbitration Rules applies here.  Therefore, Zaitzeff is required to submit to arbitration.

- 2 -

PFG now requests that the above-quoted forum selection clause be enforced and Plaintiff's action be dismissed or, in the alternative, that venue be transferred to the United States District Court for the Northern District of Illinois, Eastern Division and, in the alternative, that Zaitzeff be compelled to submit his claims against Defendants to arbitration before the NFA.

III.

**THIS ACTION SHOULD BE DISMISSED OR,
IN THE ALTERNATIVE, VENUE SHOULD BE TRANSFERRED
TO THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

Rule 12(b)(3) of the Federal Rule of Civil Procedure provides for dismissal of the Complaint based upon "improper venue."  28 U.S.C. Section 1406(a) provides that:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Therefore, this Court is empowered to dismiss the case for improper venue or transfer it to the Northern District of Illinois, Eastern Division, that district in which the case should have been brought (subject of course to Defendants' right to demand arbitration).

Federal law applies to the enforceability of the forum selection clause here because this case presents a federal question.  Compl., Par. 1.  Forum selection clauses are enforceable under federal law.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000); *Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336 (9th Cir. 1997).  They are enforceable in all types of contracts, from complex commercial dealings to employment agreements. *See*, *Spradlin v. Lear Siegler Management Services, Inc.*, 926 F.2d 865 (9th Cir. 1991). The forum selection clause here is presumptively valid and should be enforced unless Plaintiff can make a clear showing that its enforcement "would be unreasonable and

1    unjust or that the clause was invalid for such reasons as fraud or overreaching."

2    Zapata, 407 U.S. at 15. "[T]he cost of litigation or the fact that a foreign forum poses

3    inconvenience does not prevent enforcement of a forum selection clause." *Koken v.*

4    *Stateco, Inc.*, 2006 WL 2918050, at *7 (N.D. Cal. Oct. 11, 2006); see *Fireman's Fund*,

5    131 F.3d at 1338 (enforcing clause requiring dispute to be heard in Korea); *Spradlin*,

6    926 F.2d at 867-68 (enforcing clause in employment agreement requiring dispute to be

7    heard in Saudi Arabia). Plaintiff bears a "heavy burden" of establishing the existence

8    of grounds for setting aside the forum selection clause. *Fireman's Fund*, 131 F.3d at

9    1338. Therefore, in *Spradlin*, the court enforced the forum selection clause where the

10   plaintiff presented only conclusory arguments that the employment agreement,

11   including its forum selection clause, had been fraudulently procured and that litigating

12   in Saudi Arabia would be so inconvenient as to deprive him of a meaningful

13   opportunity to be heard on his claims. 926 F.2d at 868.

14        Enforcement of the forum selection clause here would contravene no

15   "strong public policy" of the United States or California. Plaintiff brings claims under

16   the Fair Labor Standards Act and the California Labor Code, including under the

17   Private Attorney General Act of 2004. None of these statutes contains a provision that

18   precludes the enforcement of a forum selection clause, unlike the California franchise

19   statute considered in *Jones v. GNC Franchising, Inc*., 211 F.3d 495 (9th Cir. 2000).

20   Nor does any California case law hold that application of a forum selection clause to

21   such claims would violate strong California public policy.   To the contrary, in

22   *Net2phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583 (2d Dist. 2003), the court,

23   over a strong dissent, held that claims under California private attorney general statutes

24   may be subject to forum selection clauses.

25        Plaintiff's claims against Slaga, the branch manager of PFG's Camarillo

26   office, are simply an extension of Plaintiff's claims against PFG. Therefore, the forum

27   selection clause is enforceable by Slaga, as well as PFG. *Mannetti-Farrow, Inc. v.*

28   *Gucci America, Inc*., 858 F.2d 509, 514 n. 5 (9th Cir. 1988) (where alleged conduct of

- 4 -

non-parties is closely related to the contractual relationship, non-parties "should benefit from and be subject to forum selection clauses"); *see also Net2phone*, 109 Cal. App. 4th at 588 (extending forum selection clause to non-party who was "closely related to the contractual relationship"). Here, Slaga was closely related to the contractual relationship between PFG and Zaitzeff by virtue of his position as the branch manager of PFG's Camarillo office and therefore should be entitled to the protections of the forum selection clause.

The forum selection clause in the Agreement also would be enforceable under California law. In *Smith, Valentino & Smith, Inc. v. Superior Court*, the California Supreme Court upheld the validity of a forum selection clause contained in a contract entered into freely and voluntarily by parties who have negotiated at arm's length. 17 Cal. 3d 491, 494-97 (1976); *see also Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464 (1992). In *Smith*, the plaintiff and the defendant had entered into a contract whereby the plaintiff agreed to litigate all actions arising out of the agreement only in Philadelphia, Pennsylvania. *Id*. at 493-94. Nonetheless, the plaintiff brought an action against the defendant in Los Angeles. *Id*. at 494. The defendant brought a motion to dismiss on grounds of forum non conveniens based upon the forum selection clause in the parties' agreement. *Id*. As a result of the defendant's motion, the trial court stayed the entire action. *Id*. The plaintiff appealed, arguing that the forum selection clause should not be enforced. *Id*. The California Supreme Court rejected all of the plaintiff's arguments and affirmed the trial court's order. *Id*. at 494-97 ("No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length. . . . [W]e conclude that forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable.")

Plaintiff and PFG entered into the Agreement freely and voluntarily after

- 5 -

arm's length negotiations and Plaintiff cannot establish that it would be unreasonable to enforce the parties' forum selection clause.  Consequently, the forum selection clause in the Agreement should be enforced and this action should be dismissed or, in the alternative, venue should be transferred to the Northern District of Illinois, Eastern Division.

IV.

PLAINTIFF SHOULD BE COMPELLED TO<br>ARBITRATE HIS CLAIMS

This Court also may order Zaitzeff to submit his claims to arbitration against Defendants before the NFA in a proceeding to be venued in Chicago, Illinois and dismiss the case.  Or, this Court may conclude that the proper current means by which to enforce the forum selection clause would be to transfer venue to the Northern District of Illinois and let that transferee court take up the issue of arbitration. However, Defendants would like this Court to be fully aware that they are asserting its right to arbitration, in addition to its right to an Illinois venue.

The arbitration contract covers all claims Plaintiff may have against PFG or Slaga.  The Federal Arbitration Act reflects a strong federal policy favoring arbitration as a means of dispute resolution.  Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983) (emphasis supplied); *see also First Options of Chicago v. Kaplan,* 514 U.S. 938, 945 (1995); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1995).  There is a strong presumption that any claim falls within an agreement between parties to arbitrate all claims between them, and a controversy will not be deemed outside the scope of a valid arbitration clause "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute." *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984); *Gray v. Conseco, Inc.*, 2000 WL 1480273 (C. D. Cal. Sept. 29, 2000). Under governing precedent, then, all claims against Defendants must be referred to arbitration unless it can be said with positive assurance that the arbitration contract cannot be interpreted to cover Plaintiff's claims, which is not the case here.

The arbitration agreement in the Agreement between PFG and Zaitzeff is enforceable not only by PFG but also by Slaga because he is PFG's employee and branch officer. *See, Nelson v. Louisiana Electric Rig Service,* 2006 WL 5671234, at **3-4 and cases cited therein (C. D. Cal. Feb. 22 2006). Therefore, Zaitzeff should be required to submit his claims against Defendants to arbitration before the NFA.

V.

CONCLUSION

For all the foregoing reasons, Plaintiff's complaint against Defendants should be dismissed or, in the alternative, venue should be transferred to the Northern District of Illinois, Eastern Division or, in the alternative, Plaintiff should be ordered to submit his claims to arbitration against Defendants before the National Futures Association.

DATED:  May 28, 2008       **JONES, BELL, ABBOTT, FLEMING & FITZGERALD L.L.P.**
Michael J. Abbott


By:_____/s/ Michael J. Abbott_____
          Michael J. Abbott
Attorneys for Defendants Peregrine Financial Group, Inc., and Joseph Peter Slaga

## DECLARATION OF REBECCA J. WING

I, Rebecca J. Wing, hereby declare:

1.     I have personal knowledge of the facts set forth herein and would and could testify competently thereto if sworn as a witness.

2.     I am the General Counsel of Peregrine Financial Group, Inc., whose principal place of business is located in Chicago, Illinois. Peregrine Financial Group, Inc. is a registered Futures Commission Merchant and Member of the National Futures Association.

3.     Defendant Joseph Peter Slaga is an employee of Peregrine Financial Group, Inc. and is the branch manager of its Camarillo, California office.

4.     Attached as Exhibit 1 is a true and complete copy of the "Associated Person Agreement" dated March 20, 2006 and entered into by and between Plaintiff David Zaitzeff and Defendant Peregrine Financial Group, Inc.

5.     From March 20, 2006 through his resignation on March 2, 2008, David Zaitzeff was an Associated Person of PFG and was registered with the NFA as an Associate Member.

6.     The "Associated Person Agreement" attached as Exhibit 1 was entered into freely and voluntarily and negotiated at arm's length.

7.     Attached as Exhibit 2 is a true and complete copy of the Member Arbitration Rules of the National Futures Association.

- 8 -

8.     On May 16, 2008, PFG filed a Statement of Claim against Zaitzeff in arbitration before the NFA seeking reimbursement for a deficit in an account on Zaitzeff's equity run and other damages and a ruling that Zaitzeff was an independent contractor and not an employee of PFG and that he was not entitled to offsets against the amount he owes PFG because of the alleged violations of federal and state law that are contained in his instant Complaint.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on May 20, 2008, at Chicago, Illinois.

Rebecca J. Wing

MOTION TO DISMISS COMPLAINT FOR IMPROPER VENUE OR IN THE ALTERNATIVE FOR A TRANSFER OF VENUE AND PETITION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATION OF REBECCA WING

ASSOCIATED PERSON AGREEMENT

THIS AGREEMENT, made this 30th day of March 2006 in Chicago, Illinois by and between PEREGRINE FINANCIAL GROUP, INC., an Iowa Corporation with its principal place of business located at 190 S. LaSalle Street, 7th Floor, Chicago, Illinois 60603 (hereinafter referred to as "PFG") and David Zaitzeff, whose Social Security Number is                  (hereinafter referred to as "AP").

