MICHAEL L. TRACY, ESQ. (SBN 237779)
mtracy@michaeltracylaw.com
MEGAN ROSS HUTCHINS, ESQ. (SBN 227776)
mhutchins@michaeltracylaw.com
LAW OFFICES OF MICHAEL L. TRACY
2030 Main Street, Suite 1300
Irvine, CA 92614
T: (949) 260-9171
F: (866) 365-3051

Attorneys for Plaintiff
DAVID ZAITZEFF

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DAVID ZAITZEFF, et al., | ) Case No. CV 08-2874 MMM (JWJx) |
| Plaintiff, | ) **PLAINTIFF'S OPPOSITION TO** |
| vs. | ) **MOTION TO DISMISS COMPLAINT** |
| | ) **FOR IMPROPER VENUE OR IN** |
| | ) **THE ALTERNATIVE FOR A** |
| PEREGRINE FINANCIAL GROUP, INC., et al., | ) **TRANSFER OF VENUE AND** |
| | ) **PETITION TO COMPEL** |
| Defendants. | ) **ARBITRATION** |
| | ) **[DECLARATION OF MICHAEL** |
| | ) **TRACY AND DECLARATION OF** |
| | ) **DAVID ZAITZEFF FILED** |
| | ) **CONCURRENTLY]** |
| | ) **JURY TRIAL DEMANDED ON** |
| | ) **CONTRACT FORMATION AND** |
| | ) **BREACH ISSUES [9 U.S.C. § 4]** |
| | ) Hearing Date: June 23, 2008 10AM |
| | ) Judge: Hon. Margaret M. Morrow |

///
///
///
///
///

# **Table of Contents**

I.    Introduction......................................................................................................... 1

II.   Argument ............................................................................................................ 1

    A.        The putative contract to transfer venue states that the
    venue selection clause terminates upon seven days written notice and such
    written notice has been given. ......................................................................... 1

        1.        There is no basis to infer that the venue clause would
        apply after it was terminated............................................................................ 4

        2.        The terms of the venue selection clause show that it
        only applies to contractual disputes and not claims for statutory violations. .................... 5

    B.        The   putative   contract   for   forum   selection   is
    unconscionable because it would deny Mr. Zaitzeff any real opportunity to
    litigate his claims in that witnesses would be completely unavailable in
    Chicago and the costs to Mr. Zaitzeff would be well beyond his means to
    pay.        ......................................................................................................... 6

        1.        The cases cited by PFG do not support enforcing the
        venue selection clause........................................................................................ 7

    C.        The putative contract to arbitrate specifically gives
    Mr. Zaitzeff the right to refuse arbitration and Mr. Zaitzeff has exercised that
    right.        ................................................................................................. 9

        1.        There is no basis to consider any counterclaim
        allegedly raised by PFG in determining whether this current matter is subject
        to arbitration.        ................................................................................... 10

    D.        If a contract exists which requires Mr. Zaitzeff to
    arbitrate this dispute, it is unconscionable. ...................................................... 11

        1.        The NFA Rules require that the arbitrators be
        representatives of Member firms and does not allow for the Plaintiff to reject
        any appointed arbitrator for any reason, even for cause.................................... 12

        2.        The NFA openly advertises that their arbitrators will
        not issue written opinions specifically so that any type of judicial review can
        be avoided.        ................................................................................... 13

        3.        PFG has admitted that the NFA arbitration forum will
        not allow Mr. Zaitzeff to pursue any of his Private Attorney General Act
        claims.        ................................................................................... 13

        4.        Mr. Zaitfeff would be required to pay thousands of
        dollars to have his case heard in arbitration which he can not financially
        afford.        ................................................................................... 14

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

5.          The agreement is unconscionable because it would require Mr. Zaitzeff to arbitrate his claims, but not require PFG to arbitrate their claims against him. ..................................................................... 15

E.          Any factual disputes about the validity of the putative contract must be resolved by a jury. ................................................................. 15

III.    Conclusion ......................................................................................................... 16

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981) ..................................5

*Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. Cal. 2007) ..................................15

*Fireman's Fund Insurance Co. v. Cho Yang Shipping Co.*, 131 F.3d 1336 (9th Cir. Cal. 1997) ..................................................................................................................8

*First Options v. Kaplan*, 514 U.S. 938 (1995)..................................................................1

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. Cal. 1988)..............5

*Murphy v. Schneider National, Inc.*, 362 F.3d 1133 (9th Cir. Or. 2004) ...................2,7,16

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. Cal. 2006)...........................1,6,11

*Plum Tree, Inc. v. Stockment*, 488 F.2d 754 (3d Cir. Pa. 1973) .........................................4

*Spradlin v. Lear Siegler Management Services Co.*, 926 F.2d 865 (9th Cir. Cal. 1991)................................................................................................................................8

*Volt Information Scis. v. Board of Trustees*, 489 U.S. 468 (1989)......................................9

## STATE CASES

*Armendariz v. Foundation Health Psychcare Services*, 24 Cal. 4th 83 (2000).1,6,11,13,14

*Bolter v. Superior Court*, 87 Cal. App. 4th 900 (2001) .....................................................6,7

*Dunlap v. Superior Court*, 142 Cal. App. 4th 330 (2006)................................................14

*Koken v. Stateco, Inc.*, 2006 WL 2918050 (N.D. Cal. Oct. 11, 2006) ............................7,8

## FEDERAL STATUTES

9 U.S.C. § 2  ....................................................................................................................11

28 U.S.C. 1404(a) ..............................................................................................................4

9 U.S.C. § 4.....................................................................................................................1,16

## STATE STATUTES

Cal. Lab. Code § 2699(i) ...................................................................................................14

Cal. Lab. Code § 2698, et seq...........................................................................................14

Cal. Lab. Code § 2699(a)................................................................................................4.14

## I.    Introduction

Defendants have brought a motion to dismiss based on improper venue and based on a purported contract to arbitrate.  Defendants motion to dismiss based on improper venue should be denied because (1) the putative contract to transfer venue states that the venue selection clause terminates upon seven days written notice, and such written notice has been given, (2) the putative contract to transfer venues states that it only applies to contract disputes and not to statutory claims, and (3) even if the contract was not terminated, the forum selection clause is unconscionable under the principals adopted by the 9th Circuit in *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. Cal. 2006).

Defendants' motion to compel arbitration should be denied because (1) the putative contract to arbitrate specifically gives Mr. Zaitzeff the right to refuse arbitration, and (2) even if the contract did require arbitration, it would be unconscionable under the principals established in *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83 (2000).

Finally, Mr. Zaitzeff argues that the no contract was formed because the circumstances around the signing of the contract and its terms make it unconscionable.  In addition, Mr. Zaitzeff claims that he never breached any contract to arbitrate.  When a dispute of fact exists as to the formation and/or breach of an arbitration agreement, "the court shall proceed summarily to the trial thereof" and that if a jury is demanded, the issues must be tried by jury.  9 U.S.C. § 4.  As disputes of fact exist as to the formation of the contract and whether a breach occurred, Mr. Zaitzeff demands a jury trial on these issues.

## II.    Argument

A.    **The putative contract to transfer venue states that the venue selection clause terminates upon seven days written notice and such written notice has been given.**

In evaluating any contract, even ones for arbitration or venue selection, the court must enforce the contract according to its terms.  *First Options v. Kaplan*, 514 U.S. 938, 945 (1995).  In addition, in a Rule 12(b)(3) motion "the trial court must draw all reasonable

inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. Or. 2004).

Setting aside any issues of unconscionability, the terms of the venue selection clause are stated in Paragraph 17 of the "Associated Persons Agreement."  (Defendants Decl. Rebecca J. Wing Exhibit 1, Page 12).  The issue is that Paragraph 19 of that same agreement states that Paragraph 17 terminates upon, among other things, seven days written notice.  In its entirety, Paragraph 19 reads:

> <u>Effective Date</u>. This Agreement shall be effective upon the date first written above and shall remain in effect **until terminated by either party upon seven (7) days written notice to the other**; except that either party may terminate immediately without notice should the CFTC or NFA cause the registration of the other to be revoked and/or suspended, or should either party violate any of the terms of the Agreement, become insolvent, bankrupt, **or fail to meet any financial obligation due the other within five (5) days after receipt of written demand**, or for other good cause. The termination of this Agreement does not terminate, suspend or waive any obligations the AP owes to PPG pursuant to paragraphs 4, 5, 6, 8, 10, 12 and 13 above. All provisions of this Agreement relating to Customer margin, deficits, payments. set-off, confidentiality, guarantee and indemnification, shall survive the termination of this Agreement (emphasis added). (Decl. Wing Exhibit 1 p.12).

The terms of the contract are clear.  The venue selection clause contained in Paragraph 17 is terminated upon either seven days written notice or within five days of presenting a written demand that is not paid.  It is clear that the contract did not intend for the venue selection clause to continue past the termination of the agreement because the contract specifically states so.  The words of the contract specifically identify exactly which paragraphs would survive the termination of the contract and in addition, it also identifies what issues are covered in those paragraphs.  The venue selection paragraph is never listed as a term that survives termination.  As such, any venue selection clause terminated if Mr.

1  Zaitzeff either provided written notice of the termination or presented a written demand for

2  payment which was denied.

3         Mr. Zaitzeff provided written notice that he was terminating the Associated Person

4  Agreement when he terminated his employment on March 24, 2008.  (Declaration of David

5  of David Zaitzeff ¶4).  As such, the venue selection clause terminated seven days later upon

6  its own terms.  As such, on March 31, 2008, there was no venue selection clause in place

7  and any action initiated after that date is not subject to such a clause.

8         Mr. Zaitzeff also sent, through his counsel, a demand for unpaid wages.  This letter

9  was sent on March 26, 2008 and demanded that PFG pay him $77,409. A copy of this letter

10 is attached to the Declaration of Michael Tracy as Exhibit A.  In a letter dated April 15,

11 2008, PFG acknowledged receipt of this letter and refused to pay their financial obligation.

12 A copy of PFG's response is attached as Exhibit B.   Given that PFG failed to pay their

13 financial obligation within 5 days of receipt of a written demand, the terms of the contract

14 require that the venue selection clause be terminated.

15        In meeting and conferring with counsel for PFG, they took the position that neither

16 of written resignation nor the failure to pay the demand were sufficient to terminate the

17 agreement.  As such, Mr. Zaitzeff, again through counsel, mailed a letter on May 29, 2008

18 which explicitly terminated the agreement.  A copy of this letter is attached as Exhibit H.

19 As the hearing on this motion is not set until well after 7 days beyond May 29, 2008, it is

20 undisputed that at the time of the hearing, the venue selection clause will no longer be in

21 place.

22        PFG argues that because this lawsuit was filed while the claim the venue selection

23 clause was in place, it must be dismissed for improper venue.  Again, setting aside the

24 issues of the unconscionability of the agreement, even if this Court accepts PFG's

25 argument, it would be a waste of judicial resources for this Court to dismiss this current

26 case only to allow Mr. Zaitzeff to re-file it in this same court the next day, as the venue

27 selection clause would indisputably be no longer effective.  As such, the motion to dismiss

28 for improper venue should be denied.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1          1.    **There is no basis to infer that the venue clause would apply after it was**
2                 **terminated.**

3          PFG argues that even though the venue selection clause has been terminated, it
4    should still apply to this case because some of the events that gave rise to the dispute took
5    place while the venue selection clause was putatively in place.  There is no support for this
6    reading in the contract.  In fact, had this interpretation been desired by the parties, they had
7    only to include Paragraph 17 as a paragraph that survived the termination of the contract.
8    The clear wording of Paragraph 17 states that the Mr. Zaitzeff "specifically consents and
9    submits to the jurisdiction" of courts in Chicago.  The termination of the Agreement
10   terminated that consent.

11         Without Mr. Zaitzeff's consent at the time the lawsuit was filed, PFG must rely on a
12   motion under 28 U.S.C. 1404(a) for inconvenience, and PFG has introduced no evidence
13   that Chicago is a more convenient forum. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757
14   (3d Cir. Pa. 1973).  The Court in *Plum Tree* analogized a venue selection clause to be the
15   same as a "waiver by the [] party to assert is own convenience as a factor favoring a
16   transfer." *Id* at 758 FN7.  Using this analogy, the waiver is only initiated at the time of the
17   motion – that is, there either is or is not a waiver to raising an objection to the motion.  At
18   this time, it is undisputed that Mr. Zaitzeff is not bound by any forum selection clause
19   provision, so he is free to assert any objections to this motion.

20         In addition, PFG's interpretation would present an unworkable split in the venue.
21   For instance, while Mr. Zaitzeff's individual claims are for damages that occurred while he
22   was employed at PFG and the venue selection clause was putatively in place, his claims
23   under the Private Attorney General Act of 2004 are for all employees of PFG including
24   "current or former employees."  Cal. Lab. Code § 2699(a).  These violations are alleged to
25   be continuing and ongoing.  (See COMPLAINT FOR UNPAID OVERTIME, etc, p.4:1-3).
26   As such, using PFG's argument, the Private Attorney General Act of 2004 claims that arise
27   after the termination date of the venue selection clause should be conducted in Los Angeles
28   and the other claims should be conducted in Chicago.  This would be completely

1  unworkable and PFG has not cited a single authority that holds that a forum selection clause

2  can apply to part of a claim.

3      2.    **The terms of the venue selection clause show that it only applies to**

4          **contractual disputes and not claims for statutory violations.**

5      As above, this Court is obligated to enforce the terms of the venue selection clause,

6  should an enforceable contract exist.  The terms of the venue selection clause read:

7      The parties agree that all actions, disputes, claims or proceedings,
       including, but not limited to, any arbitration proceeding, **arising**
8      **directly or indirectly in connection with, out of, or related to or**
       **from this Agreement, any other agreement between [Plaintiff]**
9      **and [Defendant]**, whether or not initiated by [Defendant], shall be
       adjudicated only in courts or other dispute resolution forums whose
10     situs is within the City of Chicago, State of Illinois. [Plaintiff] hereby
       specifically consents to the jurisdiction of any State or Federal court,
11     or arbitration proceedings located within the City of Chicago, State of
       Illinois. (emphasis added) (Def. Motion to Dismiss p.1:25-2:3)
12

13

14     A brief reading of the operative complaint in this matter shows that it does not relate

15 to any Agreement between PFG and Mr. Zaitzeff.  A forum selection clause that applies to

16 contract causes of action will only apply to other claims if those claims require

17 interpretation of a contract.  *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509,

18 514 (9th Cir. Cal. 1988).  Here, the claims are all statutory claims for unpaid overtime and

19 various other labor code violations.  Mr. Zaitzeff has not alleged that any agreement has

20 been breached or that the claims relate to arise out of any agreement.  In addition, as

21 minimum wage and overtime can not be waived by contract, there is no need to interpret or

22 review any contract to determine if Mr. Zaitzeff is entitled to these provisions.  *Barrentine*

23 *v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981)

24     PFG agues that the forum selection clause applies to "all disputes" and not just

25 disputes that arise out of the Agreement.  However, they have provided no explanation as to

26 why, if the parties intended the clause to cover all disputes, the language of the contract did

27 not say so.  In fact, the language of the contract stays that it only applies to claims "arising

28 directly or indirectly in connection with, out of, or related to or from this Agreement, [or]

-5-

1  any other agreement between" the parties.  As PFG has offered no explanation as to why

2  the forum selection clause should cover this dispute, their motion to enforce the clause

3  should be denied.

4    B.    **The putative contract for forum selection is unconscionable because it would**

5    **deny Mr. Zaitzeff any real opportunity to litigate his claims in that witnesses**

6    **would be completely unavailable in Chicago and the costs to Mr. Zaitzeff would**

7    **be well beyond his means to pay.**

8    The 9th Circuit follows the rule that forum selection clauses are valid and should be

9  given effect unless enforcement of the clause would be unreasonable. *Nagrampa v.*

10  *MailCoups, Inc.*, 469 F.3d 1257, 1287 (9th Cir. Cal. 2006).  Specifically, the party opposing

11  the clause must show that the clause was both procedurally and substantively

12  unconscionable. *Id* at 1293.  Contracts will be deemed to be procedurally unconscionable

13  where there is unequal bargaining power between the contracting parties. *Armendariz v.*

14  *Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000).  Substantive unconscionability

15  will be found where the result of the contract is inherently one-sided. *Id*.

