1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11
12
13
14
15
16
17
18
19

| | |
|---|---|
| DAVID ZAITZEFF, an individual, on behalf of himself and on behalf of The State of California Labor and Workforce Development Agency as a Private Attorney General,<br><br>Plaintiff,<br><br>vs.<br><br>PEREGRINE FINANCIAL GROUP, INC., an Iowa Corporation, JOSEPH PETER SLAGA, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. CV 08-02874 MMM (JWJx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR A TRANSFER OF VENUE |

20
21
22
23
24
25
26

On May 2, 2008, plaintiff David Zaitzeff commenced an action against defendants Peregrine Financial Group, Inc. and Joseph Peter Slaga, asserting claims for violation of the Fair Labor Standards Act ("FLSA") and California Labor Code.  On May 28, 2008, defendants filed a motion to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure.  Alternatively, defendants seek an order transferring venue to the Northern District of Illinois.

27
28

## I. FACTUAL & PROCEDURAL BACKGROUND

### A.    Facts

Defendant Peregrine Financial Group, Inc. ("PFG") is an Iowa corporation doing business in Ventura County, California.[1]  PFG is a registered Futures Commission Merchant and member of the National Futures Association ("NFA").[2]  Defendant Joseph Peter Slaga is the branch manager of PFG's Camarillo, California office.[3]  Plaintiff David Zaitzeff was employed by PFG from August 2, 2006 until March 2008.[4]

On March 30, 2006, Zaitzeff and PFG entered into a written "Associated Person Agreement" (the "Agreement"),[5] pursuant to which Zaitzeff agreed to perform the duties required of associated persons, including the solicitation of accounts for the purchase and sale of futures and/or options on futures.[6]  In consideration for Zaitzeff's services, PFG agreed to compensate him primarily on a commission basis.[7]  An attached rider described the schedule for the payment of commissions,[8] and stated that Zaitzeff was not entitled to company benefits, was responsible for his own costs and expenses, and was retained by PFG on an independent contractor basis.[9]  PFG gave Zaitzeff a yearly

---

[1]Complaint, ¶ 7.

[2]Defendants' Motion to Dismiss Complaint for Improper Venue or in the Alternative for a Transfer of Venue and Petition to Compel Arbitration ("Def.'s Mot.") at 3.

[3]*Id.* at 4; Complaint, ¶ 9.

[4]Complaint, ¶ 7. The complaint alleges that Zaitzeff was employed by defendant through March 8, 2008. (*Id.*). In his opposition to defendant's motion, however, Zaitzeff states that he did not give PFG a written letter of resignation until March 24, 2008. (Declaration of David Zaitzeff in Opposition to Motion to Dismiss ("Zaitzeff Decl."), ¶ 4).

[5]Def.'s Mot. at 1; Declaration of Rebecca J. Wing ("Wing Decl."), Exh. 1.

[6]Wing Decl., Exh. 1, ¶ 17.

[7]*Id.*, Exh. 1, ¶ 7.

[8]*Id.*, Exh. 1.

[9]*Id.*

2

"1099" Form reflecting income received from PFG; Zaitzeff was responsible for all taxes associated with such income.[10]

The Agreement contains a forum selection and governing law clause, which states:

"This Agreement shall be governed by the laws of the State of Illinois. . . . The parties agree that all actions, disputes, claims or proceedings, including but not limited to, any arbitration proceedings, arising directly or indirectly in connection with, out of, or related to or from this Agreement, any other agreement between the AP ["associated person")] and PFG, whether or not initiated by PFG, shall be adjudicated only in courts or other dispute resolution forums whose situs is within the City of Chicago, State of Illinois. AP hereby specifically consents and submits to the jurisdiction of any State or Federal Court, or arbitration proceedings located within the City of Chicago, State of Illinois."[11]

The Agreement also contains an effective date provision stating:

"This Agreement shall be effective upon the date first written above and shall remain in effect until terminated by either party upon seven (7) days written notice to the other; except that either party may terminate immediately without notice should the CFTC [("Commodity Futures Trading Commission")] or NFA cause the registration of the other to be revoked and/or suspended, or should either party violate any of the terms of the Agreement, become insolvent, bankrupt, or fail to meet any financial obligations due to the other within five (5) days after receipt of written demand, or for other good cause. The termination of this Agreement does not terminate, suspend or waive any obligations the AP owes to PFG pursuant to paragraphs 4, 5, 6, 8, 10, 12 and 13 above. All provisions of this Agreement relating to Customer margin, deficits, payments, set-off, confidentiality, guarantee and indemnification, shall survive the termination of this

---

[10]*Id.*

[11]*Id.*

3

1    Agreement."[12]

2          On March 24, 2008, Zaitzeff submitted a written letter of resignation.[13]  On March 26, 2008, his

3    counsel sent PFG a letter demanding payment of unpaid wages. [14]  Zaitzeff requested more than $77,000

4    in minimum wages, California overtime,  liquidated damages, and illegal deductions.[15]  PFG rejected

5    Zaitzeff's demand on April 15, 2008.[16]

6          **B.    Procedure**

7          Zaitzeff commenced an action against PFG and Slaga on May 2, 2008, asserting claims in his

8    individual capacity, as well as under the Private Attorneys General Act of 2004, California Labor Code

9    § 2698 et seq.,[17] for (1) failure to pay minimum wages in violation of the California Labor Code;

10   (2) failure to pay overtime compensation under California Industrial Welfare Commission Orders and

11   the California Labor Code; (3) failure to provide adequate meal periods under California Industrial

12   Welfare Commission Orders and the California Labor Code § 512; (4) failure to itemize wage

13   statements as required by Labor Code § 226; (5) waiting time penalties under Labor Code § 203; (6)

14   overtime pay and liquidated damages under 29 U.S.C. §§ 207 and 216; (7) failure to pay minimum

15   wages in violation of the Fair Labor Standards Act; (8) failure to indemnify employees under Labor

16   Code § 2802; (9) violation of California Business and Professions Code § 17200; (10) failure to provide

17   pay records; (11) civil penalties for overtime violations; (12) civil penalties for minimum wage

18   violations; (13) civil penalties for break violations; (13) civil penalties for Labor Code § 226(a)

19   violations; (15) civil penalties for failing to keep records; and (16) civil penalties for out-of-state

20

21         [12]*Id.*, Exh. 1, ¶ 19.  The paragraphs listed in the "effective date" provision relate, *inter alia*, to
22   confidentiality, guarantee, indemnification, and Zaitzeff's duty to advise PFG of disciplinary action
     taken against him by regulatory bodies.  (*Id.*, Exh. 1).

