# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID ZAITZEFF, an individual on behalf of himself and on behalf of the State of California Labor and Workforce Development Agency as a Private Attorney General, <br><br> Plaintiff, <br><br> v. <br><br> PEREGRINE FINANCIAL GROUP, INC., an Iowa corporation; JOSEPH PETER SLAGA, an individual; and DOES 1 through 10, <br><br> Defendants. | No. 08 C 4053 <br><br> Honorable Charles R. Norgle |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court are Defendants Peregrine Financial Group, Inc. and Joseph Peter Slaga's (collectively "Defendants") motion for summary judgment and motion to strike Plaintiff's amended statement of contested material facts and Plaintiff David Zaitzeff's motion to strike affidavits attached to Defendants' motion for summary judgment. For the following reasons, the motions are all denied.

## I. BACKGROUND

### A. Facts[1]

#### 1. The Associated Person Agreement

On March 30, 2006, Plaintiff David Zaitzeff ("Zaitzeff") and Defendant Peregrine Financial Group, Inc. ("Peregrine"), a futures commission merchant ("FCM") as defined by the

---

[1] Unless otherwise attributed, the Court takes all facts presented in this Opinion from the parties' Local Rule 56.1(a)(3) and 56.1(b)(3) Statements and Responses and notes the disputed facts within.

Commodity Exchange Act, 7 U.S.C. § 1, et seq., entered into a written "Associated Person Agreement" (the "Agreement"). Pursuant to the Agreement, Zaitzeff agreed to perform the duties required of an "associated person" ("Associated Person") for Peregrine. An Associated Person is an individual who "solicits commodity accounts and/or solicits and accepts (other than in a clerical capacity) orders for the purchase or sale of regulated commodity futures contracts or the participation in a commodity pool." Defs.' L.R. 56.1(a)(3) St. ¶ 12.

Under the Agreement, Peregrine paid Zaitzeff primarily on a commission basis, but Zaitzeff was allowed to set his own commission rates for his customers. Other terms of the Agreement included a six-month post-termination non-compete clause, see Agreement ¶ 13, and a confidentiality provision concerning Peregrine's proprietary information. Id. ¶ 4. In the Agreement Zaitzeff acknowledged "that he has been offered employment but has declined to be employed by [Peregrine], choosing to be retained by [Peregrine] on an independent contractor basis." Agreement, Ex. A ¶ 4. The Agreement was to "remain in effect until terminated by either party upon seven (7) days written notice to the other . . . ." Agreement ¶ 19. After Zaitzeff signed the Agreement, he received a copy of Peregrine's compliance manual but did not receive Peregrine's employee handbook.

### 2. Zaitzeff's Work Environment

From March 30, 2006 until Zaitzeff's resignation on March 2, 2008, Zaitzeff performed his Associated Person functions at Peregrine's Camarillo, California office (the "Camarillo Office"). Zaitzeff was one of five Associated Persons in the Camarillo Office. Peregrine classified three of the Associated Persons as independent contractors; the other two Associated Persons were classified as employees. At all times relevant to this lawsuit Defendant Joseph Peter Slaga ("Slaga") was the branch manager at the Camarillo Office. Slaga was responsible for

supervising the workers in the Camarillo Office to ensure that they complied with the Commodities Exchange Act, Commodities and Futures Trading Commission ("CFTC") rules and National Futures Association ("NFA") rules and regulations.

### a. Zaitzeff's Account of his Peregrine Work Experience

The parties dispute the extent to which Peregrine and Slaga controlled Zaitzeff's daily work activities, as well as the type of resources Peregrine made available to Zaitzeff during his time at the Camarillo Office. Zaitzeff contends that Slaga possessed the power to fire Zaitzeff, modify his compensation and, on one occasion, forced Zaitzeff to change his computer screen saver. According to Zaitzeff, Peregrine instructed him to call sales leads purchased by Peregrine and Slaga directed him how many times to let the phone ring before answering it. Zaitzeff also asserts that his minimum hours of work were from 5:30 a.m. to 1:15 p.m. With respect to expenses, Zaitzeff states in his declaration that Peregrine paid his way to a Peregrine meeting in Scottsdale, Arizona in January 2007 and covered his lodging expenses while he stayed in Scottsdale. Zaitzeff further avers that a Peregrine administrative assistant sometimes performed clerical work for him and that Zaitzeff did not have to pay for those services.