WITNESSETH:

WHEREAS, PFG is engaged in the business of soliciting and servicing customer accounts for the purchase and sale of futures contracts, physicals and options thereon ("Customer Accounts");

WHEREAS, PFG is registered with the Commodity Futures Trading Commission ("CFTC") as a Futures Commission Merchant ("FCM") pursuant to the provisions of the Commodities Exchange Act, as amended, (the "Act"), the rules and regulations promulgated thereunder by the Commodity Futures Trading Commission ("CFTC") and the National Futures Association ("NFA");

WHEREAS, PFG has a Branch Office located at Camarillo, California;

WHEREAS, AP is registered with the NFA as an Associated Person and is subject to the Act, and rules and regulations of the CFTC and NFA;

WHEREAS, AP is desirous of becoming engaged in the business of serving as an Associated Person of PFG's Branch Office in connection with the business of such Branch;

WHEREAS, the parties are desirous of entering into an agreement whereby AP will perform the duties required by PFG of its APs, including but not limited to soliciting accounts for the purchase and sale of futures and/or options on futures for PFG;

WHEREAS, the parties acknowledge that as part of his duties, AP will have access to confidential documents, information, and materials, which have been developed and acquired by PFG with considerable effort and expense, and which PFG considers and treats as confidential.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, PFG and AP agree as follows:

1.  Solicitation.    AP will solicit accounts from financially responsible customers on behalf of PFG.    Customers herein shall include all persons and entities that are solicited by AP to open an account with PFG, regardless of whether an account is subsequently opened.  AP shall be responsible to ascertain the essential facts relative to any Customer Account as required by PFG, CFTC and the NFA including the genuineness of all documents and signatures required for each Customer Account.  AP shall cause all Customer funds solicited for Customer Accounts to be paid to PFG. AP shall not solicit Customer Accounts on behalf of or transmit orders to any other FCM or other entity except as directed by PFG during the term of this Agreement.

2.  Customer Opening Account Documents and Initial Deposits.    AP will not accept any trades for any Customer Accounts until:  (i) all required new account documents have been duly executed, received, and approved by PFG; (ii) the required initial deposit has been made by the Customer and good funds have been received; and (iii) all other PFG procedures relating to opening of accounts have been followed.  Discretionary accounts will only be accepted with a signed power of attorney after specific approval from PFG.  PFG, in its sole and absolute discretion, has the right to reject or close any Account.

3.  Licenses and Memberships.  At all times during the term of this Agreement, AP shall be responsible for obtaining and keeping current all memberships, licenses and registrations necessary or appropriate for the AP to conduct business as an Associated Person.  PFG shall sponsor or continue to sponsor AP as an Associated Person of PFG subject to the provisions of the Act, NFA and CFTC rules and regulations.  AP acknowledges that he has carefully read items 14 through 23 of the CFTC/NFA Form 8-R registration form ("Disciplinary History Items") which AP has submitted to PFG.  AP further acknowledges that the responses indicated on the 8-R form are correct and accurate.  (If AP has answered "yes" to any Disciplinary History Item, AP agrees to provide full and accurate details relating to such item to PFG.)  AP shall timely complete any and all ethic training requirements under the NFA rules and regulations.

4.  Confidentiality.    AP recognizes and acknowledges that he will have access to certain trade secrets and other confidential information of PFG and of corporations, partnership, and individuals affiliated or associated with PFG, and that such information constitutes valuable, special, and unique property of PFG and such other affiliated or associated corporations, partnerships, and individuals. AP will not, during or after the term of this Agreement, disclose any such trade secrets, confidential and/or proprietary information to any person, firm, corporation, partnership, association or other entity for any reason or purpose whatsoever.  Confidential and/or proprietary information shall include, but not be limited to:  trade secrets; names of potential, actual, prospective, or new Customers of PFG; the contents of word processing or computer disks or other media, manuals, sample read-outs, or memoranda from time to time used or

1                                                          initial

processed by PFG; PFG's costs or methods of doing business or engaging in any service, business or profession; formulas; Customer account documentation, Customer lists, Customer leads, Customer daily and monthly statements, equity runs, marketing materials, and publications which have been generated by PFG's marketing efforts and other PFG marketing material or packaging of any other similar and confidential matters given to him or to which AP may have access. **AP acknowledges that his relationship to PFG and to corporations, partnerships, and individuals affiliated or from time to time associated with PFG is that of a fiduciary.**

In the event of a breach or threatened breach by AP of the provisions of this paragraph, PFG shall be entitled to obtain a temporary restraining order and a permanent injunction restraining AP from disclosing, in whole or in part, such trade secret, confidential and/or proprietary information. Nothing herein shall be construed as prohibiting PFG from pursuing any other remedies available to PFG for such breach or threatened breach, including by way of example, the recovery of damages from AP including any legal and accounting costs and cost incurred in connection with such litigation.

5.   <u>PFG Documents</u>.   AP may have access to, possession, care, custody and control of PFG's documents, information and materials. AP agrees to maintain and ensure the confidentiality of PFG trade secrets, proprietary and marketing documents during the term of this Agreement and subsequent to the termination of this Agreement.   Upon the termination of this Agreement, AP will immediately return any and all documents including trade secrets, confidential and proprietary documents and any reproductions of such documents to PFG.   AP acknowledges that all account forms, order tickets, and other records relating to accounts and/or Customers solicited by AP is the property of PFG and shall be turned over to PFG promptly on demand.   AP further agrees not to utilize any of PFG's trade secrets, confidential, proprietary and marketing documents to PFG's detriment.

6.   <u>Guarantees and Indemnification</u>.     AP guarantees all the financial obligations of the Customer Accounts serviced by him and/or carried on AP's Customer equity run. In the event any Account is in a deficit status and the Customer has not made immediate arrangements acceptable to PFG to pay such deficit, upon demand by PFG AP will promptly make payment of such deficit, error, or adjustment, which results in such deficit. If such payment is not made in full by AP, PFG may make deductions from commissions and other income due AP from PFG.  PFG's election to make such deductions from commissions and other income shall in no way act as a waiver of its right to collect such payment from the Customer. If PFG initiates collection proceedings against the Customer, AP agrees to fully cooperate with PFG and to assist PFG to collect such deficit from the Customer in such proceedings. It is expressly understood that PFG is not obligated or required to initiate collection proceedings and it may, in its sole and absolute discretion, decline to do so.  Additionally PFG need not assign its claim against the Customer to AP.  If PFG initiates collection proceedings or if it receives payments without initiating any such proceedings, any amounts collected shall be credited first to the debit until paid (the debit shall include all funds the Customer owes PFG, including any interest, reasonable attorneys fees and costs incurred by PFG in collecting the debit) and then to the AP for any payments previously made by AP to PFG with respect thereto. PFG need not first resort to its remedies against the Customer. The AP's liability and obligations to PFG are not limited to the commissions due AP. Further, the AP accepts complete financial responsibility for his activities and shall indemnify PFG from any harmful results or action. AP agrees to indemnify and hold PFG harmless from and against:

(i) any and all claims, demands, proceedings, suits and actions against PFG arising out of or relating to AP's activities; and

(ii) any and all losses, liabilities, damage, debit account balances, expenses and costs (including attorney's fees and PFG's staff time) suffered or incurred by PFG resulting from or relating to:

(a) any breach of the AP's duties or obligations under this Agreement,

(b) any inaccuracy or misrepresentation in, or any of the warranties, representations, covenants or agreements made by AP herein,

(c) any and all debts, liabilities, taxes, and other obligations, against, or with respect to AP, not expressly agreed to be assumed or undertaken by PFG herein,

(d) any claims, liabilities, or demands of PFG with respect to any account or client, potential or actual, arising out of or relating of any agreements between any such client, and PFG including AP's failure to properly, supervise, manage or maintain a client's account or to act in accordance with a client's instruction, and

(e) any debts, liabilities, or obligations arising from the failure of AP to comply with the Act, the rules and regulations of the CFTC and NFA or with any other applicable laws or regulations of any jurisdictions or agency thereof; and

(iii) any complaint brought against the AP by Customers, CFTC, NFA or any other entity, the AP further agrees to reimburse PFG for its time, out-of-pocket expenses and legal fees expended in the defense of or in resolving such complaints, as well as responding to questions, or inquiries brought by Customers, CFTC, NFA or any other entity regarding the conduct of the AP.

If AP is unable to immediately fulfill his obligations hereunder and upon PFG's request, AP shall provide PFG with a current personal financial statement.  PFG reserves the right to withhold part or all commissions earned by AP to pay losses, liabilities, damages, debit account balances, expenses and costs (including reasonable attorney's fees and PFG staff time) created or anticipated by AP's activities.  All commissions withheld shall be separately accounted for in a designated commission withholding account on PFG's books.  PFG reserves the right to require certain additional collateral, bond, or security deposit to be pledged by AP.

2

<u>PZ</u>initial

7.  Compensation. For and in consideration of AP's services hereunder, PFG shall compensate AP primarily on a commission basis as defined in the attached rider "COMMISSION SCHEDULE". Additional compensation or forms of compensation from time to time, if any, will be at the sole and absolute discretion of PFG as it deems appropriate.

8.  Limitation of Authority.       AP does not have any authority to enter into any contracts on behalf of PFG nor to use PFG's name in any outside business activities without the expressed prior written consent of PFG's President.

9.  Duty to Abide. AP agrees to abide by all of the provisions of the Act, CFTC and NFA rules and regulations and all policies and procedures set forth by PFG in its Compliance Manual. This includes, without limitation, NFA Rules 2-8 (regarding discretionary accounts managed by associated persons) and 2-29 (regarding communications to the public and solicitation of accounts). AP acknowledges that he has read and understands the foregoing rules and will abide by such.

10. Duty to Advise.    AP agrees to notify PFG promptly, in writing, if in the future AP would be required to respond yes to any Disciplinary History Items. AP further agrees to immediately notify PFG's General Counsel and Director of Compliance of any action or proceeding filed or threatened against PFG or AP by any Customer, CFTC, NFA, and/or any other regulatory body having or asserting jurisdiction, when such fact comes to AP's attention.

11. Duty to Cooperate. AP agrees to fully cooperate with PFG in connection with PFG's investigation and/or defense of any claim, demand, proceeding, suit, action and/or any regulatory inquiry, investigation or action.

12. Written Communications and General Advertising.       AP shall not communicate in writing to any Customer nor initiate any general advertising without first receiving the approval of PFG's Director of Compliance.