16    Mr. Zaitzeff was presented his contract as a required condition of employment and it

17  was given to him on a take-it-or-leave it basis.  Decl. Zaitzeff ¶6.  He was never given an

18  opportunity to negotiate any of its terms. Decl. Zaitzeff ¶6.  In *Nagrampa v. MailCoups,*

19  *Inc.*, 469 F.3d 1257, 1282 (9th Cir. Cal. 2006) the Court found those exact same conditions

20  as sufficient for procedural unconscionability.  Similarly, in *Armendariz,* the Court found

21  that a contract of adhesion was unconscionable when the party in the weaker bargaining

22  position is presented only with the option to accept or reject it. *Armendariz* at 113.  Given

23  that Mr. Zaitzeff was presented with this agreement in an identical manner, the agreement is

24  procedurally unconscionable.

25    The issue of substantive unconscionability of the venue selection clause turns on

26  whether the selected venue is reasonable. *Nagrampa* at 1287.  In *Bolter v. Superior Court*,

27  87 Cal. App. 4th 900, 909 (2001) (cited with approval in *Nagrampa*), the Court held that a

28  provision that required a small "mom and pop" shop located in California to have the

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1 dispute heard in Utah was unconscionable.  The Court cited the high cost of travel to Utah

2 and the problem with finding counsel in Utah that was familiar with California law. In

3 addition, because the Defendant was headquartered in Utah, the Court held that the "forum

4 selection provisions [have] no justification other than as a means of maximizing an

5 advantage." *Id.* 910.

6        Here, there is little difference in that the venue selection clause is used solely to

7 maximize an advantage for Defendants.  PFG's principal place of business is in Chicago,

8 Illinois. (Decl. Wing ¶2).  Mr. Zaitzeff worked in California and all of the relevant

9 witnesses to his work are in California.  (Decl. Zaitzeff ¶12).  In addition, because PFG

10 paid sub-minimum wages, Mr. Zaitzeff is in no condition to travel to Chicago to litigate this

11 case.  (Decl. Zaitzeff ¶11-12). If required to litigate in Chicago, it would essentially mean

12 that Mr. Zaitzeff could not participate in the litigation and would likely have to abandon the

13 claim. (Decl. Zaitzeff ¶11-12).  The 9th Circuit in *Nagrampa* cited nearly identical reasons

14 for holding that a clause that required the litigation to be held in Boston was

15 unconscionable for someone in California. *Nagrampa* at 1289.  It should also be noted that

16 all factual allegations asserted by Mr. Zaitzeff must be accepted as true for the purposes of

17 this motion. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. Or. 2004).

18            1.    **The cases cited by PFG do not support enforcing the venue selection**

19                  **clause.**

20        The cased cited by PFG to support their contentions are easily distinguishable or

21 have been rejected by the 9th Circuit.  In *Koken v. Stateco, Inc.*, 2006 WL 2918050 (N.D.

22 Cal. Oct. 11, 2006), the issues was that the forum selection clause was only "inconvenient"

23 and the Court never held it to be "prohibitive." *Id*.  Indeed, reason that the Plaintiff in

24 Koken opposed the forum selection clause was not the "cost" as alleged by PFG.  Dian

25 Koken was not an individual litigant but was the Insurance Commissioner for Pennsylvania.

26 *Id*.  Nowhere did she argue that Pennsylvania could not afford the "cost" of litigating in the

27 chosen forum (Bermuda).  *Id*. She simply stated that the litigation was complex and that

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1    related cases were being heard in other forums. *Id* at 25.  The Court held that this mere

2    "inconvenience cannot overtime the validity of the forum selection clause."  *Id* at 25-26.

3         In *Fireman's Fund Ins. Co. v. Cho Yang Shipping Co.*, 131 F.3d 1336 (9th Cir. Cal.

4    1997), the case was between a large insurance company and a large shipping company.

5    The issues presented were limited to the shipping trade.  For instance one issue was whether

6    the forum selection clause "violates the Carriage of Goods by Sea Act ('COGSA')". *Id.* at

7    1339.  The other issue was that the forum selection clause would "inconvenience"

8    Fireman's Fund Insurance because they could not proceed "in rem" against the ship at issue

9    "based on the legal fiction of vessel as wrongdoer." *Id*. at 1338 The Court held that this

10   "inconvenience" was not sufficient.  *Id*.  Mr. Zaitzeff has not alleged any violations of the

11   COGSA, nor is he attempting to proceed "in rem" against any cargo vessels.

12        In *Spradlin v. Lear Siegler Management Servs*. Co., 926 F.2d 865 (9th Cir. Cal.

13   1991) the reason the motion to dismiss was granted was "because of a total failure of proof

14   on plaintiff's part." Id at 868.  The only issue in that case is that the Plaintiff provided only

15   "broad and conclusory allegations of fraud without offering any specific factual allegations

16   or evidentiary support." Id.  Specifically, the Court noted "[i]t is possible that there are facts

17   which Mr. Spradlin could have brought to the district court's attention that would have

18   militated against enforcing the forum selection clause," however he "failed to provide any

19   information on appeal or in the trial court below." *Id.* at 868-9.

20        Unlike *Spradlin*, this case is full of evidence that Mr. Zaitzeff can not litigate his

21   claim in Chicago.  This income statements from PFG show that he was paid just $4,265 for

22   work in 2006, even though he was employed since March of 2006.  In addition, his income

23   for 2007 was only $26,119 for the entire year.  (Decl. Tracy, Exhibit C).  These, coupled

24   with his declaration, show that it would be impossible for him to conduct this case in

25   Chicago.  This is beyond mere inconvenience, but a transfer of the case to Chicago would

26   deny Mr. Zaitzeff any real chance of having his day in court. This is more than sufficient to

27   deny the motion.  However, if this Court feels that additional evidence is needed, Mr.

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Zaitzeff is prepared to offer such evidence through deposition, declaration, or testimony at the hearing.

C. **The putative contract to arbitrate specifically gives Mr. Zaitzeff the right to refuse arbitration and Mr. Zaitzeff has exercised that right.**

There is a strong policy preference in favor of arbitration, but arbitration is a matter of "consent, not coercion," and arbitration agreements must be "enforced according to their terms." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989). Defendants quoted the correct terms of the contact as:

> Except as provided in Sections 4 and 5 of these Rules with respect to timeliness requirements, disputes between Members and Associates shall be arbitrated under these Rules, **at the election of the person filing the claim**, unless: (1) the parties, by valid and binding agreement, have committed themselves to the resolution of such dispute in a forum other than NFA; (2) the parties to such dispute are all required by the rules of another self-regulatory organization to submit the controversy to the settlement procedures of that self-regulatory organization; or (3) all parties to the dispute are members of a contract market which has jurisdiction over the dispute. Once a claim is filed, arbitration is mandatory for the Member or Associate the claim is against. (Def. Motion to Dismiss p.2) (emphasis added).

Defendants have stated that this dispute is between a Member (PFG) and an Associate (Mr.Zaitzeff). (Def. Motion to Dismiss p.2:15-17). As such, the dispute is subject to arbitration "at the election of the person filing the claim." Mr. Zaitzeff is the one who filed the claim and has elected not to proceed with arbitration. The contract gives him the right to sue in court if he chooses.

It should be noted that the language in the contract for Member to Member disputes does not contain the "at the election of the person filing the claim" language. (See Def. Exhibit 2, P 18 ¶ 6517.1). This makes is clear that arbitration is only mandatory between Members, and not between Members and Associates. As this dispute is between a Member

1  and an Associate, arbitration is not mandatory and any attempt to require arbitration would

2  be coercion rather than consent.

3         1.    **There is no basis to consider any counterclaim allegedly raised by PFG**

4               **in determining whether this current matter is subject to arbitration.**

5         Defendants failed to meet and confer on this motion prior to filing it, as required by

6  Local Rule 7-3.  Plaintiff's counsel insisted on a meeting, in person, after the motion was

7  filed to discuss the above issues.  In this meeting, PFG took the position that they were

8  unaware of the "at the election of the person filing the claim" language and did not feel that

9  it meant that Mr. Zaitzeff could choose not to arbitrate.  In addition, they took the position

10 that because PFG had raised their own claims against Mr. Zaitzeff, the entire dispute should

11 be moved to arbitration. (Decl. Tracy ¶8).  Thus, this section will respond to these

12 anticipated defenses of PFG, even though they were not directly raised in their moving

13 papers.

14        PFG alleges that they filed a "Statement of Claim against Zaitzeff in arbitration

15 before the NFA seeking reimbursement for a deficit in an account on Zaitzeff's equity run

16 and other damages and a ruling that Zaitzeff was an independent contractor and not an

17 employee of PFG and that he was not entitled to offsets against the amount he owes PFG

18 because of alleged violations of federal and state law that are contained in his instant

19 Complaint."  Decl. Wing ¶8.

20        Although PFG is characterizing this as a separate claim, it is clearly seeking

21 adjudicate on matters before this Court.  The rules of arbitration directly address the issue

22 of when a counter-claim is subject to arbitration.  They state that a counter claim can only

23 be filed against an "Arbitration Claim."  (Def. Exhibit 2 p.19 ¶6517.3)  The term

24 "Arbitration Claim" is defined to be a claim being arbitrated under the Rules. (Def. Exhibit

25 2 p.17 ¶6511.2).  As there is no "Arbitration Claim," there can be no counterclaim filed

26 under arbitration.

27        Such a result is required to give any meaning to the contractual language that

28 disputes between Members and Associates are subject to arbitration "at the election of the

1  person filing the claim."  If the other party could simply "counterclaim" for declaratory

2  relief in arbitration that the person is not entitled to any money and move the entire dispute

3  to arbitration, it would not be following the contractually binding provision that an

4  Associate can choose not to arbitrate.

5      This Court is required to enforce the language of the arbitration agreement according

6  to its terms.  Those terms give Mr. Zaitzeff the right to refuse arbitration, and amount of

7  creative pleading on the part of PFG alters that contractual provision.  As such, this Court

8  should deny the motion to dismiss.

9      D.    **If a contract exists which requires Mr. Zaitzeff to arbitrate this dispute, it is**

10           **unconscionable.**

11     Under the Federal Arbitration Act, arbitration agreements "shall be valid,

12 irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

13 revocation of any contract." 9 U.S.C. § 2.  In analyzing whether an arbitration agreement is

14 valid, the Court must consider whether the contract itself is unconscionable. *Nagrampa v.*

15 *MailCoups, Inc.*, 469 F.3d 1257, 1268 (9th Cir. Cal. 2006).  In analyzing whether an

16 arbitration agreement is unconscionable, courts look at both procedural and substantive

17 unconscionability. *Id* at 1280. That the contract at issue here is procedurally unconscionable

18 was addressed above in the discussion of the venue selection clause.  The issues of the

19 substantive unconscionability of the arbitration portion of the agreement will be addressed

20 here.

21     The rule in California is that for a pre-employment arbitration agreement to be valid,

22 it must (1) provides for neutral arbitrators, (2) provides for more than minimal discovery,

23 (3) requires a written decision that will permit a limited form of judicial review, (4)

24 provides for all of the types of relief that would otherwise be available in court, and (5)

25 does not require employees to pay either unreasonable costs or any arbitrators' fees.

26 *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 102 (2000).

27     Here, the arbitration agreement provides for arbitrators that are associate with

28 Member firms that would have hostile interests to any employment dispute and would not

be knowledgeable about California employment law.  The National Futures Associattion ("NFA") openly advertises that its arbitrators will not provide any written decision that can be review by a court.  PFG admits that arbitration will deny that a substantial portion of Mr. Zaitzeff's claims can even be heard. Finally, Mr. Zaitzeff would be required to pay thousands of dollars for an arbitrator just to have his case heard.  The law is that if any of the provisions are not met, the contract is unenforceable.  In this case, four out of five critical items are missing, each of which will be addressed here.

1. **The NFA Rules require that the arbitrators be representatives of Member firms and does not allow for the Plaintiff to reject any appointed arbitrator for any reason, even for cause.**

The Rules of arbitration at issue here require that "All arbitration Panels shall be appointed by the Secretary and consist of individuals who are NFA Members or individuals connected therewith."  (Def. Exhibit 2, p.19 ¶6523.1(a)).  "Members" are the firms and other employers who utilize "Associates" such as Mr. Zaitzeff. (Def. Exhibit 2 p.17).

There are no formal requirements to become an NFA arbitrator.  In addition, the NFA classifies arbitrators as either "Member" arbitrators and "non-Member" Arbitrators. (Decl. Tracy Exhibit E p.2). It should be noted that this current dispute would be required to be judged by Member arbitrators. Def. Exhibit 2, p.19 ¶6523.1(a).  The issue is that NFA states that it will classify "an accountant who has a number of futures firms as clients as a Member arbitrator." Id.  However, a "futures attorney who frequently represents public customers [is classified] as a non-Member arbitrator."  Id.  As such, the only people who can serve as arbitrators for Mr. Zaitzeff are non-attorneys who have interests directly opposed to his.

Not only are the arbitrators stacked against Mr. Zaitzeff, but even if he did not like one, he has no automatic right to strike arbitrators for cause. Instead, any issues with an arbitrator must be submitted to the NFA and the NFA, at its sole discretion determines whether the arbitrator is "neutral."  (Def. Exhibit 2, p. 19-20 ¶6523.3(c)).

1    In addition, the Court in *Armendariz* cited a report with approval that noted that in

2  order for an arbitration forum to be fair to both employers and employees, the system must

3  provide "a neutral arbitrator who knows the laws in question." *Armendari,* 24 Cal. 4th at

4  104 FN 9.  Here, the NFA states that their arbitrators "are not required to possess technical

5  expertise on the subject of the dispute" and that no legal training or experience is required.

6  (Decl. Tracy Exhibit Fp.3 in "Serving as an Arbitrator").  This case is a complex case of

7  California and Federal wage and hour law.  To allow it to be heard by an arbitrator in

8  Chicago who has never served as an attorney, let alone a judge, would preclude any fair

9  resolution of the issues and is unconscionable.

10    2.    **The NFA openly advertises that their arbitrators will not issue written**

11          **opinions specifically so that any type of judicial review can be avoided.**

12    Although arbitrator's decisions are not subject to full judicial review, in order to

13  provide some type of "limited judicial review," the arbitrator must provide a written

14  opinion. *Armendariz,* 24 Cal. 4th at 106.  The Dunlop Commission Report, cited with

15  approval in *Armendariz*, states that this must be "a written opinion by the arbitrator

16  explaining the rationale for the result." Id. at 104 FN9.

17    Here, the NFA openly advertises that "Unlike many courts of law, commercial

18  arbitrators do not have to give reasons for their decisions."  (Decl. Tracy Exhibit F p.3 in

19  "Introduction"). They even admit that "the absence of stated reasons reduces the likelihood

20  that a party will try to challenge the award."  *Id*.  As such, the NFA is deliberately

21  instructing its arbitrators to not issue any reasons for their decisions, as this might subject

22  them to limited judicial review.  Given that the NFA does not provide a forum in which

23  even limited judicial review is possible, it is unconscionable to force a person to arbitrate

24  complex legal issues in such a forum.

25    3.    **PFG has admitted that the NFA arbitration forum will not allow Mr.**

26          **Zaitzeff to pursue any of his Private Attorney General Act claims.**

27    In order to be a valid, "an arbitration agreement may not limit statutorily imposed

28  remedies" and must allow for any "statutory cause of action in the arbitral forum."

*Armendariz*, 24 Cal. 4th at 103. Here, PFG has admitted that "[t]he mandatory arbitration of all claims between member of NFA precludes the Labor and Workforce Development Agency's ability to assert jurisdiction over such claims." (Decl. Tracy Exhibit B, p.2). This is referring the Mr. Zaitzeff's claims under the Private Attorney General Act of 2004.

California adopted a novel approach to enforcing the Labor Code when it enacted the Private Attorney General Act of 2004 ("PAGA") codified in Cal. Lab. Code § 2698, et seq. This law allows a private citizen to pursue civil penalties on behalf of the State of California Labor and Workforce Development Agency ("LWDA") provided the formal notice and waiting procedures of the law are followed.

Unlike so called "private attorney general" suits that usually refer to some type of unfair competition claim, the PAGA gives a private citizen the right to pursue fines that would normally only be available to the State of California. As such, it is truly allowing a private citizen to act as an attorney general. Cal. Lab. Code § 2699(a). *Dunlap v. Superior Court*, 142 Cal. App. 4th 330, 337 (2006). Any resulting civil penalties are split between the LWDA and the employee, with the LWDA receiving 75% of the penalties and the employee receiving 25%. Cal. Lab. Code § 2699(i).

However, the Private Attorney General Act states that only claims that can be assessed by the LWDA are subject to the Act. Cal. Lab. Code § 2699(a). As PFG has stated that arbitration would deny the LWDA of any jurisdiction, they are also asserting that Mr. Zaitzeff could not pursue any such claims in arbitration. This is directly contrary to the holding in *Armendariz*, and any arbitration agreement that requires Mr. Zaitzeff to forfeit claims is unconscionable.