23
          [13]Zaitzeff Decl., ¶ 4.
24
          [14]Declaration of Michael Tracy ("Tracy Decl."), ¶ 2.
25
          [15]*Id.*, Exh. A.
26
          [16]*Id.*
27
          [17]Complaint, ¶¶ 10-11.
28

4

checks.[18]

On May 16, 2008, PFG filed a Statement of Claim against Zaitzeff in an arbitration before the NFA.[19]  The Statement of Claim seeks reimbursement for a deficit in an account on Zaitzeff's equity run and other damages, a ruling that Zaitzeff was an independent contractor and not an employee of PFG, and a ruling that he was not entitled to any offsets against the amount he owes PFG based upon the violations of federal and state law alleged in his complaint.[20]

On May 28, 2008, defendants filed a motion to dismiss under Rule 12(b)(3) for improper venue, citing the forum selection clause contained in the Agreement.  Alternatively, they seek an order transferring venue to the Northern District of Illinois.[21]

Zaitzeff argues that defendants' motion should be denied because, by its terms, the Agreement's forum selection clause applies only to contractual disputes, not statutory claims under the FLSA and California Labor Code.[22]  Zaitzeff also contends that he terminated the Agreement on March 24, 2008 when he resigned, and thus that the forum selection clause is no longer valid.[23]  Finally, Zaitzeff asserts

---

[18]*Id.*, ¶¶ 17-148.

[19]Def.'s Mot. at 2.

[20]*Id.*

[21]Defendants initially sought, in the alternative, an order compelling Zaitzeff to bring his claims against them in arbitration, asserting that he was required to arbitrate the dispute by NFA Member Arbitration Rules. (*Id.*).  PFG subsequently learned, however, that the NFA would not compel Zaitzeff to arbitrate its declaratory relief claims – i.e., the claims that are related to the present action. (Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss Complaint for Improper Venue or in the Alternative for a Transfer of Venue and Petition to Compel Arbitration ("Def.'s Reply") at 6).  PFG therefore no longer seeks this form of relief.  (*Id.*) ("Since filing the instant motion, PFG has learned the NFA will not compel Zaitzeff to arbitrate PFG's declaratory judgment claims.  While Zaitzeff is required to arbitrate PFG's claim against him for reimbursement for the account deficit, that issue is not presently before this Court").

[22]Plaintiff's Opposition to Motion to Dismiss Complaint For Improper Venue or In the Alternative For a Transfer of Venue and Petition to Compel Arbitration ("Pl.'s Opp.") at 5. *Id.* at 5.

[23]*Id.* at 1-2.

1    that enforcement of the forum selection clause would be unreasonable.[24]

2

3                              **II.  DISCUSSION**

4    **A.**      **Legal Standard Governing Motions To Dismiss Under Rule 12(b)(3)**

5        "A motion to dismiss for improper venue based on a forum selection clause is properly based

6    on Rule 12(b)(3)." *Priyanto v. M/S AMSTERDAM*, CV 07-03811 AHM AJWx, 2007 WL 4811854, *4

7    (C.D. Cal. Sept. 10, 2007) (citing *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996));

8    see also *Argueta*, 87 F.3d at 324 ("We conclude that we should treat Banco Mexicano's motion [to

9    enforce the forum selection clause] as a Rule 12(b)(3) motion to dismiss for improper venue").  In

10    deciding such a motion, "the pleadings need not be accepted as true, . . . and the court may consider facts

11    outside of the pleadings." *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004);

12    *Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998) ("As we are reviewing a Rule

13    12(b)(3) motion decision, we need not accept the pleadings as true"); *Argueta*, 87 F.3d at 324 ("Under

14    the Supreme Court's standard for resolving motions to dismiss based on a forum selection clause, the

15    pleadings are not accepted as true, as would be required under a Rule 12(b)(6) motion").  Nonetheless,

16    "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all

17    factual conflicts in favor of the non-moving party. . . ." *Murphy*, 362 F.3d at 1138.

18        "Federal law governs the validity of a forum selection clause." *Argueta*, 87 F.3d at 324 (citing

19    *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 50, 513 (9th Cir. 1988)).

20        "[F]orum selection clauses are prima facie valid and should not be set aside unless the

21        party challenging enforcement of such a provision can show it is '"unreasonable" under

22        the circumstances.' [*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)].  The

23        Supreme Court has construed this exception narrowly.  A forum selection clause is

24        unreasonable if (1) its incorporation into the contract was the result of fraud, undue

25        influence, or overweening bargaining power, *Carnival Cruise Lines* [*v. Shute*, 499 U.S.

26        585, 591 (1991)]; *Bremen*, 407 U.S. at 12-13; (2) the selected forum is so 'gravely

27   ———————————

28     [24]*Id.* at 6.

difficult and inconvenient' that the complaining party will 'for all practical purposes be deprived of its day in court,' *Bremen*, 407 U.S. at 18; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Id.* at 15. To establish the unreasonableness of a forum selection clause, Appellants have the 'heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court.'" *Argueta*, 87 F.3d at 325 (quoting *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984)).

It is not enough for the party opposing enforcement of the forum selection clause simply to raise factual issues; rather, "[t]he party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" *Murphy*, 349 F.3d at 1231 (quoting *Bremen*, 407 U.S. at 12).

## B.    Whether Plaintiff's Claims Relate to the Agreement with PFG

As noted, the forum selection clause states that " all actions, disputes, claims or proceedings, including but not limited to, any arbitration proceedings, *arising directly or indirectly in connection with, out of, or related to or from this Agreement, any other agreement between the AP and PFG, whether or not initiated by PFG, shall be adjudicated only in courts or other dispute resolution forums whose situs is within the City of Chicago, State of Illinois.*"[25] Zaitzeff contends that his complaint states only statutory claims for unpaid overtime and various other labor code violations, and that he does not allege that any agreement has been breached or that the claims arise out of an agreement.[26]

"If the applicability of a forum selection clause is unclear, Ninth Circuit courts consider whether 'the claims alleged in the complaint relate to the interpretation of the contract.'" *Hebe v. Seagrave Fire Apparatus, LLC*, CV 07-155 AS, 2007 WL 1541741, *3 (D. Or. May 18, 2007) (citing *Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F.Supp. 1427, 1433-34 (N.D. Cal. 1997)). In *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988), the parties had an

---

[25]Wing Decl., Exh. 1 (emphasis added).

[26]Pl.'s Opp. at 5.

1  exclusive dealership contract with a forum selection clause designating Florence, Italy as the forum for

2  the resolution of any controversy "regarding interpretation or fulfillment of the contract." *Id.* at 510.

3  Plaintiff argued that the forum selection clause did not apply to tort claims, and that the dispute did not

4  concern "interpretation" or "fulfillment" of the contract. *Id.* at 514.  The Ninth Circuit disagreed, noting

5  that "forum selection clauses can be equally applicable to contractual and tort causes of action." *Id.*

6  (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), cert.

7  denied, 464 U.S. 938 (1983), *Weidner Communications, Inc. v. Faisal*, 671 F.Supp. 531, 537 (N.D. Ill.

8  1987), and *Clinton v. Janger*, 583 F.Supp. 284, 287-88 (N.D. Ill. 1984)).