### b. Defendants' Account of Zaitzeff's Peregrine Work Experience

Defendants, not surprisingly, present a contrasting account of Zaitzeff's Peregrine work experience. According to Defendants, Slaga had no authority to discipline Zaitzeff and Zaitzeff could not use the services of Peregrine's administrative assistants or trading assistants unless he hired and paid those individuals. Defendants also claim that there is no record of any minimum work hour requirements for Zaitzeff. In addition, Defendants note that on February 17, 2009, Zaitzeff filed his 2007 federal income tax return, listing his occupation as a futures broker for a

sole proprietorship. That same day, Zaitzeff filed his federal return for employment tax on his earnings from the sole proprietorship.[2]

Peregrine does acknowledge that it paid for Zaitzeff's business cards and provided him office space, the use of phones and computer equipment. In addition, Peregrine does not dispute that Peregrine periodically instructed Zaitzeff to get clients off of "margin call," requiring him to either close the client's position or deposit cash in order to maintain the required balance. Peregrine also acknowledges that Associated Persons such as Zaitzeff could not wear shorts, tank-tops, t-shirts, sweat shirts, caps, sandals, slippers or flip-flops in the Peregrine offices during normal business hours. Finally, both parties agree that Peregrine required Zaitzeff to use its "order entry software" and provided him with training on the software.

## B. Procedural History

On May 2, 2008, Zaitzeff filed the present action against Peregrine and Slaga in the United States District Court for the Central District of California under California's Private Attorney General Act ("PAGA"), CAL. LABOR CODE § 2698, et seq., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. PAGA allows an employee to sue his or her employer on behalf of the California Labor and Workforce Development Agency as a Private Attorney General and recover civil penalties for the employer's violations of the California Labor Act. Zaitzeff's sixteen-count complaint (the "Complaint") contains thirteen claims alleging violations of the California Labor Code, one claim alleging a violation of the California Business and Professions Code and two Fair Labor Standards Act claims. The Complaint generally alleges that Defendants failed to pay Zaitzeff minimum wage or overtime pay, failed to provide adequate meal periods and failed to properly maintain and provide pay records.

---

[2] On May 21, 2009, Zaitzeff submitted an SS-8 form to the IRS requesting that IRS re-classify him as an employee for the time he worked for Peregrine.

4

On May 7, 2008 the case was reassigned within the Central District of California from Judge Pfaelzer to Judge Morrow. That same month, Defendants filed a motion to dismiss, or alternatively transfer the case, due to improper venue. On June 23, 2008, Judge Morrow granted Defendants' motion to transfer pursuant to the Agreement's forum selection clause which stated that "all actions, disputes, claims or proceedings, . . . , arising directly or indirectly in connection with, out of, or related to or from this Agreement, . . . , shall be adjudicated only in courts or other dispute resolution forums whose situs is within the City of Chicago, State of Illinois." Agreement ¶ 17. Judge Morrow accordingly transferred the case to the Northern District of Illinois on July 17, 2008. On August 1, 2008, Judge Bucklo of the Northern District of Illinois recused herself from the case and the action was subsequently reassigned to this Court.

On August 25, 2009, Defendants filed a motion for summary judgment (the "Motion for Summary Judgment") arguing that Zaitzeff cannot recover on his claims because the record establishes that Zaitzeff was an independent contractor, not a Peregrine employee. Zaitzeff subsequently sought to strike certain affidavits attached to Defendants' Motion for Summary Judgment ("Zaitzeff's Motion to Strike"). On September 22, 2009, Defendants filed a motion to deem certain of the facts in Defendants' statement of uncontested material facts admitted. The Court denied Defendants' motion to deem certain facts admitted on December 2, 2009, but required Zaitzeff to file a revised statement of material facts. Zaitzeff filed his revised Local Rule 56.1(b)(3) statement on December 23, 2009. On December 31, 2009, Defendants filed a motion to strike Zaitzeff's revised Local Rule 56.1(b)(3) statement ("Defendants' Motion to Strike"). The Motion for Summary Judgment, Plaintiff's Motion to Strike and Defendants' Motion to Strike are all now fully briefed and before the court.