13. Post-Termination Covenant Not to Compete.       AP hereby covenants and agrees that upon termination of this Agreement and for a period of six (6) months thereafter, AP will not, directly, indirectly, independently or in concert with anyone or entity, or acting as principal, agent, trustee, or through the agency of any corporation, partnership, association, agent or agency, either solicit or accept business from any person, corporation, partnership, association, joint venture, or firm which was a Customer of PFG at any time during AP's relationship with PFG. Said period of restraint shall be extended during any and all times that PFG is seeking to obtain an injunction against AP by reason of the AP's violation of this covenant. The parties further agree that this covenant shall be construed as an agreement independent of any other provision of this Agreement; and the existence of any claim or other cause of action of AP against PFG, whether predicted upon this Agreement or otherwise, shall not constitute a defense to PFG's enforcement of this covenant. PFG and AP agree that this provision shall be for the purpose of preventing AP from usurping any corporate opportunity of PFG and the goodwill of PFG, and not deprive AP of his ability to earn a livelihood. Therefore, this covenant shall not apply to Customers listed on Exhibit B attached hereto. PFG and AP both further agree that the foregoing time limitation is no more than that reasonably necessary to protect PFG's business and goodwill under the particular facts and circumstances applicable to PFG and AP. If, at any time of enforcement of this covenant, a court or other tribunal shall hold that duration, scope or other restrictions implied herein are unreasonable, the parties agree that the maximum allowable duration, scope and geographic restrictions shall be substituted. It is further agreed that in case of any violations by AP of this covenant of non-competition, PFG will be immediately entitled to seek and obtain injunctive relief against AP to protect PFG from violation and/or continuous violation of the covenant. AP further agrees that such application to a court for injunctive relief on behalf of PFG will be without bond and, if successful, at the sole expense of AP including attorneys' fees.

14. Set-Off. PFG shall have the right in its sole and absolute discretion to apply collateral, compensation currently due or to become due, and such other assets or funds of AP in the possession, custody, or control of PFG against any amount owing to PFG by AP including (i) deficit balances in Customer Accounts, together with any and all costs, damages, losses (including cost and reasonable attorney's fees) incurred in collecting such deficit; (ii) AP's error accounts; (iii) expenses paid, loans or other advances made by PFG on behalf of or to AP; and (iv) guarantees and indemnities hereunder.

15. No waiver. Nothing in this Agreement is intended to obligate either party to exercise any right he may have against the other. Said rights are entirely optional with each party and each party may elect on any occasion not to exercise said rights without thereby waiving the right to insist upon compliance with this Agreement thereafter.

16. Assignability.     This Agreement shall not be assignable by AP. Any assignment by PFG to another entity shall be valid and enforceable. PFG shall also have the right to assign to any third party its right to collect and/or bring an action for any amounts owing to it under this Agreement.

17. Invalid Provisions; Governing Law; Jurisdiction. This Agreement shall be governed by the laws of the State of Illinois. The invalidity or unenforceability of any provision or any portion of any particular provision herein shall not affect the validity of any other provision. In addition, if it shall be determined that any provision violates the public policy of the State of Illinois, or any Illinois or Federal statutes, then such provision shall be reconstructed or modified to allow such provision to be in conformity with Illinois public policy or such Federal statute. The parties agree that all actions, disputes, claims or proceedings, including, but not limited to, any arbitrations proceeding, arising directly or indirectly in connection with, out of, or related to or from this Agreement, any other agreement between the AP and PFG, whether or not initiated by PFG, shall be adjudicated only in courts or other dispute resolution forums whose situs is

3                                                                    initial

within the City of Chicago, State of Illinois.  AP hereby specifically consents and submits to the jurisdiction of any State or Federal Court, or arbitration proceedings located within the City of Chicago, State of Illinois.

18.  <u>Gender and Number</u>.    Whenever necessary in this Agreement and where the context admits, the singular term and related pronoun shall include the plural and vice-versa, and the masculine and neuter terms shall be interchangeable.

19.  <u>Effective Date</u>.    This Agreement shall be effective upon the date first written above and shall remain in effect until terminated by either party upon seven (7) days written notice to the other; except that either party may terminate immediately without notice should the CFTC or NFA cause the registration of the other to be revoked and/or suspended, or should either party violate any of the terms of the Agreement, become insolvent, bankrupt, or fail to meet any financial obligation due the other within five (5) days after receipt of written demand, or for other good cause. The termination of this Agreement does not terminate, suspend or waive any obligations the AP owes to PFG pursuant to paragraphs 4, 5, 6, 8, 10, 12 and 13 above.  All provisions of this Agreement relating to Customer margin, deficits, payments, set-off, confidentiality, guarantee and indemnification, shall survive the termination of this Agreement.

20.  <u>Agreement Binding</u>.  This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto.

21.  <u>Presumption</u>.  This Agreement or any section thereof shall not be construed against any party due to the fact that said Agreement or any section thereof was drafted by said party.

22.  <u>Prior Agreement</u>.  This Agreement supersedes and replaces any and all previous agreements between AP and PFG.

IN WITNESS WHEREOF, the parties hereto have caused the Agreement to be duly executed as of the 30th day of March 2006.

_____
David Zaitzeff
(AP's Signature, Must Be Notarized)

PEREGRINE FINANCIAL GROUP, INC.
By:

_____
Russell R. Wasendorf, Jr., COO

Signed and sworn to before me this 30 day of March 2006.

_____
Notary Public        (seal)

Commission Expires _____Oct 31, 2009_____

CINDY J. GALINDO
Commission # 1615968
Notary Public - California
Los Angeles County
My Comm. Expires Oct 31, 2009

4

DZ initial

04/04/2006 21:42 FAX 319 277 0880    ACCOUNTING    → EXECUTIVE FAX    ☑001/004
04/05/2006  09:25   13128572515                                      PAGE  05/05

EXHIBIT "A"
COMMISSION SCHEDULE

COMMISSION SCHEDULE

1.  **Commission Payout.**  Subject to the rights to withholding as set forth in the Associated Person Agreement, for all commissions generated from the accounts serviced by AP as shown on AP's Sales Series, AP shall receive 50% of the net commissions in excess of $10.00 per round turn received for trades on non-electronic markets and $6.00 per round turn received for trades on electronic markets.  Net commissions are gross commissions less clearing, exchange, brokerage, NFA fees, overrides, fees and splits.

2.  **Expenses.**  AP shall be responsible for all costs and expenses related to AP's business and personal activities, except for those expenses with PFG agrees in advance by written notice to assume responsibility for.  AP shall be responsible for any advertising, sales and travel expense.

3.  **Benefits.**    AP shall be entitled to the following company benefits:  None.

4.  **Independent Contractor Status.**  AP acknowledges that he has been offered employment but has declined to be employed by PFG, choosing to be retained by PFG on an independent contractor basis.  AP further acknowledges that he will receive a 1099 reflecting income received from PFG and that AP is responsible for all taxes associated with such income, including but not limited to unemployment, social security and self-employment taxes.

PEREGRINE FINANCIAL GROUP, INC.*
By:

David Zaitzeff

Russell R. Wasendorf, Sr., CEO

March 30, 2006

Neil Aslin, President

Date

Russell R. Wasendorf, Jr., COO

(*Two out of the Three listed Officers for PFG must execute the Commission Schedule to be effective)

APPROVED:

Branch Office Manager

5                                    _____ Initial

EXHIBIT "A"
COMMISSION SCHEDULE

COMMISSION SCHEDULE

1.   Commission Payout.  Subject to the rights to withholding as set forth in the Associated Person Agreement, for all commissions generated from the accounts serviced by AP as shown on AP's Sales Series, AP shall receive 50% of the net commissions in excess of $10.00 per round turn received for trades on non-electronic markets and $6.00 per round turn received for trades on electronic markets.  Net commissions are gross commissions less clearing, exchange, brokerage, NFA fees, overrides, fees and splits.

2.   Expenses.  AP shall be responsible for all costs and expenses related to AP's business and personal activities, except for those expenses with PFG agrees in advance by written notice to assume responsibility for.  AP shall be responsible for any advertising, sales and travel expense.

3.   Benefits.      AP shall be entitled to the following company benefits:  None.

4.   Independent Contractor Status.  AP acknowledges that he has been offered employment but has declined to be employed by PFG, choosing to be retained by PFG on an independent contractor basis.  AP further acknowledges that he will receive a 1099 reflecting income received from PFG and that AP is responsible for all taxes associated with such income, including but not limited to unemployment, social security and self-employment taxes.


PEREGRINE FINANCIAL GROUP, INC.*
By:

_____
David Zaitzeff                                                       _____
                                                                          Russell R. Wasendorf, Sr., CEO

_____
Date                                                                      _____
                                                                          Neil Aslin, President

                                                                          _____
                                                                          Russell R. Wasendorf, Jr., COO

(*Two out of the Three listed Officers for PFG must execute the Commission Schedule to be effective)


APPROVED:


_____
Branch Office Manager


5                                              _____ initial

EXHIBIT 1, Page 15

EXHIBIT "B"

CUSTOMERS NOT SUBJECT TO THE PROVISIONS OF THE
POST-TERMINATION COVENANT NOT TO COMPETE

The following Customers are those who the AP may actively solicit and will be governed by the provisions of the
Post-Termination Covenant Not to Compete agreement contained in the foregoing Associated Person Agreement:

Lawrence Zaitzeff, Marilyn Miller, David J Kish, Joe Di Silva, ~~Dave Kittsen~~, Jose Canas, Randy Tice, Ross Stevens, John Klassen,

PEREGRINE FINANCIAL GROUP, INC.
By:

_David Zaitzeff_ _____
David Zaitzeff                         Russell R. Wasendorf, Jr., COO

6                                                         _____ initial



**Member Arbitration Rules**
**Click Here to Print Entire Section**

## [¶ 6511] SECTION 1. DEFINITIONS.
### (Click Here to Print this Section)
*[Adopted effective February 18, 1992. Effective dates of amendments: May 1, 1994; March 1, 2002; September 9, 2002 and June 5, 2007.]*

As used in these Rules:

**[¶ 6511.1] (a) "Aggregate Claim"** - means an Arbitration Claim plus any counterclaim, cross-claim and third-party claim filed in the same matter under these Rules.

**[¶ 6511.2] (b) "Arbitration Claim"** - means a claim filed by a person instituting the Arbitration proceeding.

**[¶ 6511.3] (c) "Associate"** - means a person who is registered with NFA as an Associate or was so registered when the acts or transactions that are the subject of the dispute occurred. (Under NFA Bylaws every person who is associated with a Member within the meaning of the term "associated person" as used in Section 4k of the Commodity Exchange Act, and who is required to be registered as such with the Commission, must register with NFA as an Associate.)