> 4. **Mr. Zaitfeff would be required to pay thousands of dollars to have his case heard in arbitration which he can not financially afford.**

An arbitration agreement can require the employee "to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24 Cal. 4th at 110-11. Here, the Rules of the NFA require Mr. Zaitzeff to pay a fee based on the size of his claim. (Def. Exhibit 2 p.34) The fact of Mr. Zaitzeff's

-14-

complaint shows $471,383 in damages. As such, Mr. Zaitzeff would be required to pay a $4,400 filing fee and a $2,550 hearing fee just to have the arbitrator hear his case. Mr. Zaitzeff can not afford to pay this amount. (Decl. Zaitzeff ¶13).  It would be unconscionable to force Mr. Zaitzeff to arbitration where he would not be able to be heard simply because he can not afford to pay.

5.    **The agreement is unconscionable because it would require Mr. Zaitzeff to arbitrate his claims, but not require PFG to arbitrate their claims against him.**

Although Mr. Zaitzeff argues that the contact allows him to avoid arbitration, PFG has taken the position that it does not.  In addition, in their memorandum, PFG states that arbitration agreement covers "all claims Plaintiff may have against PFG."  (Def. Motion to Dismiss p. 6:16).  However, PFG has reserved the right to bring claims against Mr. Zaitzeff in court.  Specifically, Paragraph 13 of the putative contract states that "PFG will be immediately entitled to seek and obtain injunctive relief against AP [Associate Person, i.e. Mr. Zaitzeff] to protect PFG from violations and/or continous violation of the covenant. AP further agrees that such application **to a court** for injunctive relief …" (Def. Exhibit 1 p.12).  When an employer attempts to require and employee to arbitrate all disputes while reserving for themselves the right to proceed in court, the agreement is unconscionable unless there is a "legitimate commercial need" for the exemption.  *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1080 (9th Cir. Cal. 2007).  In this case, PFG has offered no legitimate commercial need as to why they would need to proceed in court rather than going to arbitration.  Instead, it appears that they are simply trying to reserve the ability to go to court for themselves while at the same time attempting to compel Mr. Zaitzeff to arbitrate.

E.    **Any factual disputes about the validity of the putative contract must be resolved by a jury.**

Under 9 U.S.C. § 4, whenever an issue of fact is raised as to the formation or breach of an arbitration agreement, the matter must be referred to a jury.  Here, Mr. Zaitzeff

1  contends that no contract was formed because the contract was unconscionable. He states

2  that was not negotiated but was rather an adhesive contract. (Decl. Zaitzeff ¶6) In addition,

3  he states that no contract exists that requires the current dispute to be arbitrated. (Decl.

4  Zaitzeff ¶9). He claims that because of his poor financial condition and the unreasonable

5  terms of the contract, the contract was unconscionable and thus never created. (Decl.

6  Zaitzeff ¶ 10-11). In addition, he claims that because the contract, if created, does requires

7  him to submit his claim to arbitration, he could not have breached the contract. (Decl.

8  Zaitzeff ¶ 9).

9      Although Mr. Zaitzeff argues that, for purposes of a Rule 12(b)(3) motion, all of his

10  factual allegations must be taken as true, if this Court does determine that a factual

11  determination of any of these issues is necessary, those facts must be decided by a jury.

12  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. Or. 2004). and 9 U.S.C. § 4.

13      In addition, should PFG claim that the arbitration agreement was not required for

14  employment because they allege that Mr. Zaitzeff was an independent contractor rather

15  than an employee, this issue would have to be decided by a jury. It directly affects the

16  formation of the contract and is covered under 9 U.S.C. § 4.

17  ## III.    Conclusion

18      Mr. Zaitzeff worked for PFG making sub minimum wage. In fact, for the first nine

19  months of his employment, he made less than $5,000. Now that Mr. Zaitzeff is demanding

20  to be paid for his hours of work, PFG is claiming that he must pay thousands of more

21  dollars and arbitrate his claims in Chicago, even though all the witnesses would be in

22  California.

23      Mr. Zaitzeff has shown that the contractual language for moving the venue to

24  Chicago terminated and that he was not contractually obligated to arbitrate his claims

25  against PFG. In addition, if any agreements did exist to require him to submit his claims to

26  the NFA, he has shown that the NFA run by and for the benefit of its member firm and does

27  not provide a neutral or fair forum to determine important statutory rights for California

28  employees.

As such, Mr. Zaitzeff respectfully requests that this Court deny, in its entirety, Defendants' Motion to Dismiss.  In the alternate, if facts must be resolved relating to the arbitration agreement, Mr. Zaitzeff has demanded a jury trial on those issues.  If this Court does not find merit in Mr. Zaitzeff's arguments, there are no compelling reasons why this Court should issue an order transferring venue rather than simply granting the motion to dismiss.

DATED:  May 30, 2008                    LAW OFFICES OF MICHAEL L. TRACY


                                        By:    __/s/ Michael Tracy_____
                                        MICHAEL TRACY, Attorney for
                                        Plaintiff DAVID ZAITZEFF

**JURY DEMAND**

Mr. Zaitzeff demands a jury trial on issues of fact relating to the formation of any arbitration agreement and the alleged breach of that agreement.

DATED:  May 30, 2008                    LAW OFFICES OF MICHAEL L. TRACY


                                        By:    __/s/ Michael Tracy_____
                                        MICHAEL TRACY, Attorney for
                                        Plaintiff DAVID ZAITZEFF

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1  MICHAEL L. TRACY, ESQ. (SBN 237779)
   MEGAN ROSS HUTCHINS, ESQ. (SBN 227776)
2  LAW OFFICES OF MICHAEL L. TRACY
   2030 Main Street, Suite 1300
3  Irvine, CA  92614
   mhutchins@michaeltracylaw.com
4  T: (949) 260-9171
   F: (866) 365-3051
5
   Attorneys for Plaintiff
6  DAVID ZAITZEFF

7

8                UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

11 DAVID ZAITZEFF, et al.,              )  Case No. CV 08-2874 MMM (JWJx)
                                        )
12           Plaintiff,                 )  **DECLARATION OF DAVID**
                                        )  **ZAITZEFF IN OPPOSITION TO**
13     vs.                              )  **MOTION TO DISMISS**
                                        )
14 PEREGRINE FINANCIAL GROUP, INC., et  )
   al.,                                 )
15                                      )  Complaint Filed: May 2, 2008
             Defendants.                )  Trial Date:       None
16 _____)

17

18

19     1.  I, David Zaitzeff, am the Plaintiff in this matter and am over the age of 18

20     years old.  If called as a witness, I could and would testify competently to the

21     following matters of my own personal knowledge.

22     2.  I have seen the document attached to the Declaration of Rebecca Wing

23     entitled "Associated Person Agreement," and it is authentic.

24     3.  I was an employee of Peregrine Financial Group, Inc. ("PFG") from on or

25     about March 30, 2006 to on or about March 24, 2008.

26     4.  On March 24, 2008 I gave a written letter of resignation to PFG.  This letter

27     terminated the "Associated Persons Agreement."  The letter is no longer in

28     my possession, but should be in the possession of PFG.

                                      -1-
     DECLARATION OF DAVID ZAITZEFF IN OPPOSITION TO MOTION TO DISMISS

5. All of my work for PFG was performed in California.

6. I was required to sign the "Associated Person Agreement" by PFG when I first began my employment. It was presented on a "take it or leave it" basis, and I was never given an opportunity to negotiate its terms.

7. At the time I signed the "Associated Person Agreement," I was unaware, and it was never pointed out to me, that the agreement had an arbitration provision, as no mention of the arbitration provisions appears in the agreement itself.

8. Reading the "Associated Person Agreement" today, I do not see anything that would require me to arbitrate this dispute.

9. To my knowledge, I never signed or entered into a written agreement where I agreed to mandatory arbitration of the issues presented in this lawsuit against PFG.

10. While employed at PFG, I was not paid minimum wage for many of the hours that I worked. As a result of PFG's failure to pay required wages, my current financial status is very poor.

11. Due to my current financial condition, it would be unworkable for me to pursue this litigation in Chicago. Should the case be moved to Chicago, I would essentially be unable to be present at any of the proceedings without extreme financial hardship.

12. The vast majority of witnesses in this case would be present in California and it would present such an extreme financial hardship for me to bring them to Chicago that it would essentially mean that I could not call any witnesses.

13. Due to my present financial condition, it would not be possible for me to pay the mandatory fee to arbitrate disputes before the National Futures Association.

14. I have never met Rebecca Wing. I have never spoken with Rebecca Wing. I have never corresponded in any way with Rebecca Wing. I never negotiated

-2-
DECLARATION OF DAVID ZAITZEFF IN OPPOSITION TO MOTION TO DISMISS

1    any terms of any contract with Rebecca Wing. Rebecca Wing was not
2    present when I signed the "Associated Person Agreement" and was not
3    present at any meetings discussing any of my terms of employment.  To my
4    knowledge Rebecca Wing was not on any phone calls in which any terms of
5    my employment were discussed.
6
7
8        I declare under penalty of perjury under the laws of the United States that the above
9    is true and correct.
10
11    Executed May 29th, 2008 at _Seattle, Washington_
12
13
14
15                                David Zaitzeff
16
17
18
19
20
21
22
23
24
25
26
27
28

-3-
DECLARATION OF DAVID ZAITZEFF IN OPPOSITION TO MOTION TO DISMISS

1  MICHAEL L. TRACY, ESQ. (SBN 237779)
   mtracy@michaeltracylaw.com
2  MEGAN ROSS HUTCHINS, ESQ. (SBN 227776)
   mhutchins@michaeltracylaw.com
3  LAW OFFICES OF MICHAEL L. TRACY
   2030 Main Street, Suite 1300
4  Irvine, CA 92614
   T: (949) 260-9171
5  F: (866) 365-3051

6  Attorneys for Plaintiff
   DAVID ZAITZEFF

7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

11  DAVID ZAITZEFF, et al.,          )  Case No. CV 08-2874 MMM (JWJx)
                                     )
12          Plaintiff,               )  **DECLARATION OF MICHAEL**
                                     )  **TRACY IN OPPOSITION TO**
13     vs.                           )  **MOTION TO DISMISS**
                                     )
14  PEREGRINE FINANCIAL GROUP, INC., et )  Hearing Date: June 23, 2008 10AM
    al.,                             )  Judge: Hon. Margaret M. Morrow
15                                   )
            Defendants.              )
16                                   )
                                     )
17  ─────────────────────────────── )

18

19

20              <u>**Declaration of Michael Tracy**</u>

21

22      1.      I, Michael Tracy am a member of the State Bar of California and am the

        attorney of record for the Plaintiff in this matter.  If called, I could and
23
        would testify competently to the following:
24
        2.      On March 26, 2008 I sent a letter to Peregrine Financial Group, Inc.
25
        ("PFG") demanding payment of unpaid wages on behalf of Mr. Zaitfeff.
26
        A copy of this letter is attached as Exhibit A.
27

28

3.    On April 15, 2008, I received a letter from PFG in which they declined to pay Mr. Zaitzeff his wages.  A copy of this letter is attached as Exhibit B.

4.    In PFG's letter dated April 15, 2008 they also included copies of tax documents provided to Mr. Zaitzeff.  These "1099" forms reflect the money paid by PFG to Mr. Zaitzeff.  Redacted copies of these forms are attached as Exhibit C.

5.    On May 29, 2008, I accessed the website for the U.S. Census Bureau.  Attached as Exhibit D is a copy of the page listing the official poverty level for 2006.

6.    The National Futures Association maintains a website at http://www.nfa.futures.org/. On May 29, 2008, I retrieved a PDF document from that website entitled "Arbitrator Profile."  A copy of this document is attached as Exhibit E.

7.    On May 29, 2008, I retrieved a PDF document from the NFA website entitled "Procedural Guide for NFA Arbitrators."  A copy of this document is attached as Exhibit F. The relevant sections have been marked.

8.    On May 22,  2008, I met with Michael Abbott, attorney for PFG to discuss the issues of this motion. In this meeting, PFG took the position that they were unaware of the "at the election of the person filing the claim" language and did not feel that it meant that Mr. Zaitzeff could choose not to arbitrate.  In addition, they took the position that because PFG had raised their own claims against Mr. Zaitzeff, the entire dispute should be moved to arbitration.

9.    On May 29, 2008 I mailed a letter to Michael Abbott, attorney for PFG informing my of Mr. Zaitzeff's unequivocal cancelation of the Associated Persons Agreement.  A copy of this letter is attached as Exhibit H.

DECLARATION OF MICHAEL TRACY IN OPPOSITION TO MOTION TO DISMISS

1

2

3        I declare under penalty of perjury under the laws of the United States that the above

4    is true and correct.

5

6        Dated May 30, 2008

7

8

9                                                        _____

10                                                        Michael Tracy

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MICHAEL TRACY IN OPPOSITION TO MOTION TO DISMISS

# EXHIBIT

# A

# LAW OFFICES OF MICHAEL TRACY

2030 Main St. • Suite 1300 • Irvine, CA 92614 • Phone: 949-260-9171 • Fax: 866-365-3051

Mr. Joseph Slaga
Peregrine Financial Group, Inc.
400 Camarillo Ranch Road, Suite 101
Camarillo, CA 93012

March 26, 2008

**Re:    Demand For Unpaid Overtime And Other Violations**

Dear Mr. Slaga:

I am an attorney representing David Zaitzeff in a dispute against Peregrine Financial Group, Inc. If you are currently represented by an attorney, please give this letter to her. If you do not have an attorney, you may wish to retain one before proceeding.

My client was employed by Peregrine Financial Group, Inc. from on or about August 2, 2006 through March 8, 2008. During his employment, my client worked numerous hours of overtime for which he was not paid. In addition, my client was not provided an adequate pay stub as required by Cal. Labor Code §226, and was not provided an ample meal period or break periods as required under California law.

Under state law, my client is entitled to be paid for all unpaid overtime. Under Federal law, my client is entitled to overtime pay as well as an equal sum in liquidated damages. My client is also entitled to one hour's pay for each day a proper meal period or rest break was not provided. In addition, your company did not provide proper pay stubs as required by law. As such, my client suffered injury and you are liable in the amount of $50 for the first improper pay stub and $100 for each subsequent improper pay stub. State law also requires you to pay my client a waiting time penalty for refusing to pay his wages upon leaving your employment.

You must pay the following to my client immediately:

| | |
|---|---|
| CA Overtime | $9,387 |
| Liquidated Damages | $9,387 |
| Failure to itemize | $1,350 |
| Waiting Time Penalties | $1,800 |
| Illegal Deductions | $3,300 |
| Meal Penalties | $1,877 |
| Minimum Wage | $25,029 |
| Minimum Wage Liquidated | $25,029 |
| Attorneys Fees | $250 |
| **Total** | **$77,409** |

If you do not pay this amount immediately, legal proceedings against your company will be commenced in civil court. These proceedings could entail an action for civil penalties under the Private Attorney General Statutes. Under these statutes, my client will sue for all labor violations committed against any employee, not just my client. Given the extent of the labor violations that my client is aware of, the total civil penalties could be substantial. If you have an arbitration agreement that you believe is valid, you must send my office a copy immediately or waive any right to arbitrate.

These actions will be against the owners of the company personally as well as the company. As such, any award can be collected directly from their personal assets, as well as any assets of the company. Your attorney can explain to you what your liability for these claims will be, but it is well established law that a corporation will not shield the owners from personal liability for claims under the Fair Labor Standards Act.

If we are forced to collect this money through the courts, you will be required to pay my attorney fees and interest. As such, any delay on your part in paying this amount will only increase the amount that you will ultimately have to pay. If the money is awarded at trial, the attorney fees you will be required to pay me will likely exceed the amount of the claim.

To avoid any further action in this matter, please send a check payable to my client to:

Law Offices of Michael Tracy
2030 Main St. Suite 1300
Irvine, CA    92614

If I have not received payment by April 16, 2008, nor heard from your attorney, a law suit against you will be filed on that day. My client is interested in a quick resolution of this matter. However, these are very clear and serious labor violations that your company has committed. As such, if you do not settle promptly, my client is fully prepared to seek the entire amount of damages in court, plus attorney fees.

Please have your attorney contact me if there are any issues that need to be discussed. My phone number is (949) 260-9171.


Thank You,


Michael Tracy
Attorney

March 26, 2008

Dear Sir or Madam:

Please send the following records to our office for our client David Zaitzeff.