9  It stated that "[w]hether a forum selection clause applies to tort claims depends on whether

10  resolution of the claims relates to interpretation of the contract." *Id.* (citing *Weidner Communications*,

11  671 F.Supp. at 537, *Berrett v. Life Ins. Co.*, 623 F.Supp. 946, 948-49 (D. Utah 1985), and *Clinton*, 583

12  F.Supp. at 288).  Looking at the allegations in plaintiff's complaint, the court concluded that each of the

13  claims "relate[d] in some way to rights and duties enumerated in the exclusive dealership contract," and

14  that "[t]he claims [could not] be adjudicated without analyzing whether the parties were in compliance

15  with the contract."  Because "the tort causes of action alleged by Manetti-Farrow relate[d] to 'the central

16  conflict over the interpretation' of the contract," the court held, "they [were] within the scope of the

17  forum selection clause." *Id.* (footnote omitted).

18  Although *Manetti-Farrow* addressed the applicability of a forum selection clause to tort claims,

19  courts have used the same approach in evaluating whether such a clause applies to statutory claims.  In

20  *Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F.Supp. 1427 (N.D. Cal. 1997), for

21  instance, Graham, a computer programmer, executed a "Professional Services Agreement" with

22  defendant, which contained a forum selection clause requiring all disputes to be heard in New York.

23  *Id.* at 1429.  Plaintiff filed suit against defendant in California, alleging copyright infringement, unfair

24  competition and false advertising.  When defendant sought to enforce the forum selection clause,

25  plaintiff asserted that its complaint did not raise contractual issues related to the professional services

26  agreement, and that what was "truly at stake . . . [was] the vindication of its rights under the Copyright

27  Act, not the interpretation of a contract." *Id.* at 1431.

28

To determine whether the forum selection clause covered the copyright claims, the court looked to *Manetti-Farrow* and a Seventh Circuit decision adopting *Manetti-Farrow's* approach, *Omron Healthcare, Inc. v. Maclaren Exports, Ltd.*, 28 F.3d 600 (7th Cir. 1994). The court noted that in *Omron*, the Seventh Circuit

> "considered whether the plaintiff's trademark infringement claim was subject to a forum
> selection clause which provided that all disputes arising out of a distribution agreement
> would be litigated in the High Court of Justice in England. Omron argued that its suit
> arose out of trademark infringement, not out of contract, and was therefore not subject
> to the forum selection clause. The *Omron* court rejected that argument on the basis that
> 'all disputes the resolution of which arguably depend on the construction of an
> agreement "arise out of" that agreement' for purposes of a forum selection clause.
> *Omron*, 28 F.3d at 602. The court further found that resolution of the Omron-Maclaren
> dispute depended upon an understanding of the written distribution agreement between
> the parties and its implied terms, that Omron's claim of trademark infringement was
> subject to the forum selection clause, and that Omron's claims had to be litigated in
> England." *Id.* (citing *Omron*, 28 F.3d at 601, 604).

Applying the Seventh Circuit's reasoning, the *Graham Technology Solutions* court found that "[a]lthough the causes of action pleaded . . . by [plaintiff] [were] copyright infringement claims, [their] resolution . . . ultimately require[d] interpretation of the PSA." *Id.* at 1433. Plaintiff's complaint alleged, *inter alia*, that defendant had illegally made and distributed copies of a computer program it had developed, and had falsely represented that defendant developed and owned the program. *Id.* The court determined that there was "no question that [plaintiff's] claims relate to the rights and duties enumerated in the PSA," because, for example, the PSA assigned to defendant ownership of all copyrights to software developed in connection with the project on which plaintiff worked. *Id.* "The central issue in th[e] case," the court stated, was whether the capabilities unique to plaintiff's computer program were included within the project specifications provided by defendant to plaintiff, such that the program was developed by plaintiff under the terms of the PSA. *Id.* As a result, it enforced the contract's forum

selection clause. Cf. also *Hernandez v. Texas Capital Bank, N.A.*, CV 07-0726 W ODS, 2008 WL 342758, *2 (W.D. Mo. Feb. 5, 2008) ("Plaintiffs . . . contend that even if a valid forum selection clause exists, it is only applicable to Plaintiff Hernandez's breach of contract claim. Plaintiffs' position is not well taken. The forum selection clause applies not only to any dispute 'arising out of' the Agreement, but also to any dispute 'involving these parties.' Accordingly, any claim brought by any Plaintiff that signed an agreement containing this forum selection clause is bound by it. This includes the FLSA claims of all the Branch Manager Plaintiffs as well as the breach of contract claim brought by Branch Manager Plaintiff Hernandez" (footnote omitted)).

Defendants argue that Zaitzeff's claims require interpretation of the Agreement because whether Zaitzeff was an employee or an independent contractor will determine whether he is entitled to minimum wages and overtime under state and federal law.[27] The provisions of the California Labor Code concerning wage and hour requirements "apply to and include men, women and minors employed in any occupation, trade, or industry, whether compensation is measured by time, piece, or otherwise, but shall not include any individual employed as an outside salesman or any individual participating in a national service program carried out using assistance provided under Section 12571 of Title 42 of the United States Code." CAL. LAB. CODE § 1171. An independent contractor is not an "employee," and is therefore excluded from the application of the minimum wage law. See *Grubb & Ellis Co. v. Spengler*, 143 Cal.App.3d 890, 897 (1983).

"California courts have enumerated several factors to be used in determining whether a person who performs services for another is an employee or an independent contractor." *Cappa v. CrossTest, Inc.*, No. A11332, 2008 WL 821637, *5 (Cal. Ct. App. Mar. 28, 2008).[28] "The most important factor is 'the right to control the manner and means of accomplishing the result, that is, the details of the work.

---

[27]Def.'s Reply at 2-3.

[28]"Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

If the employer has the authority to exercise complete control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists.'" *Id.* (quoting *Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 220 Cal.App.3d 864, 873-74 (1990)); see also *Garces v. Cannon Pacific Services, LLC*, No. D044540, 2005 WL 2436350, *7 (Cal. Ct. App. Oct. 4, 2005) ("[I]n determining proof of independent contractor status, the traditional and key test of such status and the employment relationship is whether the principal 'has the right to control and discretion as to the manner of performance of the contract for services in that the result of the work and not the means by which it is accomplished is the primary factor bargained for'" (citations omitted)).[29]  While not conclusive of the nature of the economic relationship, "[a]n agreement between a purported employer and employee setting out the details of the relationship is a 'significant factor for consideration.'" *Cappa*, 2008 WL 821637 at *5 (citing *Tieberg v. Unemployment Ins.App. Bd.*, 2 Cal.3d 943, 951-52 (1970), and *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341, 358 (1989)); *Garces*, 2005 WL 2436350 at *7 ("Although relevant, even in the absence of fraud or mistake, the label placed on the relationship by the parties or the recitals in any contract or agreement of hire signed by the parties is not dispositive of the actual relationship and the party seeking to avoid a determination of employment usually has the burden of establishing an independent contractor relationship" (citations omitted)); *Grubb & Ellis Co.*, 143 Cal.App.3d at 898 (evidence that a company and salesperson entered into an agreement stating that the contract did not "constitute a hiring," and that the salesperson "shall be an independent contractor" supported a finding that the salesperson was not an employee of a brokerage company entitled to minimum wages).