## II. DISCUSSION

## A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show that a genuine triable issue of material fact exists. See Szymanski v. Rite-Way Lawn Maint. Co., 231 F.3d 360, 364 (7th Cir. 2000).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See AA Sales & Assocs., Inc. v. Coni-Seal, Inc., 550 F.3d 605, 609 (7th Cir. 2008). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 280 (1968); Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The inferences construed in the nonmoving party's favor, however, must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hosp. & Med. Ctr., 328 F.3d 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888-89 (1990)).

## B. Analysis

**1. The Parties' Motions to Strike**

The Court first notes that both Zaitzeff's Motion to Strike and Defendants' Motion to Strike are denied. While Defendants' objections to Zaitzeff's revised LR 56.1(b)(3) statement and Zaitzeff's objections to certain affidavits attached to Defendants' Motion for Summary Judgment are noted for the record, "[a]s a general rule, motions to strike are disfavored and infrequently granted." Black v. Long Term Disability Ins., 373 F. Supp. 2d 897, 904 (E.D. Wis. 2005); see also Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989); Loeffel Steel Prods. v. Delta Brands, Inc., 379 F. Supp. 2d 968, 971 n.1 (N.D. Ill. 2005) ("Motions to strike are disfavored, because they potentially serve only to create delay . . . ."); Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co., 109 F. Supp. 2d 905, 907 (N.D. Ill. 2000). Therefore, the Court finds that it will give appropriate weight to the materials submitted, and shall disregard all pleadings, affidavits and exhibits, or any portions thereof, that, as the Court determines, do not comply with the Northern District of Illinois' Local Rules or the Federal Rules of Evidence.

**2. The Agreement's Choice-of-law Provision**

Before evaluating the merits of the Motion for Summary Judgment, the Court must determine what substantive law applies to Zaitzeff's state-law claims. Defendants argue that the choice-of-law provision in the Agreement requires the Court to apply Illinois law. The provision states that "[t]his Agreement shall be governed by the laws of the State of Illinois." Agreement ¶17. Zaitzeff instead suggests that the scope of the provision does not extend to cover his state-law claims and that Illinois choice-of-law rules dictate that the Court apply California law here.

Generally, a court with supplemental jurisdiction over state-law claims uses the forum state's choice-of-law rules to determine the appropriate substantive law. See Demitropoulos v.

7

Bank One Milwaukee, N.A., 915 F. Supp. 1399, 1413 (N.D. Ill. 1996) ("When deciding an issue governed by state law - either when exercising its supplemental jurisdiction under 28 U.S.C. § 1367, or, its diversity jurisdiction under 28 U.S.C. § 1332 - a federal court applies the forum state's choice of law rules."). However, "when a case has been transferred from another district, the court instead applies the choice-of-law rules that the court in the transferring state would apply." Cromeen, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 383 (7th Cir. 2003). Thus, because this case was transferred from the Central District of California to the Northern District of Illinois, this Court must apply California choice-of-law rules.

"In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts . . . apply the principles set forth in Restatement [(Second) of Conflict of Laws] section 187, which reflect a strong policy favoring enforcement of such provisions." Nedlloyd Lines BV v. Superior Court, 834 P.2d 1148, 1151 (Cal. 1992). Section 187 states in pertinent part as follows:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

Restatement (Second) of Conflict of Laws § 187(2).