**[¶ 6511.4] (d) "Claim"** - means an Arbitration Claim, counterclaim, cross-claim or third-party claim filed under these Rules.

**[¶ 6511.5] (e) "Claimant"** - means a person making a proper and timely claim under these Rules.

**[¶ 6511.6] (f) "Commission"** - means the Commodity Futures Trading Commission.

**[¶ 6511.7] (g) "Contract Market"** - means an exchange designated by the Commission as a contract market in one or more commodities.

**[¶ 6511.8] (h) "Cross-claim"** - means a claim filed by one Respondent against a co-Respondent.

**[¶ 6511.9] (i) "Hearings"** - includes both oral hearing and summary proceedings, unless otherwise specified.

**[¶ 6511.10] (j) "Member"** - means a Member of NFA other than a contract market or a person that was a Member (other than a contract market) at the time the acts or transactions that are the subject of the dispute occurred.

**[¶ 6511.11] (k) "NFA"** - means National Futures Association.

**[¶ 6511.12] (l) "Panel"** - means the arbitration panel selected pursuant to Section 3 of these Rules.

**[¶ 6511.13] (m) "Person"** - includes individuals, corporations, partnerships, trusts, associations and other entities.

**[¶ 6511.14] (n) "Pleading"** - means an Arbitration Claim, counterclaim, cross-claim, third-party claim, Answer or

EXHIBIT 2, Page 17

Reply filed under these Rules.

[¶ 6511.15] (o) "President" - means the President of NFA.

[¶ 6511.16] (p) "Respondent" - means a person against whom a claim is asserted under these Rules.

[¶ 6511.17] (q) "Secretary" - means the Secretary of NFA.

[¶ 6511.18] (r) "Self-regulatory organization" - means a contract market, a registered national securities exchange, or a registered national securities association.

[¶ 6511.19] (s) "Third-party Claim" - means a claim filed by a Respondent against a person not a party to the action.

### Return to Main Table of Contents

### [¶ 6517] SECTION 2. ARBITRABLE DISPUTES.
#### (Click Here to Print this Section)
*[Adopted effective February 18, 1992. Effective dates of amendments: May 1, 1994; December 12, 1995; September 1, 1999 and March 1, 2002.]*

[¶ 6517.1] (a) Claims between Members.
(Click Here to Print this Rule) Except as provided in Sections 4 and 5 of these Rules with respect to timeliness requirements, disputes between and among Members shall be arbitrated under these Rules unless:

> (1) the parties, by valid and binding agreement, have committed themselves to the resolution of such dispute in a forum other than NFA;

> (2) the parties to such dispute are all required by the rules of another self-regulatory organization to submit the controversy to the settlement procedures of that self-regulatory organization;

> (3) all parties to the dispute are members of a contract market which has jurisdiction over the dispute; or

> (4) one of the parties to the dispute is a party to a dispute pending in another forum and files a cross-claim or third-party claim in that forum. The cross-claim or third-party claim must arise out of an act or transaction that is the subject of the claim pending in that forum.

### Return to Main Table of Contents

[¶ 6517.2] (b) Claims between Members and Associates.
(Click Here to Print this Rule) Except as provided in Sections 4 and 5 of these Rules with respect to timeliness requirements, disputes between Members and Associates and between Associates shall be arbitrated under these Rules, at the election of the person filing the claim, unless:

> (1) the parties, by valid and binding agreement, have committed themselves to the resolution of such dispute in a forum other than NFA;

> (2) the parties to such dispute are all required by the rules of another self-regulatory organization to submit the controversy to the settlement procedures of that self-regulatory organization; or

> (3) all parties to the dispute are members of a contract market which has jurisdiction over the dispute.

EXHIBIT 2, Page 18

Once a claim is filed, arbitration is mandatory for the Member or Associate the claim is against.

Return to Main Table of Contents

**[¶ 6517.3] (c) Counterclaims, Cross-claims and Third-party Claims.**
**(Click Here to Print this Rule)** Except as provided in Sections 4 and 5 of these Rules with respect to timeliness requirements, a counterclaim, cross-claim or third-party claim must be asserted in an arbitration brought under paragraph (a) above and may be asserted in an arbitration brought under paragraph (b) above if the counterclaim, cross-claim or third-party claim arises out of an act or transaction that is the subject of the Arbitration Claim.

Return to Main Table of Contents

### [¶ 6523] SECTION 3. ARBITRATION PANEL.
### (Click Here to Print this Section)
*[Adopted effective February 18, 1992. Effective dates of amendments: May 1, 1994; June 23, 1997; September 1, 1999 and May 1, 2001.]*

**[¶ 6523.1] a) Appointment of Panel.**
**(Click Here to Print this Rule)**

*Except as provided under Section 7(e) of the Rules, NFA shall conduct all arbitration proceedings under these Rules before an arbitration Panel consisting of the following:*

1.  Where the aggregate claim amount does not exceed $100,000, NFA shall appoint one arbitrator. However, if the aggregate amount of the claim exceeds $50,000 but is not more than $100,000, NFA shall appoint three arbitrators if one of the parties serves a written request on NFA for three arbitrators by no later than 30 days after the last pleading is due or the sole arbitrator asks NFA to appoint two additional arbitrators.

2.  Where the aggregate claim amount exceeds $100,000, NFA shall appoint three arbitrators.

All arbitration Panels shall be appointed by the Secretary and consist of individuals who are NFA Members or individuals connected therewith (one such Member or individual designated as Panel Chairperson).

Return to Main Table of Contents

**[¶ 6523.2] (b) Disclosures Required.**
**(Click Here to Print this Rule)**

Prior to being appointed to the Panel, each arbitrator under consideration shall disclose to NFA any circumstances that might prevent the arbitrator from acting impartially.

Return to Main Table of Contents

**[¶ 6523.3] (c) Appointment of Panel; Disclosure and Challenge.**
**(Click Here to Print this Rule)**

The Secretary shall thereupon appoint, pursuant to Section 3(a), an arbitration Panel to resolve the dispute. No arbitrator shall have acted as the mediator in the same dispute. NFA shall promptly notify the parties of each arbitrator's name, business affiliations, and other relevant information. Any objection of a party to such appointment shall be specific and for cause and submitted to NFA in written form. Each party or their

representative shall disclose to NFA any circumstances likely to affect an arbitrator's impartiality, including any bias or financial interest in the result of the arbitration or any past or present relationship with the arbitrator. Any party who fails to disclose such information shall be deemed to have waived any objection to that arbitrator based on such information. Each arbitrator appointed shall disclose to NFA any circumstances likely to affect impartiality, including any bias or any financial interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Upon receipt of such information from an arbitrator or other source, NFA shall communicate such information to the parties, and if NFA deems it appropriate to do so, to the Panel and others. Thereafter, NFA shall determine whether the arbitrator should be disqualified and shall inform the parties of the decision, which shall be conclusive.

Return to Main Table of Contents


**[¶ 6523.4] (d) Arbitrator's Oath.**
**(Click Here to Print this Rule)**

Before proceeding with the hearing, each arbitrator shall execute an oath whereby the arbitrator promises to faithfully and fairly determine the matter before the Panel.

Return to Main Table of Contents


**[¶ 6523.5] (e) Replacement.**
**(Click Here to Print this Rule)**

If an arbitrator become ineligible or otherwise unable to serve on the Panel, the Secretary shall (unless the parties request otherwise) appoint a replacement to the Panel. In the event an arbitrator is excused or recuses himself after the commencement of the hearing because a party failed to disclose information which may be grounds for objecting to the arbitrator, the party withholding the information shall be deemed to have waived his right to object to proceeding with the remaining two arbitrators. If a replacement is appointed after the commencement of the hearing, the Panel shall determine whether all or any part of any prior hearing sessions shall be repeated.

Return to Main Table of Contents


**[¶ 6523.6] (f) Ex Parte Contacts.**
**(Click Here to Print this Rule)**

No party to the arbitration, or any representative thereof, shall communicate with any Panel member regarding the arbitration, other than inquiries concerning the status thereof, except at the oral hearing or in writing on notice to the other parties.

Return to Main Table of Contents


**[¶ 6529] SECTION 4. TIME PERIOD FOR ARBITRATION.**
**(Click Here to Print this Section)**
*[Adopted effective February 18, 1992. Effective dates of amendments: March 24, 1994; June 7, 1996; June 23, 1997; March 1, 2002 and December 15, 2003.]*

No Arbitration Claim may be arbitrated under these Rules unless an Arbitration Claim or notice of intent to arbitrate (See Sections 5(a) and (c) below) is received by NFA within two years from the date when the party filing the Arbitration Claim knew or should have known of the act or transaction that is the subject of the controversy. No counterclaim, cross-claim or third-party claim may be arbitrated under these Rules unless it is received by NFA within two years from the date when the party asserting the counterclaim, cross-claim or third-party claim knew or should have known of the act or transaction that is the subject of the counterclaim, cross-

EXHIBIT 2, Page 20

claim or third-party claim or it is served on NFA with a timely filed Answer, whichever is later. NFA shall reject any claim that is not timely filed. If, in the course of any arbitration, the Panel determines that the requirements of this section have not been met as to a particular claim, the Panel shall thereupon terminate the arbitration of the claim without decision or award.

**Return to Main Table of Contents**

## [¶ 6535] SECTION 5. INITIATION OF ARBITRATION.
### (Click Here to Print this Section)
*[Adopted effective February 18, 1992. Effective dates of amendments: May 1, 1994; March 12, 1996; June 7, 1996; June 23, 1997; June 1, 1999; March 1, 2002; December 15, 2003; June 13, 2005 and June 5, 2007.]*

An arbitration proceeding under these Rules shall be initiated as follows:

**[¶ 6535.1] (a) Notice of Intent to Arbitrate.**
**(Click Here to Print this Rule)**

If the two-year time limit under Section 4 of these Rules is close to expiring, a person wanting to file an Arbitration Claim may notify NFA, either in writing or orally, of such person's intent to arbitrate. NFA shall maintain a record of the receipt of each such notice and shall promptly provide such person with a copy of these Rules and an Arbitration Claim form.

**Return to Main Table of Contents**

**[¶ 6535.2] (b) Arbitration Claim Pursuant to a Notice of Intent to Arbitrate.**
**(Click Here to Print this Rule)**

If a person who files a notice of intent to arbitrate decides to proceed with NFA arbitration, such person shall, within 35 days after the date NFA provided the person with a copy of the Rules and an Arbitration Claim form under Section 5(a) above, serve a completed Arbitration Claim on NFA.