1. All payroll records required to be kept under California Labor Code §226. This requires an accurate itemized statement in writing showing:

    (1)    gross wages earned,
    (2)    total hours worked by the employee,
    (3)    the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis,
    (4)    all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item,
    (5)    net wages earned,
    (6)    the inclusive dates of the period for which the employee is paid,
    (7)    the name of the employee and the last four digits of his or her social security number,
    (8)    the name and address of the legal entity that is the employer, and
    (9)    all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Please note that the law provides that an employer who receives a written or oral request to inspect or copy records shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request.

2. All time records, as required by section 7(C) of the applicable wage order.

3. Our client's personnel file, as per California Labor Code §1198.5. Every employee has the right to inspect the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee.

4. All records signed by my client regarding obtaining or holding employment, pursuant to California Labor Code §432.

In the alternative, you may respond to this request with a reasonable time and place for our client or someone from our office to inspect and copy these documents.

# EXHIBIT

# B

# PFG◆BEST.com

Rebecca J. Wing, General Counsel
190 S. LaSalle Street , 7th Floor
Chicago, IL 60603
312.775.3464 > 800.333.5673 > 312.775.3064 fax
rwing@pfgbest.com > www.pfgbest.com

April 15, 2008

VIA FACSIMILE 866-365-3051

Michael Tracy, Esq.
2030 Main St
Suite 1300
Irvine, California 92614

      Re:   David Zaitzeff

Dear Mr. Tracy:

I am in receipt of your March 26, 2008 letter to Joseph Slaga. All further communications concerning this matter should be directed to me.

Your assessment of Mr. Zaitzeff's claims against Peregrine Financial Group, Inc. ("PFG") is entirely wrong.

Mr. Zaitzeff is a licensed commodity broker also registered with the Commodity Futures Trading Commission ("CFTC") and a member of the National Futures Association ("NFA") with the licensed status of an Associated Person ("AP"). Mr. Zaitzeff conducted his business activities through a sole proprietorship. Mr. Zaitzeff's and PFG's rights and obligations were set forth in an Associated Person Agreement ("Agreement"), a copy of which is enclosed as Exhibit "A". As set forth in the parties' Agreement, Mr. Zaitzeff committed to be responsible for all costs and expenses related to his business and personal activities. Further, Mr. Zaitzeff represented that he was an independent contractor.

PFG had minimal or no control over Mr. Zaitzeff's work. Mr. Zaitzeff had sole control over the hours he worked. Mr. Zaitzeff, not PFG determined when Mr. Zaitzeff performed for PFG, and how much services he provided. Mr. Zaitzeff, and not PFG, determined which and how many potential customers he approached. Mr. Zaitzeff was given no sales quotas or goals, assignments, work schedules, or set routine to follow. Clearly, Mr. Zaitzeff was not an employee of PFG.

As an associate member of the NFA, Mr. Zaitzeff agreed as condition of registration to be bound by the rules of the NFA. The NFA is granted authority by the governing body, the CFTC, to conduct arbitration in disputes involving Members of the NFA and Associated Persons of the NFA. The NFA rules require mandatory arbitration of all claims between Members and Associates. Thus, Mr. Zaitzeff's claim against PFG is required to be arbitrated at the NFA.

Michael Tracy, Esq.
April 15, 2008
Page 2 of 2

Attached hereto as Exhibit "B," is a copy of Section 2 of the NFA Member Arbitration Rules setting forth the mandatory rule regarding submitting Member-to-Member claims to, and only to, arbitration. The mandatory arbitration of all claims between members of the NFA precludes the Labor and Workforce Development Agency's ability to assert jurisdiction over such claims.

With regard to your letter requesting payroll records and personnel file, there are none since Mr. Zaitzeff was not an employee of PFG. Mr. Zaitzeff did receive yearly 1099s reflecting the income he received from PFG, copies of which are attached as Exhibit "C".

Finally, Mr. Zaitzeff agreed to "accept complete financial responsibility for his activities and shall indemnify PFG from any harmful results or action." In the event that Mr. Zaitzeff brings a claim in which he is unsuccessful, PFG will seek indemnification in accordance with the terms of the Associated Person Agreement.

Very truly yours,

PEREGRINE FINANCIAL GROUP, INC.
By:

Rebecca J. Wing

RJW:nk

Enclosures

# EXHIBIT

# C



☐ VOID    ☐ CORRECTED

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|
| Peregrine Financial Group, Inc. 190 S. Lasalle 7th Floor Chicago, IL 60603 312-775-3000 | $ 2 Royalties $ | **2007** Form 1099-MISC | **Miscellaneous Income** |
| | 3 Other income $ | 4 Federal income tax withheld $ | **Copy C** For Payer or State Copy or Copy 2 |
| PAYER'S federal identification number [redacted] | RECIPIENT'S identification number [redacted] | 5 Fishing boat proceeds $ | 6 Medical and health care payments $ |
| RECIPIENT'S name, address, city, and ZIP code David Zeitzeff [redacted] Camarillo, CA 93010 | 7 Nonemployee compensation $ 26,119.18 | 8 Substitute payments in lieu of dividends, or interest $ | For Privacy Act and Paperwork Reduction Act Notice, see the 2007 General Instructions for Forms 1099, 1098, 5498, and W-2G. |
| | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ | |
| | 11 | 12 | |
| Account number (see instructions)            2nd TIN not. ☐ | 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ | |
| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ $ | 17 State/Payer's state no. | 18 State income $ $ |

Form **1099-MISC**    ⊛ Printed on Recycled Paper                    Department of the Treasury - Internal Revenue Service

# EXHIBIT

# D

http://www.census.gov/hhes/www/poverty/threshld/thresh06.html

Poverty 2006 - Poverty Thresholds 2006

# U.S. Census Bureau

## Poverty

Search This Site

**Poverty Main   Overview   Publications   Definitions   Thresholds   Microdata Access   Related Sites   FAQ**

### Poverty Thresholds 2006
*(Use landscape & legal printer options to print this table)*

Poverty Thresholds for 2006 by Size of Family and Number of Related Children Under 18 Years

| Size of family unit | Weighted average thresholds | Related children under 18 years | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | None | One | Two | Three | Four | Five | Six | Seven | Eight or mo |
| One person (unrelated individual).... | 10,294 | | | | | | | | | |
| Under 65 years................ | 10,488 | 10,488 | | | | | | | | |
| 65 years and over.............. | 9,669 | 9,669 | | | | | | | | |
| Two people.................. | 13,167 | | | | | | | | | |
| Householder under 65 years........ | 13,569 | 13,500 | 13,896 | | | | | | | |
| Householder 65 years and over...... | 12,201 | 12,186 | 13,843 | | | | | | | |
| Three people................. | 16,079 | 15,769 | 16,227 | 16,242 | | | | | | |
| Four people.................. | 20,614 | 20,794 | 21,134 | 20,444 | 20,516 | | | | | |
| Five people.................. | 24,382 | 25,076 | 25,441 | 24,662 | 24,059 | 23,691 | | | | |
| Six people................... | 27,560 | 28,842 | 28,957 | 28,360 | 27,788 | 26,938 | 26,434 | | | |
| Seven people................. | 31,205 | 33,187 | 33,394 | 32,680 | 32,182 | 31,254 | 30,172 | 28,985 | | |
| Eight people................. | 34,774 | 37,117 | 37,444 | 36,770 | 36,180 | 35,342 | 34,278 | 33,171 | 32,890 | |
| Nine people or more........... | 41,499 | 44,649 | 44,865 | 44,269 | 43,768 | 42,945 | 41,813 | 40,790 | 40,536 | 38 |

Source: U.S. Census Bureau.

Contact the Demographic Call Center Staff at 301-763-2422 or 1-866-758-1060 (toll free) or visit ask.census.gov for further

# EXHIBIT

# E



# ARBITRATOR PROFILE

## National Futures Association

Please type or print          ☑ Check appropriate boxes

| Name (last, first, middle initial) | Title |
|---|---|
| Firm | Telephone ( ) |
| E-mail Address: | Preferred method of contact: ☐ E-mail          ☐ Telephone |

Business Address:

Street

City                    State                    Zip

Type of business or practice:

Please provide your NFA ID# if you are or were registered with the
Commodity Futures Trading Commission (CFTC):

CFTC Registration Status:
- ☐ Futures Commission Merchant
- ☐ Commodity Pool Operator
- ☐ Commodity Trading Advisor
- ☐ Associated Person
- ☐ Introducing Broker
- ☐ Floor Broker
- ☐ Leverage Transaction Merchant
- ☐ N/A

Have you, for a total of 10 years or more, been registered with the CFTC or employed by a CFTC registrant(s)?
☐ YES          ☐ NO

**POSITIONS HELD IN THE LAST TEN YEARS (Please list current firm first.)**

| TITLE | FIRM | FROM/TO |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**WHEN NFA APPOINTS YOU TO A CASE, THE INFORMATION ON THIS PAGE WILL BE DISCLOSED TO THE PARTIES TO ENABLE THEM TO DETERMINE POTENTIAL CONFLICTS OF INTEREST.**

NFA will classify you as either a "Member" or "non-Member" arbitrator based on the type of work you do and the individuals and firms you do it for. In other words, NFA will classify an accountant who has a number of futures firms as clients as a Member arbitrator while we will classify a futures attorney who frequently represents public customers as a non-Member arbitrator. To help NFA classify you as a Member or non-Member arbitrator, please provide any information you feel would be useful to us. For example, if you are an attorney or an accountant and your client base includes NFA Members, please approximate what percentage of your work during the last year was done on behalf of NFA Members.

_____

_____

_____

_____

_____

List any of your relatives who are registered with the CFTC or employed by a CFTC registrant:

| NAME | FIRM | RELATIONSHIP |
|------|------|--------------|
| | | |
| | | |

## EXPERIENCE AND/OR EXPERTISE  (Please check all that apply)

**Type of Commodity**
- ☐ Grains
- ☐ Meats
- ☐ Petroleum Products
- ☐ Metals
- ☐ Foreign Currencies
- ☐ Financials
- ☐ Stock Indices
- ☐ Commodity Options
- ☐ Other _____

**Type of Conflict**

*Fraudulent Activity*
- ☐ Manipulation
- ☐ Churning
- ☐ Misrepresentation
- ☐ Unauthorized Transactions
- ☐ Fraudulent Sales Practices

*Account Related*
- ☐ Margin Calls
- ☐ Errors - charges/crediting
- ☐ Back Office Procedures

*Execution*
- ☐ Failure to Execute
- ☐ Improper Fill

**Type of Business**
- ☐ Commodity Pool Operator
- ☐ Commodity Trading Advisor
- ☐ Floor Broker
- ☐ Floor Trader
- ☐ Futures Commission Merchant
- ☐ Guaranteed Introducing Broker
- ☐ Independent Introducing Broker

**Legal Issues**
- ☐ Bankruptcy
- ☐ Discrimination
- ☐ Employment
- ☐ ERISA
- ☐ Futures
- ☐ Intellectual Property
- ☐ Securities
- ☐ Tax

## EDUCATION

College _____  Degree _____  Year _____

Graduate School _____  Degree _____  Year _____

Other _____  Degree _____  Year _____

## PERSONAL

Date of Birth _____ / _____ / _____  Social Security Number _____ — ____ — _____

Home Telephone  ( _____ )  Home Address _____

_____

## GENERAL

Memberships in professional or trade associations, including offices held:

_____

_____

Previous arbitration experience: (Please indicate the forums you have served for, training programs you have attended and whether you have chaired a panel or acted as the sole arbitrator at a hearing.)

_____

_____

Related areas of expertise:

_____

_____

Cities or geographic areas in which you are able to serve:

_____

Availability to serve:
a.  Number of times during a year you may be available to serve (e.g., once, twice): _____
b.  Number of hearing days your schedule will permit (e.g., one, two): _____

## ATTORNEYS

Areas of practice in which you are most active:

_____

Bar admission — Jurisdiction:

_____

## REGULATORY DISCLOSURES

### Instructions

If you answer YES to Question 1, 2, 3, 4, 5, 6, 8, or 10, please provide the following information in the space provided or attached to this form:

- caption, case number, and forum/jurisdiction;
- type of action (e.g., felony, misdemeanor, injunction, disciplinary proceeding);
- party bringing the action (e.g., State of Illinois, SEC, NASD);
- brief description of the allegations;
- final disposition, including the date and the sanctions imposed (or that the case is still pending); and
- whether any sanctions are still outstanding (e.g., fines have not been paid, conditions are still in effect).

You may attach documents from the proceeding (e.g., complaints, decisions) if they contain some or all of the requested information. Documents that do not contain all of the requested information must be supplemented. You may also provide any additional information you believe we should know when reviewing your qualifications to serve as an arbitrator.

Unless the question specifically requests it, you do not have to disclose CFTC, NFA or domestic futures exchange proceedings since these proceedings are already in NFA's data base. You may, however, provide any additional information about those proceedings that you believe we should know when reviewing your qualifications to serve as an arbitrator.

Some questions ask about firms of which you were a principal. If the answer to any of those questions is YES based on an action naming the firm, you must identify the firm in the information you provide. Unless requested in the question, however, you do not have to answer YES or provide information about actions based on conduct that occurred while you were not a principal. For these questions, you were a principal of the firm if you:

- were a sole proprietor, general partner, director, president, chief executive officer, chief operating officer, chief financial officer, or chief compliance officer of the firm;
- were a manager, managing member, or a member vested with the management authority for a firm organized as a limited liability company or limited liability partnership;
- directly or indirectly owned or controlled 10% or more of the firm's equity or its voting securities, contributed 10% or more of the firm's capital, or were entitled to receive 10% or more of the firm's net profits;
- were required to register as a principal of the firm or were required to be listed as a principal of the firm on any regulatory application; or
- had the power to exercise control over any of the firm's regulated activities, regardless of your title and even if you did not actually exercise control.

Questions

1.  Have you or any firm of which you were a principal ever pled guilty or nolo contendere to or been convicted or found guilty of a felony or misdemeanor or of an equivalent crime (domestic or foreign), or are any such charges currently pending?
    [YES] [NO]

2.  Have you or any firm of which you were a principal ever been permanently or temporarily enjoined by any court from violating state or federal securities laws or from violating foreign investment laws, or are any such actions currently pending?
    [YES] [NO]

3.  Have you or any firm of which you were a principal ever settled or been found guilty in an enforcement action brought by the SEC, NASD, the Municipal Securities Rulemaking Board, the Public Company Accounting Oversight Board, or any foreign securities or futures regulator (including both government regulators and self-regulatory organizations), or are any such charges currently pending?
    [YES] [NO]

4.  Prior to 1990, were you or any firm of which you were a principal expelled or permanently barred from membership in a U.S. futures exchange, or are you or any firm of which you were a principal currently suspended or temporarily barred from membership in a U.S. futures exchange by an order or decision that was issued before 1990?
    [YES] [NO]

5.  Have you or any firm of which you were a principal ever settled or been found guilty in an enforcement action brought by a domestic securities exchange or a foreign futures or securities exchange, or are any such charges currently pending?
    [YES] [NO]

    NOTE: You do not have to disclose the following violations:

    a.  decorum (e.g., fighting) or attire if the violations did not result in suspension or expulsion;
    b.  failure to pay dues or assessments if the violations did not result in suspension or expulsion and did not involve fraud, deceit, or theft; or
    c.  reporting or recordkeeping requirements if the violations did not result in fines of more than $5,000 in a calendar year, suspension, or expulsion and did not involve fraud, deceit, or theft.

6.  Have you ever had a professional license suspended or revoked or been publicly sanctioned by a professional licensing body (domestic or foreign), been permanently or temporarily barred from practicing before any state or federal agency (including the CFTC and the SEC), or been permanently or temporarily barred from contracting with any federal agency, or is any such proceeding currently pending?
    [YES] [NO]

7. Have you ever worked in a supervisory, compliance, or sales position for a firm that had its registration revoked, was expelled, or was permanently barred by the CFTC, the SEC, NFA, or NASD based on allegations related to its sales practices?
[YES] [NO]

If the answer is YES, please provide the following information for each firm:

- firm name;
- date firm was revoked, expelled, or permanently barred and by what agency; and
- dates you worked at the firm and the position(s) you held.

8. Within the last five years, have you worked for a firm that, also within the last five years (but not necessarily while you worked there), had its registration or license revoked or suspended by the CFTC, the SEC, or an equivalent foreign regulator; was expelled or suspended by NFA, NASD, or any other futures or securities self-regulatory organization, whether domestic or foreign; was permanently or temporarily barred from trading in the securities or futures markets; or was fined $100,000 or more by the CFTC, the SEC, NFA, NASD, or an equivalent foreign regulator or self-regulatory organization?
[YES] [NO]

If the answer is YES, please provide the following information in addition to the information requested in the instructions to these questions:

- firm name; and
- whether any of the allegations involve your conduct or activities you were responsible for in your position at the firm.