---

[29]"Other tests secondary in importance to the right of control, include: '(a) whether or not the one performing service is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or workman supplies the instrumentalities, tools, and the place of work for the persons doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by time or by the job; (g) whether or not the work is a part of the regular business of the principal; [and] (h) whether or not the parties believe they are creating the relationship of employer-employee.'" *Garces*, 2005 WL 2436350 at *7 (citing *Isenberg v. California Employment Stabilization Commission*, 30 Cal.2d 34, 39 (1947), and *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341, 351 (1989)).

1    Similarly, under the FLSA, "[i]ndependent contractors do not have a cause of action under the

2    FLSA for exceeding maximum hour requirements or for required overtime payments." *Henderson v.*

3    *Hernandez*, CV 05-037 C, 2005 WL 473678, *1 (N.D. Tex. Mar. 1, 2005) (citing 29 U.S.C. § 207(a)).

4    "The Ninth Circuit has specified that whether an entity is an employer under the FLSA is a question of

5    law that must be determined by applying the economic reality test." *Singh v. 7-Eleven, Inc.*, C 05-04534

6    RMW, 2007 WL 715488, *3 (N.D. Cal. Mar. 8, 2007) (citing *Torres-Lopez v. May*, 111 F.3d 633, 638,

7    639 (9th Cir. 1997)).   "Under the economic reality test, a court must 'consider the totality of the

8    circumstances of the relationship, including whether the alleged employer has the power to hire and fire

9    the employees, supervises and controls employee work schedules or conditions of employment,

10    determines the rate and method of payment, and maintains employment records.'" *Id.* (quoting *Hale*

11    *v. State of Arizona*, 993 F.3d 1387, 1394 (9th Cir. 1993)). As with the California Labor Code, although

12    "the label parties use in contract documents do[es] not control whether overtime pay is required by the

13    FLSA," *Lemus v. Burnham Painting & Drywall Corp.*,CV 06-1158 RCJ PAL, 2007 WL 1875539, *4

14    (D. Nev. June 25, 2007) (citing *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir.

15    1979)), an independent contractor agreement may nonetheless be "relevant as evidence of the nature of

16    the economic relationship between" the parties. *Imars v. Contractors Manufacturing Services, Inc*., 165

17    F.3d 27, 1998 WL 598778 *6 (6th Cir. Aug. 24, 1998) (Unpub. Disp.).

18    The Agreement between Zaitzeff and PFG states that Zaitzeff "acknowledges that he has been

19    offered employment but has declined to be employed by PFG, choosing to be retained  by PFG on an

20    independent contractor basis.  [Zaitzeff] further acknowledges that he will receive a 1099 reflecting

21    income received from PFG and that [Zaitzeff] is responsible for all taxes associated such income,

22    including but not limited to unemployment, social security and self-employment taxes."[30]   The

23    Agreement further provides that Zaitzeff "shall be responsible for all costs and expenses related to [his]

24    business and personal activities, except for those expenses [which] PFG agrees in advance to assume

25    responsibility for.  [Zaitzeff] shall be responsible for any advertising, sales and travel expense[s]."[31]  It

26

27    [30]Wing Decl., Exh. 1.

28    [31]*Id.*

12

1    also states that Zaitzeff is not entitled to company benefits.[32]

2    While the Agreement will not be dispositive of Zaitzeff's status as an independent contractor or

3    employee, it will be relevant in determining his status; indeed, as respects his California Labor Code

4    claims, it will be a "'significant factor for consideration." *Cappa*, 2008 WL 821637 at *5 (citation

5    omitted). Therefore, it will be relevant in determining whether Zaitzeff is entitled to minimum wage

6    and overtime benefits. As a result, the court concludes that Zaitzeff's claims, while not directly alleging

7    a breach of the agreement, at a minimum arise "directly or indirectly in connection with, out of, or

8    related to or from" the Agreement.

9    This conclusion is supported by the expansive language of the forum selection clause, which

10   suggests that it was intended to apply broadly. Cf. *Doe v. Network Solutions, LLC*, C 07-05115 JSW,

11   2008 WL 191419, *5 (N.D. Cal. Jan. 22, 2008) ("[T]he forum selection clause applies to disputes

12   'under, arising out of, or related in any way to this Agreement,' which suggests that the forum selection

13   was intended to be applied broadly," citing *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d

14   727, 732 (9th Cir. 2006) ("arising out of or relating to" as used in an arbitration clause is to be

15   interpreted broadly)); *Siren, Inc. v. Firstline Sec., Inc.*, No. 06-1109 PHX RCB, 2006 WL 3257440, *5

16   (D. Ariz. May 17, 2006) ("A forum selection clause is not axiomatically limited in scope to contract

17   claims, particularly in this case where the 'relating to' language generally lends to a broader range of

18   covered disputes," citing *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463-64 (9th

19   Cir. 1983) (discussing how the omission of "relating to" language in an arbitration clause results in a

20   narrower scope of covered disputes)).

21   Moreover, a claim may fall within the scope of a forum selection clause even if it is related only

22   to a defense such as defendants raise here. See *John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119

23   F.3d 1070, 1076 (3d Cir. 1997) ("Wyeth argues that a forum selection clause cannot be implicated as

24   a result of a 'defense' based on a contract that contains a forum selection clause. . . . Once again,

25   however, Wyeth errs by premising its argument on what it alleges to be general principles regarding the

26   application of forum selection clauses, rather than focusing on the language of the particular clause at

27   _____

28   [32]*Id.*

13

1    issue. The answer to the question whether a 'defense' based on a contract that contains a forum

2    selection clause implicates that clause depends on the language of the clause. Here, as we have noted,

3    the clause is broadly worded, extending to any dispute 'arising . . . in relation to.' This language easily

4    encompasses a dispute in which the 1990 Agreement is raised as a defense"); *Broadcom Corp. v.*

5    *Qualcomm Inc.*, CV 05-468 JVS MLGx, 2005 WL 5925584, *3 (C.D. Cal. Oct. 19, 2005) ("Despite

6    Broadcom's assertions that the Bluetooth RF Agreement deals only with Qualcomm's grant of rights

7    to Broadcom, the Court holds that under *Mannetti-Farrow* and *Graham*, the present dispute arises under,

8    or relates to, the Bluetooth RF Agreement. The Court finds that the resolution of the present issues

9    depends, at least in part, on the parties' obligations under the Bluetooth RF Agreement, and specifically

10   that Qualcomm's estoppel defenses bring the instant action within the ambit of the forum selection

11   clause"); *Ford Motor Co. v. Todecheene*, 221 F.Supp.2d 1070, 1083 (D. Ariz. 2002) (declining to

12   enforce a forum selection clause because "[n]o part of the agreement is relevant to the Todecheenes'