Zaitzeff argues that the choice-of-law provision in the Agreement is not applicable here because his claims are outside the scope of the clause. However, as the Nedlloyd court stated when interpreting a similar choice-of-law provision, "the most reasonable interpretation of [the parties'] actions is that they intended for the clause to apply to all causes of action arising from

*or related to their contract.*" 834 P.2d at 1153 (emphasis added). Although Zaitzeff's claims are not explicitly contractual, as Judge Morrow noted when interpreting the Agreement's forum-selection clause, the Agreement will be a "significant fact for consideration" with respect to his California Labor Code claims. June 23, 2008 Op., Dkt. 28, at 13. As a result, Zaitzeff's claims are sufficiently related to the Agreement to fall under the scope of the Agreement's choice-of-law provision. See Nedlloyd, 834 P.2d at 1154; see also Olinick v. BMG Entertainment, 42 Cal. Rptr. 3d 268, 278-79 (Cal. Ct. App. 2006) (holding that plaintiff's age discrimination and wrongful discharge claims fell within the scope of the choice-of-law provision contained in plaintiff's employment agreement because "the legal relationship between these parties emanates from this Agreement and the interpretation of the Agreement will be a central issue in the discrimination case").

Having determined that Zaitzeff's claims fall within the scope of the choice-of-law provision, the Court must next determine if the parties have a substantial relationship with the state of Illinois or whether applying Illinois law would be contrary to a fundamental policy of California. Because Peregrine has its principal place of business in Illinois, there is no question that Illinois has a substantial relationship with the parties. See PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 860 (9th Cir. 2007) (holding with respect to Restatement (Second) of Conflict of Laws § 187(2) that Virginia had a substantial relationship with defendant because defendant had its principal place of business in the state). As to the second prong of § 187, the Court finds that using Illinois law to determine the narrow legal question of whether Zaitzeff was an employee of Peregrine or an independent contractor does not offend a fundamental California policy because California law and Illinois law are not significantly different with respect to this issue. Compare Tieberg v. Unemployment Ins. Appeals Bd., 471 P.2d 975, 979-80 (Cal. 1970)

(setting forth a ten factor test to determine whether a worker is an employee or an independent contractor), with Doe v. Brouillette, 906 N.E.2d 105, 116 (Ill. App. Ct. 2009) (setting forth a similar six-factor test); see also Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc., 46 Cal. Rptr. 2d 33, 44 (Cal. Ct. App. 1995) (holding that a choice-of-law provision did not violate a fundamental policy of California where it resulted in the application of Delaware's three-year statute of limitations as opposed to California's four-year statute of limitations). Thus, pursuant to the Agreement's valid and applicable choice-of-law provision, the Court will apply Illinois law to determine whether Zaitzeff has presented sufficient evidence to establish a question of material fact concerning his employment status with Peregrine.

### 3. Zaitzeff's California State-law Claims

The California Labor Code prohibits an employer from paying their employee less than the legal minimum wage or the legal overtime compensation, see CAL. LABOR CODE § 1194, or "employ[ing] an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." See CAL. LABOR CODE § 512. Employers are also required to provide each employee with an itemized statement of wages and deductions at the time of each payment of wages. See CAL. LABOR CODE § 226. Importantly, though, the California Labor Code does not apply to independent contractors. See Jacobsen v. Schwarzenegger, 357 F. Supp. 2d 1198, 1214 (C.D. Cal. 2004). In the present case, Defendants argue that summary judgment is appropriate because the factual record establishes conclusively that Zaitzeff was an independent contractor. The Court, however, disagrees.

Under Illinois law, "[t]he question of whether one is an ... employee or an independent contractor is generally a question of fact." Lang v. Silva, 715 N.E.2d 708, 717 (Ill. App. Ct. 1999). "The question may be decided as a matter of law, though, when the relationship is so

clear as to be indisputable." Id. In Doe, the court noted that "there is no rigid rule for determining whether a person is an . . . employee or an independent contractor." 906 N.E.2d at 116. Rather, Illinois courts look to a multitude of factors, including "the right to control the manner in which the work is performed; the right to discharge; the method of payment; whether taxes are deducted from the payment; the level of skill required to perform the work; and the furnishing of the necessary tools, materials, or equipment." Lang, 715 N.E.2d at 716; see also Wheaton v. Suwana, 823 N.E.2d 993, 997 (Ill. App. Ct. 2005) (treating the worker's work schedule and the nexus between the worker's occupation and the company's business as additional factors to be considered when determining whether a worker was an employee or independent contractor). Of these aforementioned factors, "[t]he most important factor is the right to control the manner in which the work is done." Warren v. Williams, 730 N.E.2d 512, 518 (Ill. App. Ct. 2000).