**Return to Main Table of Contents**

**[¶ 6535.3] (c) Arbitration Claim.**
**(Click Here to Print this Rule)**

NFA shall promptly review each Arbitration Claim for completeness. Any Arbitration Claim which NFA deems to be incomplete, or which is not accompanied by the appropriate fee, shall be returned to the filing party by NFA. In that event, the filing party shall serve a completed Arbitration Claim, together with any unpaid fee, within 20 days following service by NFA. NFA shall reject any Arbitration Claim which has not been timely filed, or for which the appropriate fee has not been paid.

**Return to Main Table of Contents**

**[¶ 6535.4] (d) Notice to Respondent.**
**(Click Here to Print this Rule)**

(1) NFA shall promptly serve a copy of the completed Arbitration Claim on each person named therein as a Respondent and a copy of any agreement to arbitrate.

(2) If a guarantee IB is named in the Arbitration Claim as a Respondent, NFA shall promptly serve a copy of the completed Arbitration Claim on the Member FCM that guaranteed the IB during the time of the acts and

transactions involved in the claim. That Member FCM may intervene in the arbitration proceeding if it chooses to.

**Return to Main Table of Contents**

**[¶ 6535.5] (e) Answer to an Arbitration Claim.**
**(Click Here to Print this Rule)**

A Respondent shall serve its Answer on and concurrently serve a copy on the Claimant within the time period provided below. Any Member FCM served with the Arbitration Claim under Section 5(d)(2) above that wishes to intervene in the arbitration proceeding must serve an Answer and written notice of intervention on NFA and concurrently serve a on the Claimant within the time period provided below for filing the Answer. An allegation in the Arbitration Claim that is not denied in the Answer shall be deemed by the Panel to be admitted.

(1) Claims of $50,000 or Less. Where the Arbitration Claim amount does not exceed $50,000, the Answer shall be served within 20 days following service of the Arbitration Claim by NFA.

(2) Claims of more than $50,000 through $100,000. Where the Arbitration Claim amount exceeds $50,000 but is not more than $100,000, the Answer shall be served within 45 days following service of the Arbitration Claim by NFA. An arbitration service fee of $275.00 shall accompany each Answer. Any Answer which is not accompanied by the appropriate fee shall be returned to the filing party by NFA. In that event, the filing party shall serve a completed Answer on NFA, together with any unpaid fee, within 20 days following service by NFA. NFA shall reject any Answer for which the appropriate fee has not been paid. Each Respondent who files an Answer but does not pay the service fee will have waived its right to an oral hearing and to otherwise participate in the proceeding. However, the Panel may, for good cause shown, accept the Answer and allow the Respondent to participate.

(3) Claims of more than $100,000. Where the Arbitration Claim amount exceeds $100,000, the Answer shall be served within 45 days following service of the Arbitration Claim by NFA. An arbitration service fee of $675.00 shall accompany each Answer. Any Answer which is not accompanied by the appropriate fee shall be returned to the filing party by NFA. In that event, the filing party shall serve a completed Answer on NFA, together with any unpaid fee, within 20 days following service by NFA. NFA shall reject any Answer for which the appropriate fee has not been paid. Each Respondent who files an Answer but does not pay the service fee will have waived its right to an oral hearing and to otherwise participate in the proceeding. However, the Panel may, for good cause shown, accept the Answer and allow the Respondent to participate.

**Return to Main Table of Contents**

**[¶ 6535.6] (f) Counterclaim and Cross-claim.**
**(Click Here to Print this Rule)**

If any counterclaim or cross-claim is asserted, the party asserting the counterclaim or cross-claim shall promptly remit the appropriate fee to NFA. (See Section 11 below.) Any counterclaim or cross-claim which NFA deems to be incomplete, or which is not accompanied by the appropriate fee, shall be returned to the filing party by NFA. In that event, the filing party shall serve a completed counterclaim or cross claim on NFA, together with any unpaid fee, within the time period provided below. NFA shall reject any counterclaim or cross-claim which has not been timely filed, or for which the appropriate fee has not been paid.

(1) Claims of $50,000 or Less. Where the aggregate claim amount does not exceed $50,000, the completed counterclaim or cross-claim shall be served within 10 days following service by NFA.

(2) Claims of more than $50,000. Where the aggregate claim amount exceeds $50,000, the completed counterclaim or cross-claim shall be served within 20 days following service by NFA.

EXHIBIT 2, Page 22

Return to Main Table of Contents

**[¶ 6535.7] (g) Reply to Counterclaim or Cross-claim.**
**(Click Here to Print this Rule)**

The person against whom the counterclaim or cross-claim is asserted shall serve its Reply to the counterclaim or cross-claim on NFA, and concurrently serve a copy on the counterclaiming or cross-claiming Respondent within the time period provided below. Any allegation in the counterclaim or cross-claim that is not denied in the Reply shall be deemed by the Panel to be admitted.

> (1) Claims of $50,000 or Less. Where the aggregate claim amount does not exceed $50,000, the Reply shall be served within 10 days from the date of service of the Answer, counterclaim or cross-claim by NFA.

> (2) Claims of more than $50,000. Where the aggregate claim amount exceeds $50,000, the Reply shall be served within 35 days from the date of service of the Answer, counterclaim or cross-claim by NFA.

Return to Main Table of Contents

**[¶ 6535.8] (h) Third-party Claim.**
**(Click Here to Print this Rule)**

A Respondent may file a third-party claim against a Member or Associate under these Rules. If any third-party claim is asserted, the Respondent asserting the third-party claim shall promptly remit the appropriate fee to NFA. (See Section 11 below.) Any third-party claim, which NFA deems to be incomplete, or which is not accompanied by the appropriate fee, shall be returned to the filing party by NFA. In that event, the filing party shall serve a completed third party claim on NFA, together with any unpaid fee, within the time provided below. NFA shall reject any third-party claim which has not been timely filed, or for which the appropriate fee has not been paid.

> (1) Claims of $50,000 or Less. Where the aggregate claim amount does not exceed $50,000, the completed third-party claim shall be served within 10 days following service of the incomplete third-party claim by NFA.

> (2) Claims of more than $50,000. Where the aggregate claim amount exceeds $50,000, the completed third-party claim shall be served within 20 days following service of the incomplete third-party claim by NFA.

Return to Main Table of Contents

**[¶ 6535.9] (i) Notice to Third-party Respondent.**
**(Click Here to Print this Rule)**

NFA shall promptly serve a copy of the completed third-party claim on each person named therein as a Respondent, and a copy of any agreement to arbitrate.

Return to Main Table of Contents

**[¶ 6535.10] (j) Answer to Third-party Claim.**
**(Click Here to Print this Rule)**

A third-party Respondent shall serve its Answer on NFA and concurrently serve a copy on the third-party Claimant within the time period provided below. An allegation in the third-party claim that is not denied in the

Answer shall be deemed by the Panel to be admitted.

(1) Claims of $50,000 or Less. Where the aggregate claim amount does not exceed $50,000, the Answer shall be served within 20 days following service of the third-party claim by NFA.

(2) Claims of more than $50,000. Where the aggregate claim amount exceeds $50,000, the Answer shall be served within 45 days following service of the third-party claim by NFA.

*Return to Main Table of Contents*

**[¶ 6535.11] (k) Amendments to Claims.**
**(Click Here to Print this Rule)**

After the appointment of a Panel, no new or different claim may be filed except with the Panel's consent.

*Return to Main Table of Contents*

**[¶ 6535.12] (l) Late Answer, Reply or Notice of Intervention.**
**(Click Here to Print this Rule)**

NFA shall accept any Answer or Reply filed prior to the hearing. However, NFA or any party may present an objection to the Panel with regard to the timeliness of any filing. NFA will not accept a late notice of intervention unless the party filing the late notice explains in writing its reasons for the lateness and obtains the Panel's consent to file the late notice.

*Return to Main Table of Contents*

**[¶ 6535.13] (m) Consolidation and Joinder.**
**(Click Here to Print this Rule)**

(1) When Arbitration Claims involving common questions of fact or arising from the same act or transaction are received by the Secretary, the Secretary may, whether or not at the request of any party, order any or all of the proceedings to be consolidated for hearing in the interest of providing a fair, equitable and expeditious procedure and may take such action concerning the proceedings herein as may tend to avoid unnecessary or unreasonable delay.

(2) A party may join multiple claims in a single Arbitration Claim if the claims involve common questions of fact, arise from the same act or transactions, are filed by the same person against the same Respondents (even if the person filing the Arbitration Claim is acting in different capacities) or are filed on behalf of an individual and a corporation against the same Respondents if the individual is the sole shareholder of the corporation. The Secretary may, whether or not at the request of any party, order any or all joined claims to be separated in the interest of providing a fair, equitable or expeditious procedure or to avoid unnecessary or unreasonable delay.

*Return to Main Table of Contents*

**[¶ 6535.14] (n) Attestation.**
**(Click Here to Print this Rule)**

Any claim, answer, counterclaim, cross-claim, reply to counterclaim or cross-claim, third-party claim, or answer to third-party claim must include the following attestation: "The undersigned certifies that, to the best of his/her knowledge, information and belief, formed after a reasonable inquiry, the statements set forth in this pleading are

EXHIBIT 2, Page 24

true and correct."

Return to Main Table of Contents

## [¶ 6541] SECTION 6. RIGHT TO COUNSEL.
### (Click Here to Print this Section)
*[Adopted effective February 18, 1992. Effective dates of amendments: June 23, 1997; December 17, 1999; and June 1, 2006.]*

(a) A party may be represented at any time throughout the arbitration proceeding, including a mediation proceeding, by an attorney-at-law licensed to practice law in the highest court of any state, by a family member or other person who is representing the party without compensation and who does not have an interest in the outcome of the proceeding, or by an officer, partner or employee of the party. The attorney or other representative shall serve timely notice in writing on NFA and the other parties of the name and address of any such representative. The Panel may bar from the proceeding any representative for dilatory, disruptive or contumacious conduct.

(b) A representative of a party may withdraw upon submitting to NFA an affidavit that the party represented has actual knowledge of the withdrawal or that the representative has made a good faith effort to provide such notice.

Return to Main Table of Contents

## [¶ 6547] SECTION 7. PRE-HEARING.
### (Click Here to Print this Section)
*[Adopted effective February 18, 1992. Effective dates of amendments: March 24, 1994; March 12, 1996; June 23, 1997; June 1, 1999; September 1, 1999; March 1, 2002; and June 1, 2006.]*

**[¶ 6547.1] (a) Exchange of Documents and Written Information.**
**(Click Here to Print this Rule)**

(1) The parties shall cooperate, without resort to issuance of subpoenas, in the voluntary exchange of material and relevant documents and written information which may serve to facilitate a fair, equitable and expeditious hearing.