9. Do you or any firm of which you were a principal currently have any unpaid arbitration or reparations awards or civil judgments? Answer YES if you are currently a principal of the firm or were a principal at any time since the award or judgment was entered.
[YES] [NO]

If the answer is YES, please provide the following information:

- amount;
- date of the award or judgment;
- caption, case number, and forum; and
- status of the person you must pay it to (e.g., customer).

10. Have you or any firm of which you were a principal ever been a debtor in a bankruptcy proceeding, a receivership proceeding, a proceeding brought by the Securities Investor Protection Corporation, or any other insolvency proceeding either domestic or foreign, or is such a proceeding currently pending? Answer YES if you were a principal of the firm when the proceeding was filed or if the proceeding was based on conduct that occurred while you were a principal.
[YES] [NO]

If the answer is YES, please provide the following information in addition to the information requested in the instructions to these questions:

- type of proceeding (e.g., voluntary or involuntary, Chapter 7 or 11 or 13, receivership, SIPC, foreign); and
- primary creditors by category (e.g., credit card companies, customers or clients, medical service providers, mortgage holders) – primary creditors are those where 1) the creditors in the category hold, in aggregate, 20% or more of the debt, or 2) the number of creditors in the category is 20% or more of the total number of creditors.

_____

_____

_____

_____

_____

_____

_____

I AFFIRM THAT THE INFORMATION SUPPLIED ON THIS FORM IS, TO THE BEST OF MY KNOWLEDGE, CORRECT AND COMPLETE.

_____          _____
Signature                                                      Date

PLEASE COMPLETE, SIGN AND RETURN THIS FORM TO:
NATIONAL FUTURES ASSOCIATION
ATTN: ARBITRATION DEPARTMENT
300 SOUTH RIVERSIDE PLAZA, SUITE 1800
CHICAGO, ILLINOIS 60606-6615
(800) 621-3570

Thank you for volunteering to participate in this process. If you have any questions regarding this form, please feel free to call the number listed above.

FOR INTERNAL USE
Processor: _____
Date processed: _____
ID Number: _____

# EXHIBIT

# F

*Procedural Guide for*

# NFA Arbitrators



## Introduction

Arbitration is a popular dispute resolution alternative to time-consuming and costly litigation. The pressures of an overburdened and backlogged court system have led legislators and courts alike to provide arbitration panels with powers that are similar to those of the courts themselves, including the powers:

- to subpoena the appearance of witnesses and the production of documents;
- to hear testimony, arguments and counter-arguments;
- to weigh evidence; and
- to make awards that are enforceable in a court of law.

In other words, an arbitrator's authority is essentially the same as the authority of a judge.

While an arbitrator's powers are similar to a judge's, arbitration procedures are markedly different. Because the purpose of arbitration is to make resolving disputes easier, faster and less expensive for the parties involved, the procedures are less formal. For example, formal rules of evidence (governing what evidence is admissible and what isn't) don't apply to arbitration. Arbitrators may and, in fact, should consider any evidence they believe may be relevant to the dispute. When a hearing is necessary, arbitrators have considerable flexibility in conducting the hearing. Another difference is that arbitration panels and the parties are not required to know the law. On the other hand, arbitrators are not free to ignore the law if they know it. An arbitrator is responsible to determine — all things considered — whether a party to the dispute has incurred a monetary loss because of improper or unfair treatment by one or more of the respondents, and if so, whether the party deserves to be compensated for all or some portion of the loss.

Unlike many courts of law, commercial arbitrators do not have to give reasons for their decisions. There are four reasons for this. The first is that, in contrast to court decisions, the outcome of an arbitration proceeding is not used to establish a precedent. Second, preparing a statement of reasons that is consistent with the reasoning and composition style of each arbitrator increases the time it takes to issue an award. Third, the absence of stated reasons reduces the likelihood that a party will try to challenge the award, which would delay and increase the cost of arriving at a final resolution of the dispute. (See page 5 for a discussion of the possible — and limited — grounds on which an arbitration award may be overturned by a court.)

### ■ Serving as an Arbitrator

Members of an arbitration panel are not expected to possess technical expertise in the various issues that may be brought before the panel. In fact, in case where the customer in an arbitration proceeding requests a non-Member panel, the chairperson and at least one other arbitrator will be persons who have no connection with an NFA Member firm and may have no previous knowledge whatsoever of the futures industry practices and procedures. Like judges or jurors — who frequently have no prior knowledge or experience in the specific subject

matter of a lawsuit — the necessary skills to serve effectively as an arbitrator are integrity, impartiality and sound judgment. That is, the commitment and ability to hear evidence and arrive at a fair and equitable decision based on the information the parties to the dispute make available.

Although NFA arbitrators are not required to possess technical expertise on the subject of the dispute, there are certain requirements an arbitrator must meet before NFA will allow you to serve on a panel. First, all arbitrators are required to complete an arbitrator training program at least once every three years. You may satisfy this requirement by participating in NFA's Arbitrator Training Web Seminar, which can be accessed at the Dispute Resolution homepage on NFA's website (http://www.nfa.futures.org/dispute/index/Dispute.asp), or by attending a training seminar offered by another forum (e.g., NASD or AAA) and provide NFA with proof of attendance at the training seminar.

NFA arbitrators are also required to make certain disclosures regarding regulatory actions. The Arbitrator Profile includes a list of questions addressing these disclosures. The purpose of these disclosure is to identify matters that may disqualify an arbitrator from serving on an arbitration panel. Arbitrators are required to update these disclosures every time they serve on a case, but not more than once a year. However, if you know of a change, you must inform us.

NFA compensates you for serving on a panel and reimburses you for any expenses you incur as a result of attending the hearing, such as cab fares or parking. NFA pays each arbitrator $125 for conducting a summary proceeding, $200 for a half-day (four hours or less) oral hearing, $400 for a full-day oral hearing, and $125 for deciding motions filed after a certain date. The chairperson of an arbitration panel receives an additional $50 honorarium for deciding these motions and a $75 honorarium for attending an oral hearing. NFA also compensates arbitrators who serve on a panel participating in a discovery pre-hearing conference or preliminary hearing. NFA does not provide additional compensation for reviewing the parties' pleadings or other submissions.

### ■ NFA's Role in the Arbitration Process

From the time you agree to serve as an arbitrator in a particular dispute through the completion of the hearing, NFA arbitration and legal staff will work closely with you.

While NFA staff members cannot and will not advise you in making substantive decisions that are within your power as an arbitrator, they can and will provide assistance and advice in numerous other ways. For example, the NFA case administrator will assure that all information and documents provided to NFA by the parties to the dispute are provided to you on a timely basis. The case administrator will also answer questions you may have concerning procedures or rules (such as requests for postponing the hearing or issuing subpoenas). In cooperation with the parties and/or their counsel, the case administrator will develop a written hearing plan (when one is required) to facilitate the expeditious conduct of the hearing. NFA staff will also make all physical arrangements for the hearing.



Introduction ............................................... 3
NFA's Arbitration Program ................................. 4
Prior to a Hearing ........................................ 5
Selecting Arbitrators ..................................... 7
Requests for Pre-Hearing Decisions ........................ 8
Other Pre-Hearing Matters ................................ 12
The Summary Proceeding ................................... 13
The Hearing .............................................. 13
After the Hearing ........................................ 16
Conclusion ............................................... 18
Index .................................................... 19

It is not, however, NFA's responsibility to educate the arbitrators on technical and legal matters that they might not be knowledgeable about. That burden rests with the parties. Information that could be helpful or necessary in arriving at your decision may be requested (through NFA staff) from the parties. Likewise, staff does not have the authority to discipline parties who fail to cooperate or comply with NFA arbitration rules. The case administrator cannot, for example, impose sanctions against a party who refuses to cooperate in discovery or fails to file the hearing plan on time. That obligation rests with you. As an arbitrator, you may be required to take appropriate action when needed to ensure that the parties and their counsel follow NFA arbitration rules.

Of course, NFA staff will be available to assist you every step of the way.

■ **This Guide**

The purpose of this guide is to supplement other literature you have received concerning arbitration in general and the NFA arbitration program in particular. This guide contains helpful information about the arbitration process and how it is changing each step. It is important to use it as a useful reference for you when you are serving as an arbitrator. Sections of NFA's Code of Arbitration and Member Arbitration Rules are referred to throughout the guide as "Section XX."

NFA sincerely appreciates your willingness to devote your time and skills to serve as an arbitrator. We pledge to do our utmost to assure that it will be a worthwhile and satisfying experience.

■ **NFA's Arbitration Program**

Futures trading, by its nature, is done in a highly competitive and frequently volatile market environment. Moreover, because of the leverage inherent in futures products, a relatively small price change can produce rapid and significant profits or losses for individual market participants.

To protect the integrity of the markets as well as firms and persons who participate in the markets, NFA has adopted and — through its monitoring, auditing and other compliance activities — enforces extensive rules that govern the business and financial conduct of NFA Members, their employees, and NFA Associates. Nonetheless, in the futures industry as in any industry, occasional disagreements are bound to arise between Members and their customers or between Members and NFA Associates. In many instances, the parties cannot resolve these disagreements on their own.

For instance, a customer may contend that his account has been "churned" (excessively traded by the other party to generate commissions), or there may be allegations that a broker made unauthorized trades. Other possible claims might involve charges of breach of contract or fiduciary duty, mismanagement or negligence, misrepresentation, failure to disclose risks, or mishandling of funds. NFA

1 National Futures Association, Code of Arbitration and Member Arbitration Rules; NFA Arbitration: Resolving Customer Disputes; NFA Arbitrator's Manual; Member Dispute Program Guide; and Procedural Issues for NFA Arbitrators; and Code of Ethics for Arbitrators in Commercial Disputes (prepared by NFA Arbitration Association).

arbitration program is designed to provide an economical, expeditious and equitable means of resolving these disputes. For a non-Member, such as a customer, who has a grievance against an NFA Member firm or someone associated with that firm, the decision to use NFA's arbitration forum is entirely voluntary (unless there was a prior agreement to submit disputes to NFA arbitration). Alternatives to NFA arbitration include litigation, the Commodity Futures Trading Commission (CFTC) reparations program (where the usual procedures more closely resemble those of a formal court of law), arbitration programs offered by the exchanges, or any other arbitration forum mutually agreed to by the parties involved.

Arbitration can also be used to resolve disputes between and among Members and Associates. For example, a broker may have a compensation dispute with his former employer, or an introducing broker may allege that a futures commission merchant improperly terminated a guarantee agreement.

■ **Mandatory Arbitration**
**Code and Rules Section 2**

While NFA arbitration is generally voluntary for a customer wishing to make a claim against a Member, once a customer files a claim, it is generally mandatory for the Member or Associate the claim is against. These firms and individuals are contractually obligated (by virtue of their membership in NFA) to agree to arbitration when requested by a customer unless

■ more than two years have elapsed since the party making the claim knew (or should have known) of the act or transaction that is the subject of the dispute; or

■ the dispute solely involves cash market transactions that are not part of or directly connected with a futures transaction.

For cases between and among Members and Associates, arbitration is generally mandatory for the Member or Associate the claim is against, although there are exceptions.

■ **NFA's Arbitration Panel**
**Code Section 4; Rules Section 3**

Panels classified as either "Member" or "non-Member" will decide NFA arbitration cases. The type of panel appointed by NFA depends on whether the dispute involves a customer and/or two Members. For customer cases, the customer has the option of choosing either a Member panel or a non-Member panel. Member panels decide cases between and among Members and Associates.

Member panels consist of individuals who are NFA Members or who are associated with NFA Members. This provides parties with the opportunity to have the dispute resolved by individuals who are knowledgeable about futures trading practices and procedures. A non-Member panel consists of a chairperson and at least one other individual who are not NFA Members or associated with NFA Members. (If the customer requests a non-Member panel in a claim requiring a single arbitrator, that arbitrator will not be an NFA Member or associated with an NFA Member.)

In determining whether a person is "associated" with an NFA Member, NFA looks primarily at whether the individual (1) performs a significant amount of work for NFA Members or Associates or (2) was a Member or employee of a Member within the past three years. If a person meets either condition, NFA will classify the individual as a Member arbitrator.

The total size of the claim (including any counterclaim, cross-claim or third party claim) determines whether a dispute is decided by a single arbitrator or by a panel of three arbitrators, and whether an oral hearing is required.

For cases involving customers, if the total amount of the entire claim is $5,000 or less, one arbitrator will decide the dispute based solely on the parties' written submissions. In other words, there will be no oral hearing. (Note: Under certain circumstances, NFA or the arbitrator can order an oral hearing. See discussion of summary proceedings on page 13.)

A single arbitrator will also decide claims between $5,000 and $25,000 based on the parties' written submissions unless NFA receives a request for an oral hearing from a party within 30 days after the last pleading (e.g. Answer, Reply) is due. A party may also request that NFA appoint three arbitrators if the aggregate claim amount exceeds $25,000 but is not more than $50,000. In a customer case, a single-person arbitration panel and usually involve an oral hearing.

For Member cases, a single arbitrator will decide claims of $10,000 or less based solely on the parties' written submissions. One arbitrator will also decide claims of more than $10,000 but less than $50,000 based on the parties' written submissions unless a party to the dispute requests an oral hearing within 30 days after the last pleadings is due. A party may also request that NFA appoint three arbitrators if the aggregate claim amount exceeds $50,000 but is not more than $100,000.

At the time you are asked to serve as an arbitrator, NFA's arbitrator coordinator will inform you of the total claim amount, whether the case requires a hearing or a summary proceeding, whether you will be the only arbitrator or a member of the panel and, in a customer case, whether a Member or non-Member panel was requested. NFA will also select one of the arbitrators to serve as the chairperson.

■ **Review by the Courts**

The law does provide, however, for court review on limited grounds having to do with the fairness of the arbitration process, with the challenging party having the burden to prove that:

■ the award was obtained by corruption, fraud or other undue means; or

■ an arbitrator was obviously not impartial or any arbitrator engaged in misconduct which prejudiced (unfairly harmed) the rights of any party; or

■ the arbitrators were guilty of misconduct in refusing to postpone the hearing when there was good reason to do so, or refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced; or

■ the arbitrators decided issues they didn't have any right to decide, did not decide issues they should have decided, or issued an award that is unclear.

Some courts will also vacate an award if the arbitrators know what the law is but intentionally choose not to apply it.

■ **Prior to a Hearing**

The events preceding a hearing are in large part procedural: filing required forms and documents, selecting arbitrators, exchanging information, preparing a hearing plan, scheduling the hearing, and the arbitrators becoming familiar with the substance of the dispute and related documents. These preliminaries serve to facilitate a fair, economical and expeditious hearing — which is, of course, in the interest of the arbitrators as well as the parties to the dispute. The next several pages address procedural matters and some of the issues which may arise from the time arbitration is initiated by a claimant up to — but not including — the hearing itself. Subsequent sections discuss what happens during and after the hearing.

■ **Arbitration Claim**
**Code Sections 6(a), (b) and (c); Rules Sections 5(a), (b) and (c)**

The arbitration process usually begins when a party submits an Arbitration Claim to NFA, or if the two-year time limit for making a claim is approaching, files a Notice of Intent to Arbitrate (Notice). The Notice stops the two-year time limit to give the claimant a little extra time to file a claim.

The claim form requests information for NFA to determine whether the requirements for arbitration are met. Other information includes the amount of damages requested and the basis for the claim (what happened, when it happened and, in the claimant's judgment, what went wrong, who is to blame and why). The claimant will also indicate whether he or she will be represented by counsel (and, if so, who) and whether he or she will bring witnesses to the hearing. In addition, the claimant may provide documents to support the claim. The claimant must pay the required arbitration fees at the time the claim is filed. Finally, if the claimant is a customer, he or she will indicate on the claim form the preferred panel type (i.e., Member or non-Member).

2 An award will not be overturned just because a preponderance was not granted or relief was too small. Before substituting its judgment, the arbitrators' conduct must have been unreasonable.



## ■ The Answer
### Code Section 6(e); Rules Section 5(e)

After NFA makes sure that the claim is complete and the arbitration fees are paid, NFA sends the claim to the firm or person the claim is against (known as the "respondent").

Depending on the size of the claim, the respondent has either 20 or 45 days to file an Answer. The respondent must also provide the claimant with a copy of the Answer. Any allegation in the claim that is not denied in the Answer is admitted.

The respondent's failure to submit an Answer on a timely basis — within the 20 or 45 day period — will not delay the hearing. Arbitrators have broad discretion at the time of the hearing in deciding what, if any, consideration to give to an Answer that was not submitted on a timely basis. In making this decision, arbitrators should consider how a late Answer might affect the claimant's ability to effectively prepare and present his case.