13   *prima facie* case or to Ford's defenses"). For these reasons, the court finds that Zaitzeff's FLSA and

14   California Labor Code claims relate to the Agreement, and that the forum selection clause should

15   apply.[33]

16   **C.    Whether the Forum Selection Clause Survives the Agreement's Termination**

17   As noted, the "Effective Date" provision of the Agreement states:

18   "This Agreement shall be effective upon the date first written above and shall remain in

19

20   [33]But see *Perry v. National City Mortg., Inc.*, CV 05-891 DRH, 2006 WL 2375015, *4 (S.D. Ill.
21   Aug. 15, 2006) ("Even assuming, *arguendo*, that the two Agreements could be construed as a single
     contract, the Court also finds that the forum selection clause would not apply to Plaintiff's FLSA claim.
22   Plaintiff is not attempting to enforce any of the terms of either his Compensation Agreement or the
     Non-Disclosure Agreement. Plaintiff is attempting to show that under the FLSA, as a Loan
23   Officer/Originator, he and other similarly situated employees of Defendant should be properly classified
24   as 'Non-Exempt' employees, entitled to overtime pay. While the scope of Plaintiff's duties as an
     employee of Defendant and details as to how he was to be compensated certainly appear germane to the
25   case, it is outside the scope of Plaintiff's actual claim"); *Saunders v. Ace Mortg. Funding, Inc.*, No.
     05-1437 (DWF/SRN), 2005 WL 3054594, *3 (D. Minn. Nov. 14, 2005) ("[T]he Court notes that the
26   forum-selection clause does not cover Plaintiffs' FLSA claims. The Plaintiffs' FLSA claims do not
     depend on the existence of the employment contract, nor does the resolution of Plaintiffs' FLSA claims
27   relate to the interpretation of the employment contract. Thus, the Court finds that the forum-selection
28   clause is inapplicable to this dispute").

1    effect until terminated by either party upon seven (7) days written notice to the other;

2    except that either party may terminate immediately without notice should the CFTC or

3    NFA cause the registration of the other to be revoked and/or suspended, or should either

4    party violate any of the terms of the Agreement, become insolvent, bankrupt, or fail to

5    meet any financial obligations due to the other within five (5) days after receipt of

6    written demand, or for other good cause.  The termination of this Agreement does not

7    terminate, suspend or waive any obligations the AP owes to PFG pursuant to paragraphs

8    4, 5, 6, 8, 10, 12 and 13 above.  All provisions of this Agreement relating to Customer

9    margin, deficits, payments, set-off, confidentiality, guarantee and indemnification, shall

10    survive the termination of this Agreement."[34]

11  Zaitzeff argues that the Agreement terminated when he resigned from PFG on March 24, 2008, and

12  when PFG failed to pay him the money demanded in a March 26, 2008 letter.[35]  He further contends that,

13  even if his resignation was insufficient to terminate the Agreement, his attorney sent a letter that

14  explicitly terminating the Agreement on May 29, 2008.[36]  Zaitzeff asserts that the forum selection clause

15  does not survive the Agreement's termination, as it is not one of the clauses expressly mentioned in the

16  effective date provision.[37]

17         The court disagrees with Zaitzeff's contention that the forum selection clause is no longer valid

18  following the contract's termination.  Contrary to his assertions, "unless the contract explicitly indicates

19  otherwise, a forum selection clause survives termination of the contract."  *Claber, S.p.A. v. Lowe's*

20  *Companies, Inc.*,C 98-4760, 1999 WL 166974, *3 (N.D. Ill. Mar. 23, 1999) (citing *Advent Elec., Inc.*

21  *v. Samsung Semiconductor, Inc.*, 709 F.Supp. 843, 846 (N.D. Ill. 1989)); see also *Weingard v. Telepathy,*

22  *Inc.*, No. 05 Civ.2024(MBM), 2005 WL 2990645, *3 (S.D.N.Y. Nov. 7, 2005) ("[C]ontrary to

23

24         [34]Wing Decl., Exh. 1, ¶ 19.

25         [35]Pl.'s Opp. at 1-3.

26         [36]*Id.* at 3.

27         [37]*Id.* at 2-3.

28

Weingrad's assertions, parties to a contract are bound by that contract's forum selection clause even after the contract has expired, where, as here, the plaintiff's claims involve rights arising out of the contract and the entire business relationship between the parties stems from that contract," citing *AGR Fin., LLC v. Ready Staffing, Inc*., 99 F.Supp.2d 399, 402 (S.D.N.Y. 2000) (holding that a forum selection clause in an expired agreement governed claims arising out of that contract), and *Young Women's Christian Ass'n of the United States of Am. Nat'l Bd. v. HMC Entm't, Inc*., Civ 91-7943, 1992 WL 279361, *4 (S.D.N.Y. Sept. 25, 1992) (holding that a non-contractual claim was subject to a forum selection clause in an expired contract between plaintiff and defendant, because plaintiff's claims for unfair competition, trademark infringement, misappropriation and implied contract involved rights arising out of the contract and plaintiff and defendant would not have had dealings but for the contract between the two parties)); *Allied Sound, Inc. v. Dukane Corp*., 934 F.Supp. 272, 275 (M.D. Tenn. 1996) ("Contrary to the statements of the plaintiff, a choice of forum clause does not necessarily expire upon termination of the agreement from which it derives. The district court in *Advent Elec*.[, 709 F.Supp. at 846,] found that the choice of forum clause survived the termination of the agreement based on the broad language of the clause. That court noted that the termination of a contract does not void a choice of forum clause unless the language of the contract expressly or implicitly indicates such a result. The Court fails to find any indication, express or implicit, that the parties intended the choice of forum clause to become invalid upon termination of the agreement" (citations omitted)).

Although the "Effective Date" provision does not expressly state that the forum selection clause continues in force following termination of the Agreement, there is no indication – either express or implied – that the clause is intended to terminate. Zaitzeff argues that the contract specifically identifies those exact paragraphs that are to survive, and the forum selection clause is not among them. The provision does not indicate, however, that it is an exhaustive list of provisions surviving termination. It does not identify, for example, PFG's obligation to compensate Zaitzeff for his services on a commission basis, although the company's responsibility to pay commissions for services rendered prior to resignation would undoubtedly continue. Rather, the paragraphs listed relate solely to duties Zaitzeff

owed to PFG, e.g., the duty of confidentiality and duty not to compete.[38]  The court therefore determines that the forum selection clause survives the Agreement's termination.

### D.    Whether the Forum Selection Clause Should Be Enforced

Zaitzeff argues that it would be unreasonable to enforce the Agreement's forum selection clause because it was the product of unequal bargaining power, and he would be denied his day in court due to financial hardship.[39]  As noted, "[a] forum selection clause is unreasonable if (1) its incorporation into

_____

[38] See Wing Decl., Exh. 1.