Defendants direct the Court's attention to the portion of the Agreement in which Zaitzeff specifically acknowledges that he is "choosing to be retained by [Peregrine] on an independent contractor basis." Agreement, Ex. A ¶ 4. According to Defendants, the Agreement demonstrates that Peregrine and Zaitzeff "unequivocally intended to create an independent contractor relationship." Mot. for S.J. at 11. The Illinois Supreme Court has stated, however, that "although a contractual agreement is a factor to consider, it does not, as a matter of law, determine an individual's employment status." Roberson v. Indus. Comm'n, 866 N.E.2d 191, 205 (Ill. 2007) (quoting Earley v. Indus. Comm'n, 553 N.E.2d 1112, 1118 (Ill. App. Ct. 1990)); see also Barnes v. Duffy, No. 02 C 5530, 2004 WL 2931326, at *8 (N.D. Ill. Dec.15, 2004) (holding that a question of fact existed as to whether defendant was an employee of a trucking company even though defendant signed an "independent contractor agreement" with the

11

company); Davila v. Yellow Cab Co., 776 N.E.2d 720, 725-26 (Ill. App. Ct. 2002) (holding that a question of fact existed as to whether a cab driver was an employee of a cab company even though the cab driver's lease agreement explicitly disclaimed an employer-employee relationship).

In the present case, there is no dispute that several of the factors Illinois courts use to determine whether a person is an employee weigh in Zaitzeff's favor. For example, Peregrine acknowledges providing Zaitzeff with office space, computer equipment and the use of phones. In addition, there is a strong nexus between Zaitzeff's occupation (futures broker) and Peregrine's business (futures commodities merchant). Moreover, under the terms of the Agreement, Peregrine had the right to terminate the Agreement for any reason upon giving Zaitzeff seven days notice. With respect to the most important factor, "right to control," Peregrine acknowledges: (1) that Slaga monitored the workers in the Camarillo Office to ensure compliance with applicable laws and regulations; (2) that some type of dress code was enforced for the Camarillo Office; and (3) that Peregrine sometimes directed Zaitzeff to take action with respect to Peregrine client accounts. In addition, interpreting the facts in the light most favorable to Zaitzeff as the Court must, Peregrine also directed Zaitzeff to call certain sales leads and instructed him how to answer his phone. Importantly, Zaitzeff testified he had a regular required work schedule of 5:30 a.m. to 1:15 p.m., which defendants deny.

Given this factual context, Mitchell v. Tenney, 650 F. Supp. 703 (N.D. Ill. 1986) is particularly instructive. In Mitchell, plaintiff Harold Mitchell ("Mitchell"), an Associated Person, brought a Title VII race discrimination claim against an FCM. Id. at 704. The FCM argued that Mitchell's claim must fail because he was an independent contractor. Id. Like Zaitzeff, Mitchell (1) solicited customers to trade in commodities using equipment and supplies

furnished by the FCM; (2) was paid on a commission basis; (3) did not have any employment taxes deducted from his commission checks; and (4) was labeled an independent contractor by the FCM. Id. at 704-5, 707.

The Mitchell court ultimately held that there was a question of fact as to whether Mitchell was an employee of the FCM. The court noted that, "[t]he federal regulatory scheme which governs the activities of APs and FCMs imposes a considerable amount of mutual dependence [between the two]." Id. at 707. More specifically, the court cited to 17 C.F.R. § 3.12(a), which bars an Associated Person from making trades for customers without an affiliation with an FCM, and 17 C.F.R. § 1.33(a), which requires the FCM, not the Associated Person, to furnish a monthly statement to each commodity customer. Id. The court also found it relevant that "FCMs are ultimately liable for much of the work done by the APs while in their employ." Id. (citing Evanston Bank v. ContiCommodity Servs., Inc., 623 F. Supp. 1014, 1022-23 (N.D. Ill. 1985)); see also First Commercial Fin. Group, Inc. v. Baghdoian, 812 F. Supp. 837, 840 (N.D. Ill. 1993) ("[C]ommodity brokerage firms cannot avoid liability for violations of the Commodity Exchange Act by their agents acting within the scope of their employment."). Based on the close relationship shared by FCMs and Associated Persons, the court concluded that "APs work for an FCM and are the essence of its business. Through APs the FCMs contact and serve their customers." Mitchell, 650 F. Supp. at 707.