(2) When a claim is accepted by NFA and served on each person named as a Respondent, NFA shall identify, from a list approved by NFA's Board of Directors, documents to be automatically exchanged between the parties. The parties shall exchange those documents no later than 15 days after the last pleading is due.

*[See Interpretive Notice Standard List of Documents to be Exchanged Under Section 8 of NFA's Code of Arbitration.]*

(3) (3) All other requests for documents and written information shall be served as follows:

(i) Where the aggregate claim amount does not exceed $50,000, the requesting party shall serve its requests for documents and written information on the responding party no later than 20 days after the last pleading is due. The responding party shall serve the documents and written information, including written objections, no later than 20 days after the request is due.

(ii) Where the aggregate claim amount exceeds $50,000, the requesting party shall serve its request for documents and written information on the responding party by the requesting party no later than 30 days after the last pleading is due. The responding party shall serve the requesting party with the documents and written information, including written objections, no later than 30

days after the request is due.

(4) Written requests to compel production of documents and written information must be served on NFA and all parties no later than 10 days after the written objections are due. Written responses to the request to compel must be served on the Secretary and all parties no later than 10 days after the request to compel was served.

(5) A request to compel must include a written certification by the filing party or its representative. The certification must state that the filing party or its representative has made a good faith effort to resolve the matters forming the basis for the request through either a telephone conference or in-person meeting with the other party or its representative.

(6) Unless the Panel directs otherwise, requests to compel will be decided on the written submissions of the parties.

(7) A request to compel that is not timely filed under Section 7(a)(4) above will not be allowed except for good cause shown as to why it was late.

(8) Evidence that is otherwise discoverable or admissible in an arbitration proceeding shall not be rendered non-discoverable or inadmissible as a result of its use in connection with a mediation proceeding. However, documents and written information in the mediator's possession are not subject to discovery and may not be subpoenaed for use in the subsequent arbitration hearing.

**Return to Main Table of Contents**

**[¶ 6547.2] (b) Documents to be Introduced into Evidence.**
**(Click Here to Print this Rule)**

(1) Unless the Panel directs otherwise, each party shall serve on every other party all documents in such party's possession which the party intends to introduce into evidence at the hearing as part of its direct case and shall concurrently serve sufficient copies of the documents on NFA at least 10 days prior to the date assigned for an oral hearing.

(2) At least 15 days before the date assigned for a summary proceeding to commence, each party shall serve on NFA sufficient copies of all documents in such party's possession which are to be submitted to the Panel as part of the party's case and shall concurrently serve copies on every other party. At least five days before the date assigned for a summary proceeding to commence, each party shall serve on NFA sufficient copies of all documents in such party's possession which are to be submitted to the Panel to rebut the documents previously served by another party and shall concurrently serve copies on every other party.

**Return to Main Table of Contents**

**[¶ 6547.3] (c) Hearing Plan.**
**(Click Here to Print this Rule)**

The parties shall cooperate with NFA in the formulation of a written hearing plan. A hearing plan is a written document that summarizes each claim, Answer and Reply; identifies any facts the parties have agreed to; identifies the factual and legal issues in dispute; and lists the witnesses and exhibits that will be presented at the hearing. The parties shall serve on NFA and all parties a joint hearing plan, or separate hearing plans if they cannot agree on a joint one, no later than 30 days before the oral hearing date, unless the Panel directs otherwise.

EXHIBIT 2, Page 26

Return to Main Table of Contents

**[¶ 6547.4] (d) Failure to Comply.**
**(Click Here to Print this Rule)**

The failure of any party to comply with Sections 7(a) through 7(c) or any order of the Panel may be brought to the attention of the Panel by NFA or the party seeking such documents or information. The Panel may take such actions in regard to the failure as are just, including, among other things, the following:

(1) finding that the matters regarding which the request was made or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party making the request;

(2) refusing to allow the nonresponsive party to support or oppose designated claims or defenses or prohibiting him from introducing designated matters in evidence; or

(3) striking out pleadings or portions thereof, staying further proceedings until the nonresponsive party complies with the request, dismissing the action or proceeding or any part thereof, or rendering an award by default against the nonresponsive party; or

(4) refusing to hear the testimony of any witness or to accept any document into evidence if the witness or document was not listed in the hearing plan.

Return to Main Table of Contents

**[¶ 6547.5] (e) Motions for Emergency Relief.**
**(Click Here to Print this Rule)**

(1) A motion for emergency relief may be filed with an Arbitration Claim or at any time after a Demand is filed. The motion should include a statement explaining why emergency relief is needed and indicate the party or parties against whom the relief is sought. The party filing the motion shall pay a non-refundable fee of $500 and a hearing fee of $150 when filing the motion.

(2) The party filing the motion shall concurrently serve a copy of the motion on the party against whom relief is sought. NFA shall schedule a hearing on the motion no later than five business days after the motion is received by NFA. A party against whom relief is sought may serve a written response on NFA and the other party at or before the hearing. Service under this section must be accomplished by hand delivery or by use of a generally recognized overnight delivery service.

(3) One arbitrator will decide a motion for emergency relief unless NFA or the arbitrator directs otherwise. The arbitrator or arbitrators deciding the motion for emergency relief may be different from the arbitrator or arbitrators who are assigned to hear the Arbitration Claim.

(4) When the hearing fee paid under Section 7(e)(1) above is not enough to cover the standard preset hearing fees to be paid by NFA to the arbitrator or arbitrators for the time spent hearing the motion, NFA shall collect additional fees to cover the fees to be paid to the arbitrator or arbitrators.

(5) Any order granting emergency relief shall remain in effect until NFA serves the award under Section 10 of these Rules unless the order directs otherwise. The arbitrator or arbitrators may modify the order for good cause shown.

(6) If an order is issued granting emergency relief, the arbitrator or arbitrators may expedite the hearing by setting deadlines for filing pleadings, conducting discovery, exchanging exhibits, preparing the hearing

plan, and scheduling the hearing that are shorter than those established under the Rules.

**Return to Main Table of Contents**

**[¶ 6547.6] (f) Other Pre-Hearing Motions.**
**(Click Here to Print this Rule)**

(1) Motions to dismiss for failing to state a claim will not be heard by the Panel. Other motions to dismiss must be included in a timely filed Answer or Reply. Motions for summary judgment may be raised at any time. Motions for directed verdict may be raised at the hearing.

(2) Except as provided in Section 7(a)(4) and Section 7(e) above, a party has 10 days from the date a pre-hearing motion is received in which to serve a written response on NFA and all other parties. However, where a motion is received less than 20 days in advance of the date the hearing or summary proceeding is scheduled to commence, NFA may, in its discretion, require a written response within less than 10 days. No written replies to a party's response to a motion will be allowed except in the Panel's discretion.

(3) NFA shall assess a motion fee as follows:

(i) In cases involving one arbitrator, a party filing a motion shall include a $125 motion fee for each motion filed more than 80 days after the last pleading is due. This fee may be subsequently waived at the discretion of the arbitrator, or the arbitrator may assess the motion fee against the party causing the filing of the motion. However, this fee shall not apply to a request for a preliminary hearing under Section 9(a) or a request for a postponement under Section 11(c) below.

(ii) In cases involving three arbitrators, any party filing a motion shall include a $425 motion fee for each motion filed more than 100 days after the last pleading is due. This fee may be subsequently waived at the discretion of the arbitrators, or the arbitrators may assess the motion fee against the party causing the filing of the motion. However, this fee shall not apply to a request for a preliminary hearing under Section 9(a) or a request for a postponement under Section 11(c) below.

**Return to Main Table of Contents**

**[¶ 6547.7] (g) Pre-Hearing Decisions by the Arbitrators.**
**(Click Here to Print this Rule)**

(1) For cases that will be decided through a summary proceeding, the Panel will decide all motions as part of the summary review, except for those related to discovery or postponement requests.

(2) With the consent of the other Panel members, one or more of the arbitrators may act on behalf of the Panel to decide any pre-hearing motions from the parties to conduct any pre-hearing conference with the parties. However, the Panel may not postpone the hearing or impose sanctions, dismiss a party, or dismiss all or any portion of a claim without a majority decision.

**Return to Main Table of Contents**

**[¶ 6547.8] (h) Pre-Hearing Conference.**
**(Click Here to Print this Rule)**

For cases that will be decided through an oral hearing, NFA may schedule a pre-hearing conference with the

EXHIBIT 2, Page 28

Panel and the parties. The notice scheduling the pre-hearing conference will specify the issues to be covered at the conference, including identifying outstanding discovery disputes, setting deadlines for other motions and scheduling the hearing. The conference will be conducted by telephone within 30 days after the motion to compel due date, unless the Panel directs otherwise.

**[¶ 6547.9] (i) Depositions.**
**(Click Here to Print this Rule)**

The Panel may, upon the motion of a party, order evidence depositions for good cause shown.

Return to Main Table of Contents

**[¶ 6553] SECTION 8. DISMISSAL WITHOUT PREJUDICE.**
**(Click Here to Print this Section)**
*[Adopted effective February 18, 1992. Effective dates of amendments: May 1, 1994.]*

The Panel may, at the written request of a party or on its own motion, dismiss without prejudice any claim which it determines is not a proper subject for NFA arbitration.

Return to Main Table of Contents

**[¶ 6559] SECTION 9. HEARING.**
**(Click Here to Print this Section)**
*[Adopted effective February 18, 1992. Effective dates of amendments: December 1, 1992; May 1, 1994; June 23, 1997; May 1, 2001; March 1, 2002; June 1, 2006; and October 15, 2007.]*

**[¶ 6559.1] (a) Preliminary Hearing.**
**(Click Here to Print this Rule)**

The Panel may, at the written request of a party or on its own motion, schedule a preliminary hearing in extraordinary circumstances. Such hearing may be conducted orally, by telephone conference, or by written submissions.

Return to Main Table of Contents

**[¶ 6559.2] (b) Place, Time and Notice of Hearing.**
**(Click Here to Print this Rule)**

Except as provided in Section 7(h) or Paragraph (i) of this Section, the place and time of the hearing shall be determined in the sole discretion of the Secretary, who shall endeavor to accommodate, if possible, the preferences of all parties as indicated in a timely-filed pleading. Upon setting the initial hearing date, NFA shall serve notice on each party at least 45 days before the hearing of the date, time and place. NFA shall give reasonable notice of any rescheduled oral hearing date.