## ■ Counterclaim, Cross-Claim, Third-Party Claim
### Code Sections 6(f) through 6(j); Rules Sections 5(f) through 5(j)

If a respondent wishes to assert a claim against another party involving the same act or transaction as the original claim, the respondent should include that claim in the Answer and submit the Answer within the required time period.

One type of claim that a respondent may file is a counterclaim against the claimant requesting, for example, payment of a deficit in the customer's account. The respondent may also file a claim against any other respondent named in the same case, which is known as a cross-claim. A respondent may also bring into the arbitration a person who is not a party to the original action, but who is or may be liable for all or part of the claimant's claim. This type of claim is called a third-party claim.

For counterclaims and cross-claims, if the aggregate claim amount does not exceed $25,000, the party the claim is filed against has 10 days to submit a Reply. If the aggregate claim amount exceeds $25,000, the party the claim is filed against has 35 days to submit a Reply. The respondent in a third-party claim has 20 days to submit an Answer if the aggregate claim amount does not exceed $25,000 and 45 days to submit an Answer for an aggregate claim amount that exceeds $25,000. The Reply to a counterclaim or cross-claim and the Answer to a third-party claim should be sent to NFA with a copy to the party asserting the claim. Any allegation that is not denied in the Reply or Answer is admitted.

## ■ Amended Claims
### Code Section 6(k); Rules Sections 5(k)

Once a party has filed a claim, certain changes can be made to it by filing an amended claim. NFA will determine whether a filing is an amendment and will accept amended claims (including counterclaims, cross-claims and third-party claims) at any time before the arbitrators are appointed. Once arbitrators are appointed, the arbitrators decide whether a party can amend its claim. (Also see discussion of amended claims, page 11.) If a claim is amended, the respondents have 20 or 45 days (depending on claim size) to file an Answer or Reply to the amended claim and the time for discovery is extended. The arbitrators cannot shorten the time to file an Answer or Reply without the consent of the respondent the amended claim is against. The consent of all parties is needed if the arbitrators want to shorten the discovery timetable for an amended claim.

## ■ Exchanging Documents and Written Information
### Code Section 6(a); Rules Section 7(a)

The parties may want to obtain documents or other written information, including interrogatories, from other parties prior to the hearing. If the documents and information requested are material and relevant to the dispute, the parties are required to exchange the information without resorting to subpoenas or an order from the panel. NFA rules impose deadlines for requesting and exchanging documents and information.

■ The deadline for automatically exchanging certain documents is not later than 15 days after the last pleading is due.

■ The deadline for requesting other documents and written information is not later than 30 days after the last pleading is due.

■ The deadline for providing the requested documents and written information or for submitting a written objection to the request is not later than 30 days after the deadline for filing the request.

To avoid common discovery disputes, NFA rules require the parties to automatically exchange routine documents. Using a list of documents approved by NFA's Board of Directors, NFA will identify the standard documents that are generally relevant to the particular causes of action alleged in the case. However, the parties are not required to produce or exchange any documents or information that are not in their possession or control. Furthermore, the parties may ask for documents on the list that NFA did not identify for automatic exchange if they believe those documents are also relevant to the claim or defense.

A party may ask the arbitrators to extend the discovery deadlines. A party may also ask the panel to find that one or more of the standard documents identified by NFA should not be covered by the automatic exchange rule. While these decisions are the arbitrators' to make, you should act sparingly in granting these requests.

If any party fails to respond fully and completely to a reasonable request for documents, the requesting party may file — through NFA — a motion asking the panel to compel production of the documents. (See discussion of requests to compel production of documents on page 8.)

# Selecting Arbitrators

Your first contact with NFA concerning service as an arbitrator in a particular case will be a phone call from the NFA Arbitration Coordinator. The Coordinator will identify the parties, their counsel or representatives, and witnesses; explain the general nature of the dispute; and indicate approximately when NFA will hold the hearing or summary proceeding.

You should not be deterred from serving as an arbitrator because you lack an in-depth knowledge of the specific issues involved in the dispute. It is, after all, the parties' responsibility to provide — in understandable fashion — the detailed or technical information the arbitrators need to reach an informed decision. NFA will not ask you to serve as an arbitrator unless your experience and credentials indicate that you are able to hear and consider the evidence and arrive at a just award.

If you agree to serve, NFA will provide you with the claimant's Arbitration Claim and, if the respondent has filed an Answer and, if the Answer includes a counterclaim, cross-claim or third-party claim, any responses to those claims.

## ■ Impartiality and Disclosure
### Code Sections 4(b) and (c); Rules Sections 3(b) and (c)

Successful arbitration requires that the parties — claimants and respondents — have total confidence that they will receive a fair and impartial hearing. Therefore, upon receiving information about the case from NFA, you must review the names and business affiliations of the parties to the dispute, the persons serving as the parties' counsel or representatives, and the witnesses.

If you have (or have ever had) any financial, business, professional, family or social relationship with the parties, their representatives, or witnesses, you must disclose this information to NFA.

If any relationship has been substantial or if you have a strong bias in favor of or against one of the parties, their representatives, or witnesses, you should decline to serve as an arbitrator in the case.

If you feel that, notwithstanding the relationship, you can be impartial, you should disclose information about the relationship to NFA. Even if the relationship, contact or acquaintance has been casual, seemingly insignificant or not recent, you should disclose the information to NFA. A challenge to an arbitrator's impartiality on the basis of undisclosed information can result in delays. Also, as noted earlier, an arbitrator's partiality is no basis for possible court review of an arbitration award. (Also, see discussion of impartiality on page 14.)

The fact that you may have met, known or had a business relationship or contact with someone doesn't necessarily indicate partiality, or even give rise to an appearance of partiality. If you feel the circumstances would in no way jeopardize a fair hearing and equitable award, you should say so when you disclose this information to NFA.

NFA will determine whether the disclosure disqualifies you from serving. We may also inform the parties and their counsel about the information provided in your disclosure. NFA will consider any objections from the parties, but NFA — not the parties to the dispute — will make the final decision as to whether you should remain an arbitrator.

NFA will also ask you to sign an oath stating that you will faithfully and fairly decide the case.

## ■ Communicating with the Parties
### Code Section 4(f); Rules Section 3(f)

To avoid an appearance of impropriety, members of an arbitration panel should refrain from having "ex parte" communications with (and from entering into any relationship with) parties to the dispute or their counsel. If you receive a communication from one of the parties, you should promptly inform the NFA case administrator assigned to the case. If there is information you wish to communicate or obtain from either party, this should likewise be done through the case administrator. Not only is this one of the ways in which NFA staff can assist you, but it also serves to assure that all parties and their counsel are currently and fully informed.

## ■ Communicating with the other Arbitrators
### Code Section 4(f); Rules Section 3(f)

Members of the arbitration panel are permitted — and, in fact, encouraged — to confer with one another prior to the hearing regarding issues, documents, scheduling, procedural matters and the like. For obvious reasons, discussions should not involve the merits of either party's case or what the ultimate resolution of the dispute might be. Arbitrators may also communicate with each other during the course of the hearing itself.

However, those conversations should preferably be off the record and outside the presence of the parties, their counsel, and witnesses.

■ **Independent Investigation**

Arbitrators should not conduct any independent investigation into the facts of the dispute or into the merits of either party's arguments. Rather, the arbitrator's role is to make a decision based on the information provided by the parties. When you conduct your own investigation, there is no way for the parties to respond to information you collected. They also don't have the chance to tell you why you should or shouldn't consider the information or to supply you with other information that might supplement or contradict the information you gathered. Because of this, the courts have held in certain circumstances that an arbitrator's independent investigation may be grounds for invalidating an award.

This does not mean, however, that you cannot seek to familiarize yourself, prior to the hearing, with the general issues that are the subject of the dispute or that may be brought up during the course of the hearing, if you feel this would be useful. Nor does the independent investigation rule mean that you cannot ask the parties to provide you with documents or other information than you believe would be helpful or necessary in arriving at an equitable decision. As previously mentioned, however, such requests should be made through NFA.

To further assist you, NFA has prepared a brochure, *Legal and Procedural Issues for NFA Arbitrators*. This brochure is intended as an educational reference. This information is not, however, intended to substitute for parties' own legal research and analysis.

### Requests for Pre-Hearing Decisions

Parties to a dispute or their legal counsel frequently ask the arbitration panel to make certain decisions or take certain actions prior to a hearing. Examples of these types of requests are: a request that the panel order the production of documents that have not been provided voluntarily; a request that the panel issue a subpoena; a request to postpone the hearing; or a request for a preliminary hearing. These and other types of pre-hearing requests are initially filed with the NFA case administrator who, in turn, will forward them to the arbitration panel. Unless the panel directs otherwise, pre-hearing requests are generally decided based on the parties' written submissions.

What, if any action arbitrators should take in response to a given request should, of course, be determined on the basis of the request and the circumstances. The most useful guideline is that all parties to an arbitration proceeding are entitled to a full and fair hearing. The arbitrators should grant requests that are reasonable in nature and deny them where the action requested is (or may be) necessary for the requesting party to prepare and present its case.

Although pre-hearing requests, like those having to do with producing documents and issuing subpoenas, are generally granted when they appear reasonable, a request that is initially denied can still be granted at the time of the hearing. This could be the case if, for instance, a party renews its request and can show at the hearing that certain documents it has been denied are necessary for the effective presentation of its arguments. (Unless, however, the documents were the subject of a late request to compel. See discussion in the next column.)

With a three-person arbitration panel, the arbitrators should confer with each other before making any pre-hearing decision. The decision should be in writing and signed, either separately or together, by the majority, or by the chairperson on behalf of the panel.

In the alternative, one or more of the arbitrators, with the consent of the other panel members, may act on behalf of the panel to decide certain pre-hearing motions from the parties. Again, the decision should be in writing and signed by the arbitrator(s) acting on behalf of the panel.

However, the full panel must consider certain pre-hearing requests. Those requests include motions to postpone the hearing, impose sanctions, dismiss a party or dismiss all or any portion of a claim.

The following paragraphs briefly describe and discuss some of the pre-hearing requests the parties may ask an arbitration panel to consider.

■ **Requests to Compel Production of Documents**
**Code Section 8(a); Rules Section 7(a)**

A party who is unable to obtain voluntary production of documents and written information (including interrogatories) that it considers necessary to present its case may file, through NFA, a request asking the arbitration panel to issue an order compelling the other party to produce the requested materials.

▪ The deadline to file a request to compel the production of documents is within 10 days of the date on which the documents were due to be provided.

▪ The deadline to file a written response to the request is within 10 days of the date the request to compel was received.

The party making a request to compel should identify the documents and information that were requested and explain why they are considered relevant and necessary. Furthermore, the requesting party must include a written certification with the request to compel. The certification must state that the requesting party made a good faith effort to resolve the discovery dispute through either a telephone conference or an in-person meeting with the other party or its representative. The party should send the request to compel and certification to NFA with a copy to the other parties.

If a party is going to file a request to compel, the party must file the request by the deadline or it may be waiving its right to do so. NFA will not accept a late request unless the party explains in writing why it was late. If the party provides the explanation, NFA will make the request on you, but you should not grant it unless the party has a good reason for filing it late. This is true even if the documents and information the party is asking for are material and relevant to the dispute.

When deciding requests to compel, the panel should grant the request if the information is essential to the requesting party in preparing its case. However, the panel may decline to compel production of the documents if, for example, it considers the requested information to be repetitive, irrelevant, or an unreasonable burden to produce.



Furthermore, with the consent of the other panel members, one or more of the arbitrators may schedule a discovery conference with the parties, in person or by telephone, to decide any outstanding discovery issues.

If the panel decides to hold a discovery conference, the chairperson of the panel (or the sole arbitrator in a one-arbitrator case) should contact the NFA case administrator, who will arrange for the conference. Discovery conferences, however, are not necessary in every case. The panel should only hold a discovery conference if there is a good reason for doing so. For example, a discovery conference may be appropriate where the parties are not cooperating with each other in exchanging documents and information and both sides have filed voluminous requests to compel.

If the panel orders the production of documents, it should specify the documents and information to be produced, and set a deadline for complying with the order. It is generally not enough for the panel to simply issue an order encouraging the parties to work the discovery dispute out on their own.

■ **Sanctions for Failure to Comply**
**Code Section 8(d); Rules Section 7(d)**

If a party fails to comply with the panel's order compelling production of documents, the panel has broad authority to take sanctions against the non-complying party. The available sanctions are the following.

▪ The panel can "establish as a fact" the allegation being asserted by the party making the request. For example, if a party claims a particular trade was made on a particular date and requests documents that it would expect to verify this, and if the other party does not produce the documents, the panel can assume the trade was made on that date.

▪ The panel can prohibit a non-responsive party from offering testimony or evidence concerning the subject matter of the requested documents.

▪ The panel can strike out portions — or all — of the non-responsive party's pleadings.

▪ The panel can postpone all further proceedings until the non-responsive party complies with the request for documents.

▪ The panel can dismiss the action or proceeding, or any part thereof.

▪ The panel can render an award by default against the non-responsive party.

The panel should tailor the sanction to the violation. For example, failing to provide discovery on a secondary issue should not result in a default judgment against the non-responsive party but may be grounds for deciding the secondary issue against that party.

At the regular hearing or through a preliminary hearing, the panel has considerable discretion to take whatever action it deems appropriate against a non-complying or disregarding party, up to and including rendering an award by default against a non-responsive party.

■ **Dismissal without Prejudice**
**Code Section 8(c); Rules Section 8**

In rare instances, a party may file a claim that may not be a proper subject for NFA arbitration. For example, a respondent may assert that witnesses or documents essential to a fair and final decision are unavailable, or that some parties to the dispute are not subject to NFA jurisdiction. Or, as another example, there may be a situation where an Arbitration Claim would result in duplicative arbitration proceedings. In these situations, the arbitrators may be asked to determine whether a case is appropriate for NFA arbitration.

The arbitrators are authorized to dismiss any claim without prejudice if the arbitrators determine that the claim is not a proper subject for NFA arbitration. However, this authority should only be used in extraordinary circumstances. It is not intended to be used to dismiss a claim simply because the claim may be frivolous or unfounded. If one of the parties is a customer, the arbitrators must also be aware of NFA's statutory obligation to provide a forum for customers who have a futures-related dispute with an NFA Member.

■ **Failure to Prosecute or Defend**
**Code and Rules Section 9(c)**

During the course of the arbitration process, there may be situations where, for example, a respondent files an Answer but then stops participating in the case or a claimant fails to continue to pursue an action but does not withdraw the arbitration claim. In both cases, the result could be a hearing where only one party shows up and presents his case to the arbitrators. In these situations, the "participating" party may go to great expense to appear and bring witnesses to the hearing, while your time as the arbitrator is wasted on a one-sided and often unnecessary hearing.

To avoid these results, NFA rules allow the arbitrators to find, at the written request of any party or on its own motion, that a party has failed to prosecute or defend the arbitration proceeding and therefore has waived its right to an oral hearing. The participating party can still request an oral hearing if the party has a right to one. Otherwise, the panel will decide the case based on the parties' written submissions.

## ■ Preliminary Hearing
### Code and Rules Section 9(a)

The panel may schedule a preliminary hearing on its own motion or after receiving a written request from one of the parties. A preliminary hearing may be scheduled with the parties to be physically present, by telephone conference, or by written submissions. The method for holding a preliminary hearing is up to the panel.

Requests for a preliminary hearing should be approved sparingly and only for good reason. A useful test is to determine:

1. would the preliminary hearing potentially eliminate the need for or narrow the scope of a full hearing? and

2. could the preliminary hearing be conducted without having to address or resolve the facts that are the substance of the dispute?

You should generally deny a request for a preliminary hearing unless you can answer "yes" to both questions.

Questions concerning jurisdiction may in some — but not all — instances be the basis for scheduling a preliminary hearing. For example, one party may contend that NFA lacks jurisdiction over some non-party who is needed as a witness, and therefore the claim is not a proper subject for NFA arbitration. The opposing party may believe that the witness is unnecessary. This could possibly be resolved through a preliminary hearing. But the hearing should be granted only if the party alleging lack of jurisdiction has made every reasonable effort to make the non-party available (including a request to change the hearing site and issue a subpoena if applicable). (Also, see discussion of dismissal without prejudice on page 9.)

Or, as another example, one party may request a preliminary hearing on the grounds that the other party has been so uncooperative that the issuance of an award, a dismissal, or a narrowing of the scope of the dispute is warranted. A preliminary hearing could be held to address this issue.