[39] *Id.* at 6-8. Citing *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1293 (9th Cir. 2006) (en banc), Zaitzeff argues that the clause is both procedurally and substantively unconscionable.  *Nagrampa* involved the enforceability of an arbitration clause in a written franchise agreement.  Plaintiffs argued that the arbitration clause was unconscionable under California law.  *Id.* at 1264-65.  Under § 2 of the Federal Arbitration Act ("FAA"), "arbitration agreements are generally valid and enforceable, 'save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Id.* (quoting 9 U.S.C. § 2).  "'[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].'"  *Smith v. Paul Green School of Rock Music Franchising, LLC*, 2008 WL 2037721, *2 (C.D. Cal. May 5, 2008) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  "A federal court, while limited to reviewing the validity of the arbitration clause itself, may consider the circumstances that surround the making of an agreement when a contract defense so requires."  *Id.* (citing *Nagrampa*, 469 F.3d at1264).

Although an arbitration clause is a specific type of forum selection clause, see *Manetti-Farrow*, 858 F.2d at 514 n. 4, the court declines to look to state law to determine if the Agreement's forum selection provision is enforceable.  The Supreme Court has set forth the test under federal law that should be used to determine whether a forum selection clause is unenforceable.  See *Bremen*, 407 U.S. at 12-18.  Zaitzeff's arguments regarding unequal bargaining power and financial hardship and inconvenience are directly relevant to this test.  Cf. *Argueta*, 87 F.3d at 325 (citations omitted) ("A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so 'gravely difficult and inconvenient' that the complaining party will 'for all practical purposes be deprived of its day in court,'; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought").

The parties have a subsidiary dispute regarding which state's contract law applies. Zaitzeff relies on California law, which requires the court to "analyze contract provisions for both procedural and substantive unconscionability."  *Nagrampa*, 469 F.3d at 1280 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000)).  "In California, the 'prevailing view' is that procedural unconscionability and substantive unconscionability need not both be present to the same degree: 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves.'"  *Id.*(quoting *Armendariz*, 24 Cal.4th at 114).  Defendants, by contrast, argue that Illinois law applies, as the Agreement states that it "shall be governed by the laws of the State

the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so 'gravely difficult and inconvenient' that the complaining party will 'for all practical purposes be deprived of its day in court,'; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought." *Argueta*, 87 F.3d at 325 (citations omitted).

### 1.    Whether the Forum Selection Clause Was the Result of Fraud, Undue Influence, or Overweening Bargaining Power

Zaitzeff argues that enforcement would be unjust because the parties' bargaining power was unequal.[40] He maintains that the Agreement was presented to him on a take-it-or-leave it basis, and he was told that executing it was a required condition of employment.[41]

"The Ninth Circuit has made it clear that neither power differential between the parties or the non-negotiability of a contract are sufficient to invalidate a forum selection clause." *E. & J. Gallo Winery v. Andina Licores S.A.*, 440 F.Supp.2d 1115, 1126 (E.D. Cal. 2006) (citing *Murphy*, 362 F.3d at 1141). In *Murphy v. Schneider National, Inc.*, 362 F.3d 1133 (9th Cir. 2004), plaintiff was a long haul truck driver who lived in Oregon and was required under a forum selection clause to litigate a dispute against his employer in Wisconsin. *Id.* at 1136. Like Zaitzeff, plaintiff cited *Bremen* for the proposition that the forum selection clause in his employment contract should not be enforced because the terms had not been negotiated and were non-negotiable. *Id.* at 1141. Plaintiff asserted "[h]e 'was told that if [he] wanted to work for Schneider, [he] would be required to sign the contract that [he] received as it was written by Schneider.'" *Id.* Plaintiff "also noted that he ha[d] only completed formal education through the tenth grade . . . [and] that he signed the contract to keep his job with Schneider." *Id.* The district court, which upheld the forum selection clause, disregarded the power differential between plaintiff and

---

of Illinois." Under Illinois law, "[u]nconscionability can be either 'procedural' or 'substantive' or a combination of both." *Razor v. Hyundai Motor America*, 222 Ill.2d 75, 99 (2006) (citing *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill.App.3d 980, 989 (1980)). Although California and Illinois law regarding unconscionability are largely similar, the court declines to address this conflict of laws issue as it has determined that federal law applies.

[40]Pl.'s Opp. at 6. Zaitzeff does not appear to argue that the forum selection clause was the result of fraud or undue influence.

[41]*Id.*

1   Schneider, citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991), "for the proposition

2   that '[u]nequal bargaining power between the parties does not make a forum selection clause

3   unenforceable.'" *Id.*[42]

4        Accepting all of plaintiff's assertions of fact as true, and drawing all reasonable inferences in his

5   favor, the Ninth Circuit noted that there was "no allegation of fraud of any kind or degree[:] [and that

6   the matter involved] typical business contractual relations." *Id.* As respects plaintiff's allegation of

7   "overreaching," another potential basis for finding the clause unreasonable, the court concluded that

8   plaintiff had

9        "alleged insufficient facts to evade the consequences of his forum selection choice.

10        Under *Carnival Cruise*, a differential in power or education on a non-negotiated contract

11        will not vitiate a forum selection clause. Moreover, there is no evidence of overreaching

12        beyond Murphy's assertion: Murphy signed a new contract with a similar forum

13        selection clause each year from 1992 to at least 1996. If, as Murphy asserts, Schneider

14        told him that the contract was not negotiable, Murphy had the opportunity to seek work

15        with other employers if he opposed the forum selection clause. Murphy's assertions

16        reduce to a claim of power differential and non-negotiability. This evidence, even

17        accepted as true for purposes of the Rule 12(b)(3) motion, is not enough to overcome the

18        strong presumption in favor of enforcing forum selection clauses. See *Spradlin [v. Lear

19        Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 868 (9th Cir. 1991)]. To decline enforcement

20        of a forum selection [clause] merely on the showing of non-negotiability and power

21        difference made by Murphy would disrupt the settled expectations of the parties here and

22        would threaten the ability of employers to require that disputes with their employees

23        normally be settled in their neighborhood, absent some other exigency. We affirm the

24        district court on this issue because Murphy's factual assertions, taken for our purposes

25        to be true, are not enough to meet the first *Bremen* exception." *Id.*

26

27   [42]The Ninth Circuit confirmed this reading, noting that "*Shute* rejected the idea that enforcing
     a forum selection clause in the respondent's cruise ticket is unreasonable merely because the commercial
28   cruise ticket was not negotiated." *Murphy*, 362 F.3d at 1141 (citing *Shute*, 499 U.S. at 593).