Accordingly, although defendant "labeled Mitchell an independent contractor and preferred to consider him as such," the court determined that, "[l]ooking at the control factor, . . . , Mitchell's performance of his job more closely resembles the work of an employee." Id. The court explained that "labels given an individual are not dispositive of the individual's employment status. They are only one factor in the analysis." Id. Therefore, despite the fact

that the FCM and the defendant supervisor "may not have exerted control or some type of supervision over Mitchell on a daily basis," because the defendants "exercise[d] control over Mitchell on a number of occasions" the court concluded that defendants had "not established beyond dispute that Mitchell was not an employee of [the FCM]." Id.

Arguably, Zaitzeff presents a stronger case for employee status than Mitchell. As in Mitchell, Zaitzeff has put forth evidence that Peregrine controlled his work activity, whether by directing him how to handle client accounts, imposing a dress code, or requiring him to change his computer's screen saver. However, whereas Mitchell set his own working hours and was charged for other postage, photocopy and phone expenses, in the present case Zaitzeff testified that he had a required work schedule and that Peregrine sometimes paid for certain of his business and administrative expenses. Therefore, although the Court recognizes that the Agreement's identification of Zaitzeff as an independent contractor certainly weighs in Defendants' favor, when considering all the factors Illinois courts look to when determining whether a person is an employee – including the important right to control factor – the Court concludes that that there is a question of fact as to whether Zaitzeff was an employee of Peregrine. As a result, Defendants' Motion for Summary Judgment is denied with respect to Zaitzeff's state-law claims.

### 4. Zaitzeff's FLSA Claims

Defendants' Motion for Summary Judgment does not specifically address Zaitzeff's FLSA claims. To the extent that Defendants are arguing, as they did with respect to Zaitzeff's state-law claims, that summary judgment is appropriate as to Zaitzeff's FLSA claims because the record demonstrates that Zaitzeff was an independent contractor, the Court finds that argument unavailing.

The FLSA requires an employer to pay its employees minimum wage, see 29 U.S.C. § 206, and provide its employee overtime compensation if the employee works more than forty hours in a week. See 29 U.S.C. § 207. Courts use the "economic realities" test to determine whether a worker is an employee under the FLSA. Sec'y of Labor, U.S. Dept. of Labor v. Lauritzen, 835 F.2d 1529, 1534 (7th Cir. 1987); see also Harper v. Wilson, 302 F. Supp. 2d 873, 878 (N.D. Ill. 2004) (stating that the economic realities test consists of six guiding factors, including "the nature and degree of the alleged employer's control as to the manner in which the work is to be performed" and "the alleged employee's investment in equipment or materials required for his task").

The Seventh Circuit has noted that the definition of "employee" is broader under the FLSA than under "traditional agency law principles," Reyes v. Remington Hybrid Seed Co., Inc., 495 F.3d 403, 408 (7th Cir. 2007) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)), or under Title VII. Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377, 380 (7th Cir. 1991). As the Lauritzen court explained, "[i]t is well recognized that under the FLSA the statutory definitions regarding employment are broad and comprehensive in order to accomplish the remedial purposes of the Act. Courts, therefore, have not considered the common law concepts of 'employee' and 'independent contractor' to define the limits of the Act's coverage." 835 F.2d at 1534. Given that the Court has already held that there is a question of material fact under Illinois law as to whether Zaitzeff was an employee of Peregrine – and the FLSA definition of "employee" is broader than the definition under Illinois law – the Court therefore also denies summary judgment with respect to Zaitzeff's FLSA claims.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment and motion to strike Plaintiff's amended statement of contested material facts are denied; Zaitzeff's motion to strike affidavits is also denied.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: February 1, 2010