Return to Main Table of Contents

**[¶ 6559.3] (c) Failure to Prosecute or Defend.**
**(Click Here to Print this Rule)**

At the written request of any party or on its own motion, the Panel may review the procedural history of the proceeding and any written submissions and may find that a party had failed to prosecute or defend the proceeding. Any party found to have failed to prosecute or defend the proceeding will be deemed to have waived

EXHIBIT 2, Page 29

his right to an oral hearing.

**Return to Main Table of Contents**

**[¶ 6559.4] (d) Procedure.**
**(Click Here to Print this Rule)**

(1) Each party may appear personally at an oral hearing to testify and produce evidence.

(2) Each party (or the party's representative) may present opening and closing arguments, and may examine any other party or witness at an oral hearing and any evidence produced at the oral hearing.

(3) The Panel need not apply the technical rules of evidence.

(4) Any party may cause a verbatim record of an oral hearing to be made at its own expense.

(5) All testimony at the oral hearing shall be given under oath.

(6) The Panel may allow stipulations and establish other procedures as appropriate to expedite the hearing. The Panel may consider affidavits but shall give them such weight as it deems appropriate after considering objections to them.

(7) The Panel may order Members, employees thereof, and Associates to testify and produce documentary evidence. The Panel may issue subpoenas to non-Members as authorized by law. The parties must submit all subpoena requests to the Panel and serve those requests in accordance with Section 15(b) below. Subpoenas issued by the Panel may be enforced in a court of competent jurisdiction.

(8) The party requesting the appearance of a non-party witness shall bear all reasonable costs of such appearance. For purposes of this section, an employee or an Associate of any party shall be considered a party witness.

(9) All conduct and statements, offers and promises, whether oral or written, made by the parties or their representatives in connection with a mediation proceeding shall be confidential and shall not be admissible for any purpose, including impeachment, in any pending or subsequent arbitration proceeding. The mediator may not be called as a witness in a pending or subsequent arbitration proceeding.

(10) In all other respects, the hearing procedures shall be determined by the Panel. The Panel shall afford the parties every reasonable opportunity to present their case completely.

**Return to Main Table of Contents**

**[¶ 6559.5] (e) Extensions and Postponements.**
**(Click Here to Print this Rule)**

Extensions of time or postponements of the hearing may be granted by the Panel when the interests of justice so require, but a hearing in progress shall not be adjourned or interrupted except in compelling circumstances.

**Return to Main Table of Contents**

**[¶ 6559.6] (f) Failure to Comply.**
**(Click Here to Print this Rule)**

EXHIBIT 2, Page 30

The failure of any party to appear at any hearing or any session thereof, or to comply with any notice, order, or procedure in connection therewith, may subject the party to such adverse action as the Panel deems appropriate, including the entry of an award or the dismissal of a claim.

**Return to Main Table of Contents**

**[¶ 6559.7] (g) Reopening the Record.**
**(Click Here to Print this Rule)**

The record may be reopened by the Panel on its own motion or on the motion of a party for good cause at any time prior to the Panel rendering its award. A motion to reopen the record shall automatically stay the time period in which the award shall be rendered.

**Return to Main Table of Contents**

**[¶ 6559.8] (h) Waiver of Defects.**
**(Click Here to Print this Rule)**

Where appropriate, the Panel may excuse any failure to comply with any provision of this section, or any Panel notice, order or procedure.

**Return to Main Table of Contents**

**[¶ 6559.9] (i) Summary Proceeding.**
**(Click Here to Print this Rule)**

The proceedings shall be conducted entirely through written submissions when:

(1) the aggregate amount of the claims (exclusive of interest and costs) does not exceed $15,000, unless the Secretary of the Panel directs otherwise;

(2) the aggregate amount of the claims (exclusive of interest and costs) is more than $15,000 but not more than $50,000, unless the Secretary or the Panel directs otherwise or one of the parties to the proceeding serves a written request for an oral hearing on NFA no later than 30 days after the last pleading is due; or

(3) the Panel has consented to the written agreement of the parties to waive the oral hearing. A written agreement is not required of any party that has waived its right to an oral hearing under any other provision of these Rules.

**Return to Main Table of Contents**

**[¶ 6565] SECTION 10. AWARD, SETTLEMENT AND WITHDRAWAL.**
**(Click Here to Print this Section)**
*[Adopted effective February 18, 1992. Effective dates of amendments: May 17, 1993; March 24, 1994; March 12, 1996; June 23, 1997; June 1, 1999; September 1, 1999; March 21, 2001; March 10, 2005; June 1, 2006; and October 1, 2006.]*

**[¶ 6565.1] (a) Issuance of Award.**
**(Click Here to Print this Rule)**

The Panel shall notify NFA of its decision within 30 days after the record is closed. NFA shall then prepare a

EXHIBIT 2, Page 31

written award form, to be dated and signed by the Panel members. NFA shall promptly serve a copy of the award on each party or its representative. The award shall be that of the Panel majority.

**Return to Main Table of Contents**

**[¶ 6565.2] (b) Relief.**
**(Click Here to Print this Rule)**

The award may grant or deny any of the relief requested and may include an assessment of interest, costs or fees (See **Sections 7, 11 and 12**). A request for declaratory relief will only be heard by the arbitrators if the Respondent agrees to have the arbitrators hear the claim.

**Return to Main Table of Contents**

**[¶ 6565.3] (c) Finality.**
**(Click Here to Print this Rule)**

The Panel's award shall be final on the date thereof. The award may be modified by the Panel if a party submits a written request for modification which is received by NFA within 20 days from the date of service of the award on the parties, and the Panel deems modification necessary because:

> (1) there is an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

> (2) the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or

> (3) the award is imperfect in matter of form not affecting the merits of the controversy.

NFA will not forward a modification request to the Panel unless it is based on one of the grounds listed above. The timely filing of a request for modification shall stay automatically the finality of any award until NFA rejects the request or the Panel either modifies the award or denies the request for modification.

**Return to Main Table of Contents**

**[¶ 6565.4] (d) Appeal.**
**(Click Here to Print this Rule)**

There shall be no right of appeal of the award.

**Return to Main Table of Contents**

**[¶ 6565.5] (e) Award Binding.**
**(Click Here to Print this Rule)**

All parties shall be bound by the award and any modification thereof.

**Return to Main Table of Contents**

**[¶ 6565.6] (f) Judgment.**
**(Click Here to Print this Rule)**

EXHIBIT 2, Page 32

Judgment on the award may be entered in any court of competent jurisdiction.

**Return to Main Table of Contents**

**[¶ 6565.7] (g) Failure to Comply.**
**(Click Here to Print this Rule)**

(1) The President may, on 30 days written notice, summarily suspend a Member or Associate when the Member, or employee thereof, or Associate:

(i) fails to comply with an award within 30 days from the date of service of the award by NFA or such other period as specified in the award unless

    (A) a request to modify the award is pending under Section 10(c) or

    (B) the Member or Associate who failed to comply has a pending application to vacate, modify or correct the award in a court of competent jurisdiction and has posted a bond with NFA equal to 150% of the amount of the award against that person or such lesser amount as NFA shall require in a particular case, but not less than 110% unless a satisfactory bond has been posted with the court; or

(ii) fails to comply with a settlement agreement within 30 days after NFA terminates the arbitration proceeding pursuant to Section 10(h) or such other period as specified in the settlement agreement, or

(iii) fails to comply with a settlement agreement executed in connection with an NFA-sponsored pre-arbitration mediation proceeding within 30 days after the time stated in the settlement agreement; or

(iv) fails to pay any fee assessed within the time so ordered by the Panel.

The suspension shall remain in effect until such award, settlement agreement, or order of the Panel has been satisfied.

(2) A Member which guaranteed an IB during the relevant time may, on 30 days written notice, be summarily suspended by the President if the guarantor fails to pay an award issued against the IB under Section 10(c) or a settlement agreement entered into by the IB under Section 10(h) within 30 days after the guarantor has received actual notice that IB has failed to comply with the award or settlement agreement. The suspension shall be lifted if the award or settlement agreement is satisfied.

(3) When any Member or Associate fails to comply with any interim order issued under Section 7(e) above, that Member or Associate may be summarily suspended by the President until the Member or Associate complies with the order. Any Member or Associate subject to a summary suspension may, within 30 days of the date of service of the Notice of Suspension, appeal the suspension to the Commission and may, within 10 days of service of the Notice of Suspension, petition the Commission for a stay of the suspension.

(4) In lieu of or in addition to suspending any Member or Associate for failing to comply with an award, settlement agreement or Panel order, NFA may initiate disciplinary action under its Compliance Rules for the failure of any Member or Associate to comply with the award, settlement agreement or Panel's order.

**Return to Main Table of Contents**

**[¶ 6565.8] (h) Satisfaction of Demand.**
**(Click Here to Print this Rule)**

At any time during the course of an arbitration, a party may satisfy a claim by payment or settlement, including settlement through mediation. The arbitration proceeding will terminate upon receipt of written notice of satisfaction and withdrawal of the claim duly executed by the parties and submitted to NFA. If NFA is notified that a claim has been settled, but the notification is not in writing or is not duly executed by the parties, NFA shall send written notice to the parties that the arbitration proceeding will terminate within 20 days of service of such notice unless NFA receives written notice that the claim has not been settled.

**Return to Main Table of Contents**

**[¶ 6565.9] (i) Consent Award.**
**(Click Here to Print this Rule)**

If parties agree to satisfy a claim at any time during the arbitration, the Panel may, at the request of such parties, set forth the terms of the satisfied claim in a consent award.

**Return to Main Table of Contents**

**[¶ 6565.10] (j) Withdrawal of Claim.**
**(Click Here to Print this Rule)**

(1) At any time during the course of the arbitration, a party may withdraw a claim against any Respondent who has not filed an Answer. A written notice of withdrawal must be filed with NFA. The withdrawal will be without prejudice unless the notice states otherwise.

(2) After a party has filed a pleading, another party may not withdraw a claim against that party unless the party consents. The notice and the consent must be in writing and filed with NFA. The withdrawal will be without prejudice unless the notice or the consent states otherwise.