In some other instance — such as a request for a preliminary hearing to determine whether the claimant knew or should have known that a claim existed — the question of when the claimant knew or should have known may be so intertwined with the substance of the dispute that a preliminary hearing would be inappropriate.

As mentioned but worth repeating, it is within the panel's discretion whether to grant a preliminary hearing.

## ■ Postponements (Continuances)
### Code and Rules Section 9(a)

Arbitrators have the power to grant postponement requests (continuing the hearing date). The panel should generally accommodate a postponement request if the request is reasonable in light of the circumstances, or if there are compelling reasons for the delay, and if the interests of justice would be served. However, the fact that both parties agree to the continuance is not itself a compelling reason. If there are questions about the appropriateness of a continuance, NFA staff is available for guidance. The final decision, though, rests with members of the arbitration panel. Tactics that serve no purpose other than to delay the hearing are not sufficient reasons for continuance. Arbitrators may also apply a more restrictive interpretation of the phrase "interests of justice" if the same party makes repeated requests for continuances.

## ■ Postponement Fee
### Code and Rules Section 11(c)

A request to continue the hearing must be accompanied by the payment of a $250 postponement fee ($500 in a Member-to-Member case). Furthermore, the cost of each additional postponement request by a party goes up — $500 for the second request and $1,000 for each request thereafter. The graduated fee schedule is designed to discourage unnecessary requests for continuances and contribute to the orderly resolution of disputes. If the panel does not grant the request, NFA refunds the fee to the party who paid it.

If the party who paid the fee can demonstrate to the panel that another party actually caused the postponement, the panel should assess the fee against the party causing the postponement. Alternatively, at its discretion, the panel may waive the fee. This should be done only if the party asking for the postponement could not have reasonably foreseen the events that call the postponement and if the party promptly made the continuance request. NFA does not charge a postponement fee if the postponement is due to an arbitrator being unable to serve or if the hearing exceeds beyond its expected time.

In addition to the postponement fee, arbitrators may assess reasonable and necessary expenses actually incurred by the parties and their witnesses (including attorneys' fees) as a result of the postponement.

## ■ Subpoenas and Orders to Non-Parties
### Code and Rules Section 9(A)(7)

In instances where non-parties decline to cooperate voluntarily, any party or the arbitration may ask the arbitrators to issue an order for the production of documents or appearance of witnesses. The request must be made through NFA. Furthermore, a party may ask the panel to issue a subpoena if a non-party is not an NFA Member or Associate or otherwise subject to NFA authority.

The party asking for an order or a subpoena must support its request by explaining why the documents or witnesses are necessary, describing the efforts it has made to achieve voluntary cooperation, and including a copy of any subpoena it is asking the arbitrators to issue. NFA will also give the non-party the opportunity to tell the panel why the arbitrators should not order it to produce the requested documents or attend the hearing. NFA will forward any response from the non-party to the arbitrators for consideration.

NFA can take strong, disciplinary action (including loss of membership) against any Member or Associate who fails to comply with an order issued by an arbitration panel.

## ■ Telephonic Testimony

A party may ask the arbitrators to allow a witness or a party to testify at the hearing by telephone. In deciding whether to grant the request, the arbitrators should consider the nature of the testimony, whether the credibility of the witness is an issue, the hardship to the party if the request is not granted, and the hardship to the other parties if the request is granted.

## ■ Depositions

Parties may manually and voluntarily agree to pre-hearing depositions. NFA arbitrators may also order evidence depositions if the party making the request demonstrates that the depositions are needed. For example, an evidence deposition may be appropriate in limited circumstances such as where a witness cannot attend the hearing because he is too ill, or cannot otherwise be required to attend the hearing (e.g., a person who resides in a foreign country). Arbitrators, however, cannot order other types of depositions, including discovery depositions.

## ■ Motions to Dismiss
### Code and Rules Section 8(a)(1); Rules Section 7(f)(1)

NFA's rules prohibit motions to dismiss for failing to state a claim. This restriction also applies to any motion that staff determines is really a motion to dismiss for failing to state a claim, even if the party filing it calls it something different.

NFA allows the parties to file a motion to dismiss on other grounds, but the parties must include the motion in a timely Answer or Reply. For example, a respondent may ask the arbitrators to consider whether to dismiss a claim because it was not filed within NFA's two-year time limit or because it is barred by the doctrine of res judicata. (For motions based on lack of jurisdiction, see discussion of preliminary hearings, page 10.) The full panel must consider any motion to dismiss.

## ■ Motions for Summary Judgment
### Code and Rules Section 8(a)(1); Rules Section 7(f)(1)

The parties may raise motions for summary judgment at any time. In a motion for summary judgment, the opposing parties agree on the facts in the dispute but do not agree how the law applies to those facts. The full arbitration panel must consider this type of motion since a party or a claim could be dismissed with prejudice if summary judgment is granted.

## ■ Default Judgment

A claimant may ask the panel to issue a judgment by default if a respondent fails to file an Answer. Since the claimant's information is undisputed, the panel can accept the claimant's version of the facts as true. However, this does not necessarily mean that the respondent acted wrongfully or that the claimant's losses resulted from the respondent's actions. You should still look at the information provided by the claimant to see if the deserves to be compensated.

## ■ Amended Claims
### Code and Rules Section 6(h); Rules Section 5(h)

Once NFA appoints an arbitration panel, a party may file a new or different claim (including counterclaims, cross-claims and third-party claims) only with the panel's consent. You should accept an amended claim only if you determine that there are sound and compelling reasons for permitting it, along with bona fide reasons from the requesting party for not having included the information in the original claim. You may refuse to allow the amendment if you find it would unreasonably delay or impair the ability of the respondent to effectively prepare a defense. (See discussion of amended claims, page 6.)

## ■ Motions for Emergency Relief
### Rules Section 7(f)(1)

Section 7(f) of the Member Rules give Members and Associates the ability to obtain emergency relief in arbitration to deal with issues associated with the dispute when those issues need immediate attention. For example, if a Member firm files a claim alleging another Member firm is raiding its employees, the Member filing the claim may want an interim order for relief until the arbitration case is decided. The interim order would remain in effect until NFA serves the final award, unless the arbitrator decides to modify the order.

One arbitrator will decide a request for emergency relief, unless NFA or the arbitrator believes three arbitrators should decide the request. The arbitrator will also have the authority to expedite a hearing on the merits by setting deadlines for filing pleadings, conducting discovery, preparing the hearing plan and scheduling the hearing — even shorter than the deadlines established in the Arbitration Rules.

The standards for deciding a request for emergency relief are similar to those a court uses in granting preliminary injunctions. The requirements generally involve a four-part analysis where the requesting party must demonstrate:

■ a reasonable likelihood of success on the merits, and

■ no adequate remedy and irreparable harm if emergency relief is denied.

If the requesting party clears these hurdles, the arbitrator will then consider:

■ the irreparable harm the other party will suffer if the relief is granted balanced against the irreparable harm the requesting party will suffer if the request is denied, and

■ the public interest (i.e., the effect that granting or denying the request will have on non-parties).

## Other Pre-Hearing Matters

### ■ Scheduling the Hearing
**Code and Rules Section 9(a)**

NFA determines the time and place of the hearing, accommodating, to the extent possible, the preferences of all parties and members of the arbitration panel. NFA will give notice of when and where the hearing will be held at least 45 days prior to the hearing date.

### ■ The Hearing Plan
**Code and Rules Section 7(c)**

In any case requiring an oral hearing, NFA will provide the arbitrators with a written summary approximately ten days before the hearing begins. The hearing plan is an important tool that is unique to NFA arbitration. The purpose of the plan is to provide a road map to help the hearing run smoothly and efficiently. The parties and/or their counsel in conjunction with NFA staff will prepare the hearing plan. (Parties and their counsel are required to cooperate with NFA staff in preparing the plan.) Arbitrators have both the authority and the responsibility to assure that the parties follow the hearing plan. This means that you may have to occasionally remind the parties, by interrupting their presentations if necessary, to adhere to the plan.

The hearing plan includes the following information:

■ the names of the parties to the dispute;

■ the nature of the case, including a summary of each claim, Answer and Reply;

■ the facts the parties have agreed to, which do not need to be — and should not be allowed to be — argued or proven at the hearing;

■ the disputed issues that will be argued at the hearing;

■ witnesses who will be present to testify; and

■ exhibits that will be presented.

The NFA case administrator will keep the arbitrators informed of the progress of the hearing plan preparation. If you feel that the parties are not meeting their hearing plan requirements, NFA staff can assist the arbitrators in conducting a conference with the parties to complete or modify the plan.

### ■ Settlement by the Parties
**Code and Rules Sections 10(b) and (i)**

Just as lawsuits are sometimes settled out of court, parties to an arbitration proceeding may mutually agree to settle their differences prior to a hearing. Although they are encouraged to do so. In the event that a case is settled, the parties should promptly notify NFA. NFA will notify the members of the arbitration panel. NFA will also notify you when some but not all parties to the dispute reach a settlement.

It is not an arbitrator's role to serve as a mediator or conciliator. Arbitrators should not become involved in any discussions pertaining to the substance of a settlement between the parties. However, at the request or with the consent of the parties to the settlement, the arbitrators may issue a consent award containing the terms of the settlement.

### ■ Mediation
**Code and Rules Section 14**

To encourage and facilitate settlements, NFA has incorporated mediation into the early stages of the arbitration process. In mediation, the parties voluntarily submit their dispute to a neutral person — the mediator — who works with them to reach a mutually agreeable settlement. If one of the parties doesn't agree to mediate or if the parties are unable to reach a settlement, you will proceed to a hearing or summary proceeding.

Neither the parties nor the arbitrators may call the mediator as a witness. Furthermore, any statements or offers made during a mediation session are confidential and are not admissible for any purpose in the hearing or summary. However, if the parties disagree on whether they verbally agreed to settle a case, the arbitrators may be asked to determine whether an enforceable settlement was reached. In that situation, you should make your decision based on whether the parties did reach a settlement, not on any statements or offers made during mediation that help you determine whether the parties did reach a settlement.



### ■ Withdrawal by an Arbitrator
**Code and Rules Section 4(e); Rules Section 3(e)**

You should promptly notify the NFA arbitrator coordinator if you become ineligible or otherwise unable to serve on an arbitration panel. Unless the parties request otherwise, NFA will name a replacement. Although emergencies and unforeseeable events do occur, every reasonable effort should be made to avoid withdrawals that would delay and add to the expense of resolving the dispute.

### ■ The Role of the Panel Chairperson

The chairperson is a full member of the panel. The chairperson has an equal voice and vote in all deliberations and decisions that require the full panel's involvement. The chairperson is usually, but not always, the one who acts on behalf of the panel for any matters that do not require the full panel's involvement.

The chairperson is also responsible for conducting the hearing. In addition to swearing in the witnesses, he or she will ensure that the hearing proceeds in an orderly manner and that each party is given a fair opportunity to present its case. NFA will provide the chairperson with a script for opening and closing the hearing.

NFA will also provide the chairperson with a handbook that explains the chairperson's role and responsibilities. (See additional references to the chairperson's responsibilities in the section discussing the hearing, pages 13-16.)

Finally, the chairperson oversees the panel's deliberations, ensures that the panel makes a decision within 30 days after the record has closed, communicates the decision to NFA, and reviews the final award for accuracy and completeness.

### ■ The Oath
**Code and Rules Section 9(f)(5)**

Arbitration proceedings are conducted under oath. The chairperson will swear in parties and witnesses at the start of the hearing.

### ■ Pre-Hearing Meeting

Shortly before the hearing, NFA staff and any members of the arbitration panel who wish to do so may meet informally to discuss any last minute procedural matters that remain unanswered.

## The Summary Proceeding

As mentioned previously, a single arbitrator will resolve disputes involving claims totaling $25,000 or less ($50,000 in a Member case) solely through written submissions. This is known as a summary proceeding and involves no oral hearing.

There are exceptions, though. A party may request an oral hearing if the claim amount exceeds $5,000 ($10,000 in a Member case). In addition, you may schedule an oral hearing if you determine that credibility is a central issue in the case, you cannot determine credibility from the written submissions, and the expense of an oral hearing is justified (taking into account the location of the parties and the amount of the claim). You may also want to call for an oral hearing if, after reviewing the parties' written submissions, you can only obtain the information you need to decide the case by questioning the parties in person. Again, you should consider the expense of an oral hearing in reaching this decision.

For claims involving more than $25,000 ($50,000 in Member case), NFA will hold an oral hearing unless all the parties and the panel agree to a summary proceeding. In cases where credibility is involved, a summary proceeding may not be appropriate.

### ■ Procedure for a Summary Proceeding

As an arbitrator in a summary proceeding, you will have a 10-day period to consider the parties' written submissions and arrive at a determination. NFA will give the parties at least 45 days notice of the date that the summary proceeding will begin. The parties should provide NFA with whatever documentary evidence they want you to consider at least 15 days before the start of the summary. They are to submit rebuttal evidence to NFA at least five days before the summary starts. As the arbitrator, you may — but are not required to — consider evidence that was not submitted on a timely basis.

To ensure that you carefully consider all the evidence, including rebuttal evidence, you should not make your decision until the end of the 10-day summary review period.

As you review the written submissions, you may determine that additional information is needed from some or all of the parties. In this case, you should make a request through NFA for the party (or parties) to provide the needed information in writing within a reasonable time. This may or may not extend the proceeding beyond the initially scheduled 10 days. Keep in mind, though, that you should not conduct any independent investigation into the facts of the dispute or into the merits of either party's arguments. Instead, you should make your decision based on the information provided by the parties. (See discussion of independent investigation, page 8.)

## The Hearing

The members of the arbitration panel must conduct arbitration hearings in accordance with established procedures.

As indicated in the Introduction to this guide, the authority vested in arbitrators by courts and legislatures is considerable. It encompasses both hearing procedures and substantive matters: granting or denying motions, approving or overruling objections, and admitting or refusing to admit exhibits and testimony. Because the conduct of an arbitration hearing can be made less formal — and therefore more flexible — than a court of law, arbitrators have wide latitude to consider whatever evidence and hear whatever testimony they believe may be useful in arriving at an equitable resolution of the dispute. A number of issues that may arise during the hearing, and that would require your decision, are briefly discussed in the paragraphs that follow.

**■ Opening the Hearing**

The chairperson of the arbitration panel (or the arbitrator in the case of a one-person panel) will be provided with a script for opening the hearing. This opening statement enables the chairperson to identify him or herself, state the purpose of the hearing, explain the sequence the hearing will follow, and swear in the parties and their witnesses.

**■ Hearing Procedure**

A hearing doesn't have to follow any definite format. Arbitrators may exercise their discretion so long as all parties have a fair opportunity to present their cases. However, the common procedure goes as follows:

1. Brief opening statement by claimant (or representative)¹

2. Brief opening statement by respondent (or representative)¹

3. Claimant's case, including witnesses, exhibits and cross-examination by respondent;

4. Respondent's defense, including witnesses, exhibits and cross-examination by claimant;

5. Repetition of steps 3 and 4 if necessary to present new evidence (not simply to rehear testimony previously heard), counterclaims, cross-claims and third-party claims until the parties have presented all relevant evidence;

6. Closing statement by respondent;

7. Closing statement by claimant; and

8. Closing of the hearing by the chairperson.

**■ Impartial Conduct**

Arbitrators must maintain impartiality throughout the hearing. This includes the avoidance of any actions or statements that might give even the appearance of partiality. For example, arbitrators should refrain from commenting, either favorably or unfavorably, on either party's arguments, the merits of exhibits, or the testimony of witnesses. Arbitrators should not use an argumentative tone when asking questions. There should be no conversations with parties and/or its representative, either in or out of the hearing room, unless the other party has the opportunity to be present. Parties and their representatives should never be addressed on a first-name basis; the purpose, again, being to prevent any appearance of partiality.

In rare situations, you may realize during the hearing that you have had a relationship with a party, counsel or witness that you didn't recall when NFA asked you to serve as an arbitrator. If that happens, you should immediately inform the NFA staff person present at the hearing, who will make it known to the parties. If there are no objections, the hearing may proceed. If one of the parties objects to your participation, the NFA staff person will determine whether the objection is valid. If the objection is not valid, the hearing will

¹ If the parties have accumulated their cases in the hearing plan, these statements should be very short or, at the suggestion of the arbitrators and the agreement of the parties, may be waived unless the parties wish to include additional information.



proceed. If the objection is valid (or you decide to recuse yourself), the parties will have the opportunity to mutually agree to continue the hearing with only two panel members.