Zaitzeff has not alleged that he did not understand the terms of the Agreement.  It is unlikely he could make such an argument, in fact, as the Agreement indicates that he was registered with the National Futures Association and was going to be responsible for soliciting accounts for the purchase and sale of futures; this demonstrates that Zaitzeff has a minimum level of business sophistication.  Moreover, as the court in *Murphy* notes, if Zaitzeff opposed the forum selection clause, he could have sought work with other futures merchants.  Merely alleging that the Agreement was non-negotiable is insufficient under *Bremen* and *Murphy* to evade enforcement of the forum selection clause.[43]

---

[43]Cf. also *Sapp v. K-1 Corp.*, C 06-1791 JCC, 2007 WL 101167, *4 (W.D. Wash. Jan. 10, 2007) ("[T]he forum-selection clause in this case should be held reasonable at trial even if it was never openly negotiated between the parties. . . . [U]nlike the parties in *Shute* and *Murphy*, it seems that Plaintiff both had the power and business skills to negotiate a known and unambiguous forum-selection clause but simply chose not to do so. After all, it was Plaintiff – a professional athlete and former NFL player who likely had some experience in negotiating similar contracts – and not Defendants who asked that the parties create a written agreement in the first place.  Presumably he did so because he understood the significance of the written document.  He also admits that before signing the agreement he may have 'glanced at' the specific provision of the contract (included in both the Fighting Agreement and the Exclusive Management Agreement) which unambiguously states on the signature page that 'any disputes' arising under the agreements were governed by Japanese law and would have to be litigated in a Tokyo district court.  Thus, even though the choice-of-forum provision may not have been the subject of back-and-forth discussion, it likely was a term in the contract about which the parties simply chose to agree"); *E. & J. Gallo Winery*, 440 F.Supp.2d at 1126 ("[T]he court found in the June 27 order that the fact the distributorship Agreement was a form-type pre-printed document that was presented to Andina on a take-it-or-leave-it basis does not render the Agreement invalid for overreaching or as an 'adhesion contract.'  Likewise, it does not make a difference that Gallo is large corporation, and Andina is relatively smaller. The Ninth Circuit has made it clear that neither power differential between the parties or the non-negotiability of a contract are sufficient to invalidate a forum selection clause," citing *Murphy*, 362 F.3d at 1141); *Singh v. Arrow Truck Sales, Inc.*, CV 05-2564 GEB KJM, 2006 WL 657356, *2 (E.D. Cal. Mar. 15, 2006) ("Plaintiffs argue the forum selection clause is unreasonable because Plaintiffs did not understand the effect of the forum selection clause since they 'have a very limited understanding of the English language and [ ] legal terminology' and 'are minority truck owners who were coerced' by a 'huge organization.' This argument is not supported with any evidence.  Such 'general and conclusory allegations' do not show that enforcing the forum selection clause would be unreasonable," citing *Sarmiento v. BMG Entm't*, 326 F.Supp.2d 1108, 1112 (C.D. Cal. 2003) (party's broad, conclusory allegations of undue influence and inability to understand the agreement were insufficient to find that enforcement of forum selection was unreasonable)); *Best Western Intern., Inc. v. Brice Hotel, Inc.*, Civ 05-0889 PHX MHM, 2006 WL 213993, *3 (D. Ariz. Jan. 25, 2006) ("Defendants do not appear to be asserting fraud or that for all practical purposes they will be deprived of their day in court as a result of the selected forum.  Defendants appear to be asserting overreaching by claiming that they were powerless to bargain.  However, a forum selection clause is not unconscionable despite the fact that the clause may now be disadvantageous to Defendants, it was presented to them on a take it or leave it basis or it is a form contract.  See *Fireman's Fund Ins. Co. v.*

## 2.    Whether Zaitzeff Will Be Denied His Day in Court

Zaitzeff next asserts that because PFG failed to pay him minimum wage for the hours he worked, his "current financial status is very poor."[44]  As evidence of this, Zaitzeff proffers tax documents from PFG, showing that he was paid $4,265.95 in nonemployee compensation in 2006, and $26,119.18 in 2007.[45]  Zaitzeff contends that the 2007 form reflects his only income for the entire year,[46] and argues that it would be "unworkable" for him to prosecute this litigation in Illinois because he would suffer "extreme financial hardship" if required to be present at any proceedings or to call witnesses in Illinois.[47]

"The cost of litigation or the fact that a foreign forum poses inconvenience does not prevent enforcement of a forum-selection clause."  *SeeComm Network Services Corp. v. Colt Telecommunications*, C 04-1283 MEJ, 2004 WL 1960174, *3 (N.D. Cal. Sept. 3, 2004) (citing *Fireman's Fund Insurance Company v. M.V. DSR Atlantic*, 131 F.3d 1336, 1339 (9th Cir. 1997)).  "Where inconvenience of the forum was foreseeable at the time of contracting, then 'the party seeking to escape his contract' must show 'that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Id.* (quoting *Bremen*, 407 U.S. at 18).

Because the court must draw all reasonable inferences in favor of Zaitzeff and resolve all factual conflicts in his favor as well, see *Murphy*, 362 F.3d at 1138, the court finds that Zaitzeff will likely suffer financial hardship if forced to travel personally to and call witnesses at proceedings in Illinois. The court is unpersuaded, however, that such financial difficulties are so insurmountable that they will

---

*M.V. DSR Atlantic*, 131 F.3d 1336, 1338 (9th Cir. 1997); and *Stamm v. Barclays Bank of New York*, 960 F.Supp. 724, 733 (S.D.N.Y. 1997).  Any inconvenience a party 'would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting.' *Bremen*, 407 U.S. at 17-18.  Defendants have not satisfied their burden of demonstrating that enforcement of the forum-selection clause is unreasonable").

[44]Zaitzeff Decl., ¶ 10.

[45]Tracy Decl., Exh. C.

[46]Pl.'s Opp. at 8.

[47]Zaitzeff Decl., ¶¶ 11-12.

necessarily deprive Zaitzeff of his "day in court," "within the traditional meaning of the quoted phrase." See *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 11 (2d Cir. 1995) (citing *Olsen v. Muskegon Piston Ring Co.*, 117 F.2d 163, 165 (6th Cir. 1941) ("[T]he right to a day in court means not the actual presentation of the case, but the right to be duly cited to appear and to be afforded an opportunity to be heard"), *Galpin v. Page*, 85 U.S. (18 Wall.) 350, 368-69 (1873), and *Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 271 (2d Cir. 1977)). "A plaintiff may have his 'day in court' without ever setting foot in a courtroom." *Id.* (citing *Gray v. Great Am. Recreation Ass'n*, 970 F.2d 1081, 1082 (2d Cir. 1992)).