**Return to Main Table of Contents**

**[¶ 6571] SECTION 11. ARBITRATION FEES.**
**(Click Here to Print this Section)**
*[Adopted effective February 18, 1992. Effective dates of amendments: May 1, 1994; December 12, 1995; June 23, 1997; February 1, 2000; May 1, 2001 and March 1, 2002.]*

**[¶ 6571.1] (a) Filing and Hearing Fees.**
**(Click Here to Print this Rule)**

(1) Each Member or Associate filing a claim under these Rules shall pay a filing and hearing fee based on the amount claimed, including punitive and treble damages but exclusive of interest and costs, as follows:

| Amount of Claim | Filing Fee | Hearing Fee |
| --- | --- | --- |
| $ 0.00 - $ 10,000.00 | $ 750.00 | $ 125.00 |
| $ 10,000.01 - $ 20,000.00 | $1,900.00 | $ 125.00 |
| $ 20,000.01 - $ 50,000.00 | $1,900.00 | $ 125.00 |
| $ 50,000.01 - $100,000.00 | $3,000.00 | $ 275.00 |
| $100,000.01 - $150,000.00 | $4,400.00 | $1,275.00 |
| $150,000.01 - $500,000.00 | $4,400.00 | $2,550.00 |
| More than $500,000.00 | $4,400.00 | $5,100.00 |

EXHIBIT 2, Page 34

(2) Where the hearing fees paid by the parties is not enough to cover the standard preset fees to be paid by NFA to the arbitrators, NFA shall collect additional fees to cover the fees to be paid to the arbitrators. If a case requires more than four days of hearing, the hearing fees will be twice the standard preset fees, unless the arbitrators order the fees to remain at the standard amount.

(3) NFA shall also collect additional hearing fees when:

(i) a party requests a preliminary hearing under Section 9(a);

(ii) a party requests an oral hearing under Section 9(i)(2); or

(iii) a party requests three arbitrators under Section 3(a)(1). However, where the sole arbitrator asks NFA to appoint two additional arbitrators, NFA shall assess the additional fees equally against the parties.

(4) The arbitrators, in their discretion, may assess the entire fee against any party or may divide the fee among any or all parties. Hearing fees shall be paid to NFA in advance of the hearing sessions to which they apply.

**Return to Main Table of Contents**

**[¶ 6571.2] (b) Refunds.**
**(Click Here to Print this Rule)**

(1) A full refund of any filing and hearing fees paid under Section 11(a) above shall be made if, prior to the appointment of a Panel, a claim filed under Section 2 above is found to be not arbitrable.

(2) If all claims have been settled or withdrawn and NFA receives notice of the settlement or withdrawal at least five days in advance of the first scheduled pre-hearing conference date, if one is scheduled, or at least 30 days in advance of the first scheduled preliminary hearing date or oral hearing date, if no pre-hearing conference is scheduled, a full refund of the hearing fees paid under Section 11(a) and the arbitration service fees paid under Section 5(e) shall be made to the party paying the fee.

(3) If all claims have been settled or withdrawn and NFA receives written notice of the settlement or withdrawal at least 15 days in advance of the summary proceeding start date or first scheduled oral hearing date or preliminary hearing date, the hearing fees paid under Section 11(a) and arbitration service fees paid under Section 5(e) shall be refunded to the party paying the fee in accordance with the schedule below.

| Amount of Claim | Hearing Fee Refund | Service Fee Refund |
|---|---|---|
| $ 0.00 - $ 50,000.00 | $ 125.00 | N/A |
| $ 50,000.01 - $100,000.00 | $ 125.00 | $125.00 |
| $100,000.01 - $150,000.00 | $ 925.00 | $325.00 |
| $150,000.01 - $500,000.00 | $2,200.00 | $325.00 |
| More than $500,000.00 | $4,750.00 | $325.00 |

**Return to Main Table of Contents**

**[¶ 6571.3] (c) Postponement Fees.**
**(Click Here to Print this Rule)**

Each party causing an adjournment or postponement of any scheduled oral hearing shall pay to NFA a

postponement fee of $300 for the first postponement request by that party, $500 for the second request by that party, and $1,000 for any subsequent request by that party. This fee may be waived at the discretion of the arbitrators. The arbitrators also may assess reasonable and necessary expenses incurred by the parties and their witnesses, including reasonable attorneys' fees, as a result of a postponement. No fee shall be assessed if an arbitrator becomes ineligible or otherwise unable to serve, or if a hearing extends over the expected time period.

Return to Main Table of Contents

### [¶ 6577] SECTION 12. ARBITRATION COSTS.
### (Click Here to Print this Section)
*[Adopted effective February 18, 1992. Effective dates of amendments: May 1, 1994 and March 12, 1996.]*

A Panel may assess against a party any one or more of the following costs, upon a finding that such party's claim or defense was frivolous or was made in bad faith, or that the party engaged in willful acts of bad faith during the arbitration: Reasonable and necessary expenses incurred by (a) the arbitrators or (b) any other party or witness, including reasonable attorneys' fees. The Panel may also award attorneys' fees provided that a statutory or contractual basis exists for awarding such fees. Requests for attorneys' fees and costs incurred in the arbitration proceeding must be raised in the proceeding or they are waived.

Return to Main Table of Contents

### [¶ 6583] SECTION 13. NON-WAIVER OF NFA RIGHTS.
### (Click Here to Print this Section)
*[Adopted effective February 18, 1992.]*

The submission of a matter to arbitration under these Rules shall not affect any right of NFA regarding the matter, including the right to initiate a disciplinary proceeding.

Return to Main Table of Contents

### [¶ 6589] SECTION 14. MEDIATION.
### (Click Here to Print this Section)
*[Adopted effective February 18, 1992. Effective dates of amendments: March 21, 2001]*

NFA may, in its discretion, notify the parties of the option to proceed to mediation.

Return to Main Table of Contents

### [¶ 6595] SECTION 15. MISCELLANEOUS.
### (Click Here to Print this Section)
*[Adopted effective February 18, 1992. Effective dates of amendments: June 23, 1997; March 21, 2001 and March 1, 2002]*

[¶ 6595.1] (a) Computation of Time.
(Click Here to Print this Rule)

(1) Except as otherwise provided in these Rules, service shall be deemed to occur on the earlier of the date that the documents are faxed (as evidenced by affidavit of service), e-mailed (as evidenced by affidavit of service), postal mailed (as evidenced by postmark or affidavit of service), or the date personally delivered (as evidenced by affidavit of service).

(2) The counting of days shall include all calendar days and should a due date fall on a weekend or a

legal holiday, such due date will be computed as the next business day on which mail is delivered.

Return to Main Table of Contents

**[¶ 6595.2] (b) Service of Process.**
**(Click Here to Print this Rule)**

Unless otherwise indicated, service may be accomplished by hand delivery, or by first class or certified mail, or by use of a generally recognized overnight delivery service to the party's last known business or home address on record with NFA. Documents may also be served by facsimile or electronic mail on NFA and any party who has consented to service by that method. All documents which are served on NFA shall be concurrently served on each party who has filed a pleading using methods designed to ensure that NFA and all parties will receive the documents on the same day. Service on a party's representative shall be service on the party.

Return to Main Table of Contents

**[¶ 6595.3] (c) Address of Record.**
**(Click Here to Print this Rule)**

A party shall promptly notify NFA of any change in the party's address or addresses, including the party's e-mail address or facsimile number, or the address of the party's representative on record with NFA.

Return to Main Table of Contents

## [¶ 6596] SECTION 16. AGREEMENTS CONFLICTING WITH THE RULES.
### (Click Here to Print this Section)
*[Adopted effective May 17, 1993. Effective dates of amendments: March 24, 1994.]*

These Rules shall supersede any provision in an agreement entered into between the parties, either before or after a dispute arises, if the provision in the agreement contradicts or limits the Rules or imposes additional obligations on NFA or the arbitrators. However, in the Secretary's discretion, the provision may be applied to NFA arbitration if the agreement names NFA as the arbitration forum or the parties consent in writing to apply the provision to NFA arbitration.

Return to Main Table of Contents

## [¶ 6597] SECTION 17. NFA'S AUTHORITY TO INTERPRET THE RULES.
### (Click Here to Print this Section)
*[Adopted effective June 1, 1999.]*

NFA has the authority to interpret the provisions of these Rules.
©2003-2008 National Futures Association

Michael J. Abbott (Bar No. 53402)
**JONES, BELL, ABBOTT, FLEMING & FITZGERALD L.L.P.**
601 South Figueroa Street, Twenty-Seventh Floor
Los Angeles, California 90017-5759
Telephone Number: (213) 485-1555
Facsimile Number: (213) 689-1004

Joel J. Bellows (Cal. Bar No. 37092)
Christopher L. Gallinari
**BELLOWS AND BELLOWS, P.C.**
209 South LaSalle Street, Suite 800
Chicago, IL 60604
Telephone Number:  (312) 332-3340
Facsimile Number:  (312) 332-1190

Attorneys for Defendants Peregrine Financial Group, Inc.,
and Joseph Peter Slaga

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DAVID ZAITZEFF, an individual on his own behalf and on behalf of the State of California Labor and Workforce Development Agency as a Private Attorney General,<br><br>            Plaintiff,<br><br>    vs.<br><br>PEREGRINE FINANCIAL GROUP, INC., an Iowa Corporation, JOSEPH PETER SLAGA, an individual; and DOES 1-10, inclusive,<br><br>          Defendants. | **CASE NO.  CV08-2874-MMM**<br><br>**ORDER RE DISMISSAL, TRANSFER, AND ARBITRATION**<br><br><br>Hearing Date: June 23, 2008<br>Time:        10:00 A.M.<br>Judge:      Hon. Margaret M. Morrow<br>Courtroom:  780 |

## ORDER

      This matter coming to be heard on Defendants' motion to dismiss or, in
the alternative to transfer venue to the Northern District of Illinois, Eastern Division or

in the alternative to compel arbitration, **IT IS HEREBY ORDERED**:

      1.    This action is hereby dismissed for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure; or, in the alternative,

      2.    The court finds that, based upon the forum selection clause contained within the parties' agreement, venue is improperly laid in this judicial district and that this case should have been brought in the Northern District of Illinois, Eastern Division.  In the interests of justice, pursuant to 28 U.S.C. Section 1406(a), this action is hereby transferred to the Northern District of Illinois, Eastern Division, for further proceedings, including but not limited to proceedings on Defendants' petition to compel arbitration; or, in the alternative,

      3.    Plaintiff is hereby directed to submit all of the claims contained in his Complaint to arbitration before the National Futures Association, such arbitration to be venued in Chicago, Illinois pursuant to the forum selection clause contained in the parties' agreement.  All further proceedings in this action are stayed pending arbitration.

Dated: _____

_____
UNITED STATES DISTRICT COURT