If the parties do not agree to go forward without a full panel, NFA will appoint a replacement arbitrator. If that occurs, the newly-formed panel will determine whether all or part of any prior hearing sessions should be repeated. In making this decision, the arbitrators should consider the following factors:

- the length of the prior hearing sessions;
- the expense to the parties if the case is reheard;
- the degree the case relies on documentary evidence;
- whether credibility of witnesses is a major factor; and
- the wishes of the new arbitrator.

A partial hearing is also an option for the panel to consider.

**■ NFA's Role at the Hearing**

One or more NFA staff members knowledgeable in arbitration procedures is generally present throughout the hearing to offer guidance and advice as necessary to members of the arbitration panel. On occasion, NFA staff may respond to questions by the parties concerning procedural matters.

Should issues arise or questions occur to you during the course of the hearing, you should "go off the record" for the purpose of asking questions of NFA staff. Or, if you wish, the panel can briefly adjourn the hearing in order to confer with NFA staff outside the hearing room. NFA staff cannot, of course, offer any opinions or respond to any questions concerning the merits of either party's arguments or the resolution of the dispute.

**■ Conduct of Parties**

Parties to the dispute, their counsel, and their witnesses are expected to participate in the hearing in an orderly and decorous manner. The chairperson of the panel has the responsibility and the authority to assure that appropriate standards of conduct are observed while still preserving the informal atmosphere of the proceeding.

Additionally, many parties in NFA arbitration — customers and Members alike — appear pro se, that is, without an attorney or other representative, and may not be skilled in presenting their claims or defenses. To ensure that you have all the information you need to reach a decision, you may have to ask questions during the hearing to fill in any details. You also have the responsibility during the hearing to make sure that all parties are treated fairly and to assist pro se parties with procedural and legal issues.

**■ Witnesses**

The claimant and respondents should list in the hearing plan all witnesses they will call, including a brief description of each witness's background and the substance of what each will say.

Each party does, of course, have the right to cross-examine the other's witnesses. Members of the arbitration panel may also ask questions of the witnesses at any time (although it may be preferable to defer questions until after the cross-examination is completed).

Arbitrators similarly have the authority to interrupt witnesses if their testimony is cumulative (repetitive of information already presented), is clearly irrelevant, or is in the nature of a character reference. You should encourage witnesses to limit their testimony to matters that are pertinent to the dispute.

On the other hand (keeping in mind that formal rules of evidence aren't applicable), arbitrators should generally be reluctant to allow objections to a witness's testimony solely on legal or technical grounds. It is usually better to permit any testimony which appears relevant or which might prove to be relevant. (See discussion of surprise/prejudice, in the next column.)

**■ Affidavits**

Code and Rules Section 9(d)(6)

The panel may, but is not required to, accept written affidavits. In deciding whether to accept an affidavit, the panel should consider the importance of the testimony given in the affidavit (i.e., whether it relates to an essential fact in the case or to a secondary issue) and why the person did not testify in person or by telephone. The panel should also keep in mind that the opposing party cannot cross-examine an affidavit.

Once you accept an affidavit into evidence, you should keep these same factors in mind in deciding how much weight to give the affidavit when considering all the evidence and reaching a decision.

**■ Exhibits**

When a party seeks to introduce a document as evidence, the chairperson of the panel should direct that it be marked for identification as the claimant's or respondent's exhibit. The panel should allow the other party reasonable time to examine the exhibit and, if desired, object to its introduction as evidence. In the event of an objection, the panel should decide whether the document is accepted or rejected.

The panel may reject a document as evidence if, for example, the party offering the document failed to list it on the hearing plan and has no adequate explanation for not including it. The panel may also reject a document if it was requested by the other party during discovery but was not exchanged prior to the hearing.

The panel may also reject a document as evidence if it is irrelevant or repetitive. However, you always have the option of accepting the document as evidence and subsequently giving its contents (and any objections to its introduction) such weight as you deem appropriate during your deliberations.

**■ Surprise/Prejudice**

To the extent possible, every effort should be made to avoid surprises — unexpected events that could be prejudicial to the other party — during the hearing. For example, the parties have announced they will be unprepared and lost party appears with an attorney. If the unrepresented party objects, the panel must rule on whether the unrepresented party will be prejudiced by proceeding with the hearing or whether it should be postponed to give him time to hire an attorney.

Other examples: the introduction of surprise witnesses or exhibits, or a change in an address or claim for the arbitration's claim. Faced with one of these or another type of surprise, the panel has a number of alternatives. After listening to objections, it can proceed with the hearing and take the issue into consideration during its deliberations, or it can request that additional information be provided. (See discussion of briefs, page 16.) The panel may decline to hear surprise witnesses or to accept unexpected documents. Or, if absolutely necessary in the interest of a fair and equitable hearing, the panel can adjourn the hearing. (See discussion of adjournments, page 16.) In these circumstances, the panel may wish to briefly recess in order to confer with NFA staff.

**■ Party's Representative**

Code Section 7(d); Rules Section 6(a)

Because the purpose of a hearing is to resolve a dispute, heated discussions between opposing counsel or other representatives may occur. The panel has the responsibility and authority to assure that order is maintained, so "heated" or become disruptive to the process of an orderly hearing. Attorneys and other representatives are expected to be mindful that it is the arbitrators, not they, who are conducting the hearing. If circumstances require, the panel should not hesitate to remind them of this.

Should reasonable and appropriate reminders fail to achieve the desired effect, the panel has the authority to bar a "contumacious" representative from the hearing (contumacious being defined as "contemptuous of authority or disobedient").

Should this extreme action become necessary, the party represented by the barred representative will be asked to proceed on its own behalf. In considering this request, the panel should take into account what responsibility, if any, the party shared in the representative's unacceptable conduct.

**■ Adjournments**
Code and Rules Section 9(e)

If a party asks the arbitrators to adjourn a hearing in progress, the best guidance for responding to the request is provided by the language in NFA's arbitration rules. Section 9 states: "Exercises of time or postponements of the hearing may be granted by the panel when the interests of justice so require, but a hearing in progress shall not be adjourned or interrupted except in compelling circumstances."

**■ Motions for Directed Verdict**
Code and Rules Section 7(f)(1)

After the claimant has presented his case, the respondent may ask the panel to render a decision dismissing the claim (or 'directing a verdict' in its favor) on the grounds that the claimant did not prove his case. NFA's rules give the arbitrators the authority to grant this type of motion if the panel deems it appropriate.

**■ Extended Hearing Sessions**
Code and Rules Section 11(a)

Depending on the size of the claim and the complexity of the issues, an NFA arbitration hearing may last one day or several days, sometimes requiring several months. If a case requires more than four hearing days, the hearing fees collected by NFA will double for the fifth day and each day thereafter. However, the panel may decide to keep the fees at the standard amount if the number of hearing days is due to case complexity rather than a party's tactics or a representative's presentation style.

**■ Briefs**

If you believe that additional information is needed in order to make a just decision, or if you would like clarification of the issues, you may ask the parties to submit briefs on the issue. Similarly, you can request additional documents. These requests may be made before, during, or after the hearing. A word of caution, though. Since disputes in arbitration must be resolved solely on the basis of the information presented, arbitrators should not attempt to independently research factual matters. This could subject the arbitration award to attack. (See discussion of independent investigation, page 8).

In addition, you may agree to accept post-hearing briefs at the request of any party or in counsel. You should not grant this request, however, if it appears that its sole purpose is to delay deliberations or to introduce new issues.

If the arbitrators order or allow the parties to file briefs, the panel should set deadlines for filing them. The panel can also set page limits.

**■ Closing the Hearing**

A hearing is closed after the witnesses have been heard, documents have been offered and closing statements have been made. The hearing script NFA provides to the chairperson of the panel contains suggested language for officially closing the hearing. After closing statements are completed, the panel will ask the parties and their counsel to leave the hearing room together. The panel should not announce during the hearing which party prevailed or the amount of an award, if any.

## After the Hearing

Members of the arbitration panel generally meet immediately after the hearing to discuss the case and the evidence presented. It may or may not be possible at this time to determine who prevailed and the amount of a monetary award, if any. For example, an immediate determination may not be possible or practical if the issues are particularly complex, if panel members require additional time to consider the evidence, or if the parties will provide additional information in post-hearing briefs.

If no decision is made immediately following the hearing, panel members should arrive at their decision by meeting together or by teleconference.

The panel must notify NFA of its decision within 30 days after the record is closed. The record closes when the hearing is concluded unless the panel has decided to accept additional documents or written briefs from the parties. In this case, the record does not close until NFA receives the documents or briefs or until the deadline set by the panel for their submission has passed, whichever is earlier.

In complicated cases, or if extra time is needed to obtain additional information, the panel may ask the parties to waive the 30-day requirement.

**■ The Award**
Code and Rules Section 10(a)

In making the award, you should consider the testimony, the credibility of the witnesses, and the documentary evidence. You should then decide whether the respondent's conduct was wrongful and whether the claimant was damaged as a result of that conduct. A majority decision is all that is required.

As discussed on page 3, the award of an arbitration panel does not contain reasons, or any explanation whatsoever, of how or why the panel arrived at its decision. However, the award does contain a summary of the issues that were presented to and decided by the panel. If necessary, the arbitrators should modify the summary to accurately reflect which issues they decided.

The flexibility that applies to arriving at an award does not, however, extend to the preparation and presentation of the award. This must be done in a manner that is careful not to subject the award to attack. The award must be specific and definite in terms of what it orders the parties to do. It must resolve the entire claim (including any counterclaims, cross-claims, third-party claims and jurisdictional issues), and it must not address issues outside the arbitrator's scope of authority.

**■ Amount of the Award**
Code and Rules Sections 10(b) and 12

The award may grant or deny any of the monetary relief requested, plus interest and filing fees. Awards should take into account both the request of the claimant and any claims made by the respondents. (Note: In Member cases, the panel is not limited to awarding monetary relief only.)

Under certain circumstances, the award may include an assessment of other costs and fees.

If the panel determines that any party's claim or defense was frivolous or was made in bad faith or that the party engaged in willful acts of bad faith during the arbitration, the panel may assess against that party reasonable expenses of the arbitrators, parties and witnesses, including attorney's fees.

The panel may assess against the party who caused a postponement (usually but not always the party that requested it) reasonable expenses of the parties and their witnesses, including attorney's fees. (See Postponement fee, page 10.)

The panel may award attorney's fees if authorized by a contract between the parties or a statute that was the basis for the claimant's successful cause of action.

An award is final when the arbitrators have made their decision. The award is to state the result and should not include reasons for the decision.

**■ The Award Form**

NFA staff will prepare the award form and send it to the panel members for their signatures. The forms should be delivered to NFA, who will forward the award to the parties.

**■ Requests for Modification**
Code and Rules Section 10(c)

Either party may — within 20 days of the date of service by NFA — request that the award be modified to correct a clerical or technical error. The panel should grant the request if:

• There was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award (e.g., the panel means to award $20,000 on a $30,000 claim but added an extra zero by mistake).

• The arbitrators have awarded upon a matter not submitted to them.

• The award is imperfect in matter of form not affecting the merits of the controversy (e.g., the case is captioned incorrectly).

NFA staff will review any modification request filed by the parties. NFA will not send a modification request on the panel if it asks the arbitrators to reconsider the merits of the case rather than correct a clerical or technical error.

**■ Review by a Court**

As discussed in the introduction, a party cannot appeal an arbitration award to NFA or to a court for review on its merits. The limited grounds on which a court may agree to review an arbitration award are described on page 5.

**■ Enforcement**
Code and Rules Section 10(g)

NFA Members and persons associated with Members are required by NFA Rules to fully comply with any award made by an arbitration panel. Failure to comply may result in suspension of membership privileges. However, NFA will not suspend a Member or Associate if the Member or Associate has a pending application to vacate, modify or correct the award and in most situations has posted a bond with NFA equal to 150% of the amount of the award against the Member or Associate.

Arbitration awards are also enforceable in courts. Judgments on an award may be entered in any court of competent jurisdiction.

**■ Referral to NFA's Compliance Department**

An arbitration panel may refer a case or certain issues arising out of a case to NFA's Compliance Department for investigation if it feels the Member or Associate's conduct warrants it. If the panel would like a matter referred, please notify the Case Administrator assigned to the case.

**■ Confidentiality**

Arbitrators must respect the confidentiality of the arbitration process. The identity of the parties, the nature of the evidence, and the details of the arbitrators' deliberations should be discussed only as required in the performance of your arbitrator duties.

**■ Immunity from Liability**

Arbitrators are generally immune from liability for their actions in arriving at an arbitration award. The courts recognize that the very nature of arbitration requires an arbitrator to exercise independent judgment. Accordingly, courts provide arbitrators with immunity from legal action by the losing party. In the unlikely event that an arbitrator is sued, NFA should be promptly notified. NFA will provide representation or pay legal expenses.



## Index

Affidavits 15
Adjournments 16
Answer 6
Arbitration
  mandatory 4
  panel 4
Arbitration Claim 5
Arbitrator
  immunity from liability 17
  independent investigation 8
  selecting 7
  serving as 3
  withdrawal by 12
Award 16
  amount of 17
  enforcement 17
  form 17
  requests for modification 17
  review by courts 5,17
Briefs 16
Chairperson, role of 13
Claims 5,11
  amended 6
  counterclaim 6
  cross-claim 6
  third party 6
Communicating
  with the parties 7
  with other arbitrators 7
Confidentiality 17
Continuance (see Postponements)
Default judgment 11
Depositions 11
Directed Verdict, motions for 16
Disclosure 7
  (see also Impartiality)
Exchanging Documents
  and Written Information 6
  requests to compel 8
Exhibits 15
  surprise/prejudice 15
Hearing
  closing 16
  conduct of parties 14
  extended sessions 16
  oath 13
  opening 14
  plan 12
  procedure 14
  scheduling 12

Impartiality 7, 14
Mediation 12
Motions
  (see Requests for Pre-Hearing Decisions)
National Futures Association
  arbitration program 4
  pre-hearing meeting 13
  role in the process 3
Postponements 14
  fee 10
Representative, party's 10
Requests for Pre-Hearing
  Decisions 15
  amended claims 6,11
  compel production
    of documents 8
  default judgment 11
  depositions 11
  dismissal without prejudice 9
  failure to prosecute or defend 9
  motions to dismiss 11
  motions for summary judgment 11
  postponements 10
  preliminary hearing 10
  sanctions for failure to comply 9
  subpoenas 10
  telephonic testimony 11
Settlement 12
Summary Proceeding 13
Witnesses 14



## Conclusion

If you have not previously served as an arbitrator — or, more specifically, as a member of an NFA arbitration panel — we hope that this manual has provided a useful preview of what to expect. If you have served before, it should be a helpful resource.

We believe you will discover that serving as an arbitrator is an interesting, informative, and professionally rewarding experience. A high percentage of those who have served as NFA arbitrators concur with this conclusion. Certainly, all other benefits aside, you will have performed an important and constructive service. The success of any industry requires that its participants are assured of fair and equitable treatment, and arbitration helps to provide that assurance.

By no means will all the issues discussed in this manual arise in any given arbitration proceeding, or perhaps in the course of half a dozen proceedings. On the other hand, a booklet of this length obviously cannot cover or fully treat all of the issues which might arise. If you have any additional questions, please contact NFA Arbitration Department.

We appreciate your help and welcome the opportunity to provide ours.

300 South Riverside Plaza, Suite 1800
Chicago, Illinois 60606-6615

www.nfa.futures.org

© 2005, 2007 National Futures Association

# EXHIBIT

# H

# LAW OFFICES OF MICHAEL TRACY

2030 Main St. • Suite 1300 • Irvine, CA 92614 • Phone: 949-260-9171 • Fax: 866-365-3051

Michael J. Abbott
JONES, BELL, ABBOTT, FLEMING & FITZGERALD L.L.P.
601 South Figueroa Street 27th FLR
Los Angeles, CA   90017-5759


May 29, 2008


**RE: Zaitzeff v. Peregrine Financial Group, Inc.**
      **Termination of Associated Persons Agreement**

Dear Mr. Abbott:

As I had discussed with you, Mr. Zaitzeff's position is that the Associated Persons Agreement was terminated by him upon his resignation.  This resignation was provided to PFG in writing.  In addition, on March 26, 2008, Mr. Zaitzeff presented PFG with a written demand for payment of monies owed him.  In a letter dated April 15, 2008 PFG acknowledged receipt of this letter and refused to pay the debt.  As such, the failure to pay this debt also terminated the agreement.

In case PFG claims that either of the above events were insufficient to terminate the agreement, this letter will serve as written notice that Mr. Zaitzeff is terminating the Associated Persons Agreement, as allowed under Paragraph 19 of the agreement.

Thank You,

Michael Tracy
Attorney