The court sees no reason why Zaitzeff would be unable to appear or to call witnesses telephonically or via video conference or video deposition in Illinois. Cf. *Feldman v. Google, Inc*., 513 F.Supp.2d 229, 247 (E.D. Pa. 2007) ("Plaintiff's arguments regarding additional expense are not sufficient to show he would be deprived of his day in court. Furthermore, Plaintiff or any of the attorneys he employs in his law firm, such as those who have appeared on his behalf in this matter, may apply for admission *pro hac vice* to represent Plaintiff in any litigation in California, thus relieving Plaintiff of hiring a lawyer in California. Although the court is sympathetic to Plaintiff's health concerns, the restriction on his travel does not have the effect of depriving him of his day in court. As Defendant has proposed, accommodations can be made, such as arranging for his continued representation by attorneys in his firm in California court, possible telephonic or video appearances, and, where possible, the scheduling of depositions to occur near Plaintiff's home"); *Pratt v. Silversea Cruises, Ltd., Inc*., C 05-0693 SI, 2005 WL 1656891, *4 (N.D. Cal. July 13, 2005) ("[T]he availability of electronic filing and video and teleconferencing technology limits the need for travel"); *Norman Sec. Systems, Inc. v. Monitor Dynamics, Inc.*, 740 F.Supp. 1364, 1369 (N.D. Ill. 1990) ("[T]he mere loss of live testimony does not ordinarily constitute such 'serious' inconvenience as would warrant setting aside a freely bargained for forum selection clause. See *Walker v. Carnival Cruise Lines, Inc*., No. 87 C 115 (N.D. Ill. Dec. 12, 1986). Although the testimony may not be as effective, the testimony of customers can be presented through depositions, perhaps even video depositions").[48] Given the technological

---

[48]In *Walker v. Carnival Cruise Lines*, 107 F.Supp.2d 1135 (N.D. Cal. 2000), the court noted that numerous courts have found that "physical and financial hardships are simply of no consequence to [the] fundamental fairness inquiry" that surrounds review of the enforceability of a forum selection clause.

1  advances that allow parties to participate long-distance in court proceedings, the court is unable to

2  conclude that Zaitzeff has met his "'heavy burden of proof' [to] 'clearly show that enforcement [of the

3  forum selection clause] would be unreasonable and unjust.'" *Murphy*, 349 F.3d at 1231 (quoting

4  *Bremen*, 407 U.S. at 12). Accordingly, the court finds that enforcement of the clause requiring that the

5  dispute be litigated in Illinois is not unreasonable.[49]

6  ### E.    Transfer of the Action

7          Having concluded that the forum selection clause in the Agreement is valid, enforceable, and

8  applicable to the claims asserted in this action, the court next considers whether the case should be

9  dismissed or transferred. Under 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a

10  case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice,

11  transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

12  Defendants argue that the action should be dismissed, or in the alternative, transferred to the Northern

13

14

15  *Id.* at 1142 (citing *Bense v. Interstate Battery Sys. of Am., Inc*., 683 F.2d 718, 722 (2d Cir. 1982)

16  (rejecting plaintiff's claims that the inconvenience and expense associated with traveling from Vermont
    to Texas would effectively deny him his day in court); *Melnik v. Cunard*, 875 F.Supp. 103, 108

17  (N.D.N.Y. 1994) (finding unpersuasive plaintiff's claim that the transfer of a personal injury action
    would pose a financial and emotional hardship for her because she was the single mother of a disabled

18  son); *Cooper v. Carnival Cruise Lines, Inc.*, Civ 91-5930, 1992 WL 137012, *2 (S.D.N.Y. June 12,
    1992) (case transferred from the Southern District of New York to the Southern District of Florida

19  despite plaintiff's claims of "various physical and financial hardships"); *Weiss v. Columbia Pictures*

20  *Television, Inc*., 801 F.Supp. 1276, 1279 (S.D.N.Y. 1992) ("[m]ere inconvenience and expense of
    traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum");

21  *Talatala v. Nippon Yusen Kaisha, Corp*., 974 F.Supp. 1321, 1325 (D. Haw. 1997) (finding unpersuasive
    plaintiff's claims that his company could not afford to finance litigation or find and retain counsel in

22  Japan and enforcing an exclusive forum selection clause)). The *Walker* court distinguished these cases,

23  however, in part on the grounds that "not one of the plaintiffs in the cases . . . faced the degree,
    combination, or cumulative effect of severe physical *and* economic disabilities" as the plaintiffs in that

24  case. *Id.* Zaitzeff has not demonstrated that he faces difficulties other than the financial burden of
    traveling to Illinois. This is insufficient to meet his "heavy burden," as "*Murphy* and the weight of

25  persuasive authority from this district and other jurisdictions suggest that neither severe physical

26  limitation nor economic hardship alone is generally enough." *Pratt*, 2005 WL 1656891 at *3.

27          [49]Zaitzeff does not appear to argue that the third *Bremen* exception applies – i.e., that
    enforcement of the clause would contravene a strong public policy of the forum in which the suit is

28  brought. *Bremen*, 407 U.S. at 15.

District of Illinois.[50]

The court is of the view that transfer "is the better choice. Dismissing the case would require Plaintiff to start over, which arguably only wastes time, and, in the Court's opinion, would be unfairly harsh. Transferring the case will preserve its progression thus far (which admittedly is not far, but is at least past filing and service)." See *Oldlaw Corp. v. Allen*, No. 07-1070, 2007 WL 2772697, *6 (C.D. Ill. Sept. 24, 2007). Because Zaitzeff's complaint states claims under federal law, it could have been properly brought in federal court in Illinois.[51] Accordingly, the court denies defendants' motion to dismiss under Rule 12(b)(3), but grants their motion for transfer of venue.

### III. CONCLUSION

For the foregoing reasons, the court denies defendants' motion to dismiss for improper venue. The court, however, grants defendants' alternative motion to transfer venue to the Northern District of Illinois and directs the clerk to transfer the action forthwith.

DATED: June 23, 2008

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[50]Def.'s Reply at 6.

[51]Although Zaitzeff also pleads claims under California law, a district court in the Northern District of Illinois will be able competently and fairly to apply the California Labor Code. Cf., e.g, *Walker v. Bankers Life & Cas. Co.*, C 06-6906, 2007 WL 2903180, *1 (N.D. Ill. Oct. 1, 2007) (granting a motion for class certification based on claims for violation of California Labor Code § 2802, California Civil Code §§ 3336 and 3294, California Unemployment Insurance Code Sections §§ 1112(a), 1112.5 and 1113, and California Business and Professions Code §§ 17200, et seq.).



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN  DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN  DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**SHERRI R. CARTER**
District Court Executive and
Clerk of Court

**To:**     Clerk, United States District Court

_____ District of _____

_____

_____

**Re:**   Transfer of our Civil Case No. _____

Case Title: _____

Dear Sir/Madam:

**An order having been made transferring the above-numbered case to your district, we are transmitting herewith our file:**

☐   Original case file documents are enclosed in paper format.
☐   Electronic Documents are accessible through Pacer.
☐   Other: _____
_____

Very truly yours,

Clerk, U.S. District Court

Date: _____          By _____
                                                        Deputy Clerk

*cc:*   *All counsel of record*

## TO BE COMPLETED BY RECEIVING DISTRICT

**Please acknowledge receipt via e-mail to appropriate address listed below and provide the case number assigned in your district:**

☐   CivilIntakecourtdocs-LA@cacd.uscourts.gov     (Los Angeles Office)
☐   CivilIntakecourtdocs-RS@cacd.uscourts.gov     (Riverside Office)
☐   CivilIntakecourtdocs-SA@cacd.uscourts.gov     (Santa Ana Office)

Case Number: _____

Clerk, U.S. District Court

Date: _____          By _____
                                                        Deputy Clerk